1
2
3
4

ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice forthcoming*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

5
6
7
8

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
Melissa Levin (SBN 328146)
melissalevin@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700

9
10

*Attorneys for Defendant*
PHH MORTGAGE

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| ETHAN ALLISON, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE,<br><br>Defendant. | Case No. 3:25-cv-05323-RFL<br><br>**DEFENDANT PHH MORTGAGE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: December 16, 2025<br>Time: 10:00 a.m.<br><br>Judge: Hon. Rita F. Lin |

23
24
25
26
27
28

1    **TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

2           **PLEASE TAKE NOTICE** that on December 16, 2025 at 10:00 a.m., or as soon thereafter

3    as this matter may be heard in Courtroom 15 for the Northern District of California, located at San

4    Francisco Courthouse, 18th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant

5    PHH Mortgage will and hereby does move this Court for an order dismissing Plaintiffs' Complaint

6    with prejudice.

7           This Motion is made pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that

8    Plaintiffs fail to state a plausible claim for relief, and is based on this Notice, the attached

9    Memorandum of Points and Authorities, and all other supporting papers and documents on file with

10   the Court, the record in this action, and such oral and documentary evidence as may be presented

11   at the hearing.

12   Dated: October 9, 2025                          ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                                                   /s/ *Rebecca Harlow*
                                                     Rebecca Harlow (SBN 281931)
15                                                   rharlow@orrick.com
                                                     Melissa Levin (SBN 328146)
16                                                   melissalevin@orrick.com
                                                     405 Howard Street
17                                                   San Francisco, CA 94105
                                                     Telephone: (415) 773-5700
18
19                                                   Aravind Swaminathan (*pro hac vice forthcoming*)
                                                     aswaminathan@orrick.com
20                                                   401 Union Street, Suite 3300
                                                     Seattle, WA 98101
21                                                   Telephone: (206) 639-9157

22

23                                                   *Attorneys for Defendant PHH Mortgage*

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 1

    A.    Plaintiff Agrees To Contracts That Grant PHH The Right To Share
         Information About Plaintiff's Website Use With Non-Affiliated Third
         Parties For Their Marketing Purposes ............................................................ 1

    B.    PHH Shares Limited Information About How Plaintiff And Other
         Customers Navigate Its Website With Google, Yahoo!, and Microsoft ................. 3

    C.    PHH Discloses To Its Loan Application Processor Information Necessary
         To Process Applications ................................................................................. 4

    D.    Plaintiff Alleges That PHH's Information Sharing Is Unlawful ........................ 5

III.  LEGAL STANDARD ...................................................................................... 6

IV.   ARGUMENT .................................................................................................. 6

    A.    Plaintiff's Claims Fail As A Matter Of Law Because He Agreed To The
         Information Sharing At Issue. ....................................................................... 6

    B.    Plaintiff's Claims Fail As A Matter Of Law For A Range Of Additional
         Reasons. ...................................................................................................... 9

        1.    Plaintiff's negligence claims fail to establish an actionable breach
            of duty, harm, or damages. ................................................................. 9

        2.    Plaintiff lacks standing under the UCL and CDAFA ............................... 11

        3.    Plaintiff lacks standing under the CCPA. .............................................. 12

        4.    Plaintiff has not stated a breach of contract claim. ................................ 13

        5.    Plaintiff has not stated an unjust enrichment claim. ............................... 13

        6.    Plaintiff has not stated a breach of confidence claim. ............................. 14

        7.    Plaintiff has not stated a CIPA claim. ................................................... 14

        8.    Plaintiff has not stated a federal Wiretap Act claim. .............................. 15

        9.    Plaintiff has not stated a declaratory judgment claim. ............................. 15

V.    CONCLUSION ............................................................................................... 15

1

### TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Anthem, Inc. Data Breach Litigation,*
 162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................. 13

5

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................................. 6, 8

6

7

*In re Bank of America California Unemployment Benefits Litigation,*
 674 F. Supp. 3d 884 (S.D. Cal. 2023) ................................................................. 6, 11

8

*Baton v. Ledger SAS,*
 740 F. Supp. 3d 847 (N.D. Cal. 2024) ................................................................... 10

9

10

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) .................................................................................................. 6

11

12

*Corales v. Bennett,*
 567 F.3d 554 (9th Cir. 2009) ................................................................................... 10

13

*Dent v. National Football League,*
 968 F.3d 1126 (9th Cir. 2020) ................................................................................... 9

14

15

*Doe I v. Google LLC,*
 2024 WL 3490744 (N.D. Cal. July 22, 2024) ........................................................ 13

16

17

*Doe v. County of Santa Clara,*
 2024 WL 3346257 (N.D. Cal. July 8, 2024) .......................................................... 12

18

*Doe v. Tenet Healthcare Corp.,*
 2025 WL 1635956 (E.D. Cal. June 9, 2025) .......................................................... 12

19

20

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.,*
 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .......................................................... 10

21

22

*Erlich v. Menezes,*
 21 Cal. 4th 543 (1999) ............................................................................................. 11

23

*In re Facebook Privacy Litigation,*
 791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................... 11

24

25

*Hall v. Equifax Information Services,*
 2021 WL 5566746 (E.D. Cal. Nov. 29, 2021) .......................................................... 9

26

27

*Hazel v. Prudential Financial, Inc.,*
 2023 WL 3933073 (N.D. Cal. June 9, 2023) .......................................................... 11

28

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023)................................................................ 12

*Huynh v. Quora, Inc.*,
   2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..................................................... 14

*Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*
   315 F. App'x 603 (9th Cir. 2008) ......................................................................... 11

*Lakes v. Ubisoft, Inc.*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................................ 15

*M.D. v. Google LLC*,
   2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ............................................... 6, 8, 9

*Mitchell v. Wells Fargo Bank*,
   355 F. Supp. 3d 1136 (D. Utah 2018) .................................................................. 10

*Moore v. Centrelake Medical Group, Inc.*,
   83 Cal. App. 5th 515 (2022)................................................................................. 11

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024)............................................................ 10, 11

*Sepanossian v. National Ready Mix Co., Inc.*,
   97 Cal. App. 5th 192 (2023)........................................................................... 13, 14

*Terpin v. AT & T Mobility LLC*,
   118 F.4th 1102 (9th Cir. 2024)............................................................................. 11

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ................................................................ 12

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021)............................................................ 4, 15

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................ 13

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014).............................................................................. 14

**Statutes**

18 U.S.C. § 2511 ................................................................................... 5, 8, 9, 15

Cal. Bus. & Prof. Code § 17203 ............................................................... 5, 11

Cal. Bus. & Prof. Code § 17204 ............................................................... 5, 11

Cal. Civil Code § 1798.81.5.............................................................................. 13

Cal. Civ. Code § 1798.115 ...................................................................................... 5, 13

Cal. Civil Code § 1798.150 ......................................................................................... 12

Cal. Penal Code § 502 ........................................................................................... 5, 12

Cal. Penal Code § 631 ........................................................................................... 5, 14

Cal. Penal Code § 632 ....................................................................................... 5, 9, 15

**Other Authorities**

California Department of Justice, "What can I do if I think a business violated the CCPA?",
    *available at* https://oag.ca.gov/privacy/ccpa ............................................................ 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff's lawsuit, which recycles allegations copied-and-pasted across several recent complaints, is undone by a glaring problem: Even as he urges that Defendant PHH Mortgage ("PHH") impermissibly shared information about his website use with third parties for their marketing purposes, Plaintiff *expressly pleads* that he contractually authorized exactly that form of information sharing. That dooms every cause of action, and Plaintiff's claims independently fail for a host of additional reasons. The Court should therefore dismiss the Complaint with prejudice.

### II.    FACTUAL BACKGROUND

#### A.    Plaintiff Agrees To Contracts That Grant PHH The Right To Share Information About Plaintiff's Website Use With Non-Affiliated Third Parties For Their Marketing Purposes.

PHH is a "financial services corporation" that issues and "services mortgage loans." Compl. ¶¶ 2, 17. Its website offers a "calculator" tool that helps visitors assess their financial position and enables visitors to submit loan applications. *Id.* ¶¶ 2, 46. It also contains a link to another website, libertyreversemortgage.com, where visitors can "learn about and apply for reverse mortgages." *Id.*

According to the Complaint, Plaintiff entered into several "Privacy Contracts" with PHH that authorized PHH to use information gathered from Plaintiff's website use.[1] *Id.* ¶ 90. Those contracts—which the Complaint attaches and incorporates by reference—comprise PHH's "Privacy & Security Policy, California Notice [of] Collection and Privacy Policy/California Consumer Privacy Act Disclos[u]re ('CCPA Disclosure'), Terms & Conditions, and Privacy Notice." *Id.* These contracts repeatedly and comprehensively disclose that PHH may share information it gathers about Plaintiff's website use with third parties for their marketing purposes.

**Consumer Privacy Notice.** PHH's Consumer Privacy Notice defines "the reasons" that PHH "chooses to share" website visitors' "personal information." *Id.* ¶ 98. One of the authorized reasons is "[f]or our nonaffiliates to market to you." *Id.* The Consumer Privacy Notice defines the term "nonaffiliate" broadly, encompassing all "[c]ompanies not related by common ownership or

---

[1] PHH accepts that these documents are binding contracts solely for the purposes of this motion.

control," whether they are "financial" or "nonfinancial companies." *Id.* ¶ 101.

The Complaint thus concedes that the Consumer Privacy Notice "stat[es] that [PHH] 'can include' its Customers' Personal and Financial Information"—the subject of this lawsuit—in PHH's disclosures to "nonaffiliates." *Id.* ¶ 102. The Complaint further acknowledges that "the Consumer Privacy Notice grants PHH the sole discretion to determine whether it will share Customers' information with nonaffiliates," including "whether and what to disclose and when it discloses it." *Id.* Indeed, Plaintiff claims to have "communicate[d] Personal and Financial Information" to PHH's website "with the understanding that PHH would not share his Personal and Financial Information *except as agreed in the Privacy Policies*." *Id.* ¶ 135 (emphasis added).

**Privacy & Security Policy.** PHH's Privacy & Security Policy says the same thing. It describes how PHH may use *any* "information"—without limitation—"that We collect about you or that you provide to us." *Id.* ¶ 91. And it authorizes PHH to use such information "to work with marketing partners to provide you with products or services that may be of interest to you," including unaffiliated "retailers and other third parties" who may use the shared information "to market to you." *Id.* ¶¶ 91–92. The Privacy & Security Policy also authorizes PHH to share information with "service providers … We use to support our business." *Id.* ¶ 92.

**California Privacy Notice and CCPA Disclosure (California Residents Only).** Two other contracts apply specifically to California consumers**.** First, PHH's **California Privacy Notice** confirms that PHH may "share information we collect about you with nonaffiliated third parties … as permitted by law, including, for example, with your consent." Compl. Ex. D, at 4. The California Privacy Notice then informs "California residents that they have the 'right[] to restrict the sharing of personal and financial information with our affiliates ... and outside companies we do business with," Compl. ¶ 106, and provides a mail-in form for consumers wishing to elect a restriction on information sharing, Compl. Ex. D, at 5. Plaintiff does not claim to have restricted sharing.

Separately, PHH's **CCPA Disclosure** "explains" PHH's obligations under "the California Consumer Privacy Act." Compl. ¶ 94. But the CCPA Disclosure has no application here. It expressly "does not apply" to any "consumer or customer of personal, household, or family financial products or services," including mortgages and reverse mortgages. Compl. Ex. B, at 1.

### B. PHH Shares Limited Information About How Plaintiff And Other Customers Navigate Its Website With Google, Yahoo!, and Microsoft

Plaintiff alleges that PHH shares with Google—and, to a narrower extent, Yahoo! and Microsoft—select information about how website visitors interact with PHH's website.[2] Although Plaintiff refers to that information as his "Personal and Financial Information," *e.g.* Compl. ¶ 1, it is far narrower than that. According to the Complaint, PHH purportedly permits these third parties to access only information about **whether** a visitor has navigated to a particular webpage or interacted with a particular field, not **what** the visitor communicated to PHH. *See, e.g.*, *id.* ¶¶ 38, 41, 42. There is nothing in the Complaint alleging that PHH shares with Google, Yahoo!, or Microsoft any substantive information that website visitors input into any field on any page. More specifically:

**Google only.** PHH allegedly shares with Google alone certain information about loan applications, requests for application-related callbacks, and use of PHH's online loan calculator. *Id.* ¶¶ 57–80. But that information is notably limited. PHH purportedly informs Google of the bare fact that a website visitor navigated to certain webpages, like those designed to help visitors "learn about getting a loan pre-approval" or access PHH's loan "calculator." *Id.* ¶¶ 59, 78; *see id.* ¶¶ 60, 67–68. PHH also purportedly shares a few data points about how visitors navigate these pages: whether and how far a visitor "scrolled" on the "Get-started" page, *id.* ¶ 61; whether a visitor started or submitted forms related to an "equity loan" or "callback request," *id.* ¶¶ 70, 74–76; and whether a visitor submitted information to the loan calculator, *id.* ¶¶ 78–80. Critically, though, there is no allegation that PHH shares with Google (or anyone else) any **substantive information** that a visitor inputs on any of PHH's webpages. For example, while PHH purportedly discloses that a visitor completed a loan form or used the loan calculator, there is no allegation that it ever shares any of the data that visitors submitted to PHH, like the words entered into a loan application or the numbers entered into a calculator tool.

---

[2] The Complaint also alleges that PHH's website deployed tracking code from a company called Hotjar. Compl. ¶¶ 39-40. But it pleads no facts about what data Hotjar's tracking code collected and never asserts that Hotjar collected any data related to Plaintiff. *See id.* The Complaint also makes two stray references to a "Meta Pixel" but alleges no facts establishing that PHH's website deployed it, let alone that it collected any data related to Plaintiff. *See id.* ¶¶ 145, 159.

**Google, Yahoo!, and Microsoft.** Additionally, PHH allegedly shares with Google, Yahoo!, and Microsoft limited information related to libertyreversemortgage.com, a separate website to which PHH allegedly directs interested visitors. *Id.* ¶ 81. PHH purportedly shares that a user has reached that separate website and interacted with its "reverse mortgage calculator." *Id.* ¶¶ 82–83, 85–86. Once more, however, Plaintiff does not allege that PHH shares any of the ***substantive information*** that website visitors convey.[3]

The Complaint asserts that Google, Yahoo!, and Microsoft used information that PHH shared with them for their own "advertising and marketing purpose." *Id.* ¶ 93; *see id.* ¶ 4. As part of that marketing, they sometimes "disclosed" the information to so-called "fourth parties who also profited off of it" through their own advertising. *Id.* ¶ 4. The term "fourth parties" presumably refers to customers of Google, Yahoo!, or Microsoft that did not allegedly interact with PHH, but the Complaint identifies only one such fourth party, alleging that Facebook sometimes purchases data from Google (either directly or indirectly). *Id.* ¶ 115.

### C.    PHH Discloses To Its Loan Application Processor Information Necessary To Process Applications

The Complaint separately alleges that PHH uses "Blend, a third-party application processor … to process its pre-approval loan applications." *Id.* ¶ 62. PHH allegedly shares application information by sending "details that users provide" to Blend's "self-hosted instance of the Sentry.io tracker." *Id.* For example, when an applicant indicates whether she has "a coborrower" or owns "any real estate," PHH allegedly tells Blend whether the applicant answered yes or no. *Id.* ¶ 63. Thus, when sharing information with Blend—***unlike*** for Google, Yahoo!, Microsoft, or any other third party—PHH purportedly discloses the substance of a website visitor's inputs to PHH's website. Of course, that is essential for Blend to process loan applications on PHH's behalf, and the Complaint does not allege that Blend used the information for any other purpose.

---

[3] The limited scope of information allegedly collected and shared here echoes what session replay technology collects about a website visitor. That sort of software likewise determines how website visitors navigate a website—including which pages they viewed and which fields they interacted with—without capturing the substance of any information they input. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (session replay software did not collect "content" of website visitor's communications).

1

### D.    Plaintiff Alleges That PHH's Information Sharing Is Unlawful

2    As noted, Plaintiff alleges that PHH expressly disclosed—in contracts to which Plaintiff

3    "agreed"—that PHH "'can include' its Customers' Personal and Financial Information" in

4    disclosures to "nonaffiliates," including "[f]or our nonaffiliates to market to you." *Id.* ¶¶ 98, 102,

5    135. Nonetheless, the Complaint claims that PHH broke the law in nearly a dozen ways when it

6    shared Plaintiff's information with third parties for their "marketing purposes." *E.g.*, *id.* ¶ 108.

7    These claims all share the same head-scratching premise: that despite the Complaint's allegations

8    to the contrary, PHH somehow fell short of "including in its Privacy Policies that it discloses

9    Customers' Personal and Financial Information to Third Parties for their use in their own

10    advertising and marketing," such that Plaintiff never agreed to that practice. Compl. ¶ 126.

11    If that premise is wrong—that is, if the facts as pled instead establish that Plaintiff ***did***

12    know about and agree to the challenged information sharing—then every claim fails as a matter of law.

13    **Claims 1 and 2** (negligence and negligence per se) fail because there was no "unauthorized …

14    disclosure." *Id.* ¶¶ 180, 187. **Claim 3** (CDAFA, Cal. Penal Code § 502) fails because PHH did not

15    collect information "without permission." *Id.* ¶ 208. **Claim 4** (UCL, Cal. Bus. & Prof. Code

16    §§ 17203–04) fails because PHH did not share information "without" Plaintiff's "consent." *Id.*

17    ¶ 214. **Claim 5** (CCPA, Cal. Civ. Code § 1798.115) fails because PHH did not collect, use, or sell

18    Plaintiff's information "without providing consumers with notice." *Id.* ¶ 236. **Claim 6** (breach of

19    contract) fails because PHH's Privacy Contracts never promised to "keep" Plaintiff's information

20    "confidential." *Id.* ¶ 244. **Claim 7** (unjust enrichment) fails because PHH never "disclosed"

21    Plaintiff's information "without [his] consent." *Id.* ¶ 249. **Claim 9** (breach of confidence) fails

22    because PHH did not share Plaintiff's information "without notice and consent." *Id.* ¶ 267. **Claim**

23    **10** (CIPA, Cal. Penal Code §§ 631(a) and 632(a)) fails because PHH never shared information

24    without Plaintiff's "consent." *Id.* ¶ 278. **Claim 11** (Federal Wiretap Act, 18 U.S.C. § 2511(1)) fails

25    because PHH never intercepted Plaintiff's communications in a way that purposefully constituted

26    an "invasion of privacy." *Id.* ¶ 308. **Claim 12** (Wiretap Act, 18 U.S.C. § 2511(3)(a)) fails because,

27    again, Plaintiff provided "consent." *Id.* ¶ 319. Finally, **Claim 8** (declaratory judgment) is derivative

28    of the other claims and fails one the same grounds.

**III.    LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "[t]hreadbare recitals of the elements of a cause of action … do not suffice." *Id.* Courts are not obligated "to accept legal conclusions couched as factual allegations and 'formulaic recitation[s] of the elements of a cause of action' aren't sufficient." *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 905 (S.D. Cal. 2023) (quoting *Twombly*, 550 U.S. at 555).

**IV.    ARGUMENT**

**A.    Plaintiff's Claims Fail As A Matter Of Law Because He Agreed To The Information Sharing At Issue.**

Plaintiff's entire lawsuit collapses for a simple reason: The facts alleged in the Complaint conclusively establish that he was notified of, and agreed to, PHH's sharing of his "Personal and Financial Information." In other words, Plaintiff alleges merely that PHH did exactly what he agreed they could do. Specifically, Plaintiff asserts that he formed several "Privacy Contracts" with PHH, and that he used the company's website "with the understanding that PHH would not share his Personal and Financial Information *except as agreed*" in those contracts. Compl. ¶¶ 90, 135 (emphasis added). At the threshold, then, by Plaintiff's own admission he contractually agreed to the collection and sharing laid out in the Privacy Contracts. And the Complaint ***never*** alleges any sharing of information by PHH that was inconsistent with or went beyond what was described in the Privacy Contracts. That is fatal and his claims fail as a matter of law. *See M.D. v. Google LLC*, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025) (dismissing claims because defendant's privacy policy "makes clear that [the defendant] would share data about users' activity on [defendants'] site with both Meta and Google and without any limitation regarding the sharing of personal information").

A deeper examination proves as much. As noted, Plaintiff ***expressly concedes*** that PHH's

Consumer Privacy Notice "***stat[es] that [PHH] 'can include' its Customers' Personal and Financial Information***" in data PHH shares with "***nonaffiliates***." *Id.* ¶ 102 (emphasis added). The contract's plain text compels that concession. The Consumer Privacy Notice defines "the reasons" that PHH may "choose[ ] to share" website visitors' "personal information," *id.* ¶ 98, and one of the authorized reasons is "[f]or our nonaffiliates to market to you," where "nonaffiliate" is defined as including ***any*** "financial" or "nonfinancial" (including "technology") company. *Id.* ¶¶ 98, 101. PHH's Privacy & Security Policy echoes those disclosures, providing that PHH may use website visitor information "to work with marketing partners," including unaffiliated "retailers and other third parties" who will use the shared information "to market to you." *Id.* ¶¶ 91–92.

Plaintiff "agreed" to those terms, *id.* ¶ 135, and they authorized PHH's alleged sharing of information with its nonaffiliates (*i.e.*, "nonfinancial" "technology" companies) Google, Yahoo!, and Microsoft. *Id.* ¶¶ 100–01. PHH allegedly shared Plaintiff's information with them "for their use in their own advertising and marketing." *Id.* ¶ 126. That is ***precisely*** the scope and purpose for information sharing that Plaintiff authorized by agreeing to the Privacy Contracts.[4]

In attempting to avoid this straightforward conclusion, the Complaint makes several unfounded assertions that are flatly contradicted by the actual facts pled.

**First,** the Complaint urges that "[i]t is not clear that the Third Parties at issue" qualify as PHH's "nonaffiliates" under the Consumer Privacy Notice. *Id.* ¶ 101. That is ridiculous. The Complaint's only effort to demonstrate that any third party does not meet the expansive definition of that term—*i.e.* a nonfinancial company with separate ownership and control—is the passing suggestion that "Google, for example, is a search engine company, not an insurance company, service provider, or retailer." *Id.* That is merely another way of saying Google (like Yahoo! and Microsoft) is a nonfinancial technology company, and thus a nonaffiliate.

**Second,** Plaintiff complains that the Consumer Privacy Notice does not cabin PHH's right to share information as much as it might have. He notes that the contract broadly authorizes PHH

---

[4] Separately, PHH's Privacy & Security Policy authorizes PHH to share information with "service providers… We use to support our business." *Id.* ¶ 92. PHH did just that by sharing loan application information with Blend, its third-party loan processor. The Complaint never even alleges that Plaintiff did not agree to that sharing of information.

to "'include' its Customers' Personal and Financial Information," without further restricting "what information it shares with nonaffiliates" or "specifying" narrower "conditions and circumstances" in which PHH "may do so." *Id.* ¶ 102. Plaintiff suggests that this somehow gave PHH an excessive amount of "discretion on whether and what to disclose and when it discloses it." *Id.* But that is not a quarrel with the plain meaning of the Consumer Privacy Notice; it confirms that Plaintiff understood the broad scope of PHH's right to share information, and simply now regrets agreeing.

**Third,** Plaintiff turns to a glaring misreading of PHH's California Privacy Notice. As noted, that contract informs California residents of their "right[] to restrict the sharing of personal and financial information with our affiliates ... and outside companies we do business with." *Id.* ¶ 106. It then adds that "[n]othing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us." *Id.* Plaintiff contends that "mean[s] that PHH will only share … information with its affiliates or outside companies PHH does business with as 'necessary' to follow the law or to service consumers' accounts with PHH." *Id.* ¶ 107. But that is not at all what the California Privacy Notice says. The contract simply notes that certain "necessary" information sharing would ***not be prohibited*** even if a California resident otherwise restricted sharing (which Plaintiff never did).

At bottom, there is simply no basis for the Complaint's conclusory assertion that PHH somehow failed to "includ[e] in its Privacy Policies that it discloses Customers' Personal and Financial Information to Third Parties for their use in their own advertising and marketing." *Id.* ¶ 126. The Complaint's "factual content," *Iqbal*, 556 U.S. at 678, shows just the opposite: By agreeing to the Privacy Contracts, Plaintiff consented to the very information sharing he now challenges. That foundational flaw dooms every asserted cause of action. **Claims 3, 4, 7, 9, 10, and 12** (CDAFA, UCL, unjust enrichment, breach of confidence, CIPA, Wiretap Act) all rely on allegations that PHH collected and disclosed Plaintiff's information "without" his "consent" or "permission." Compl. ¶¶ 208, 214, 249, 267, 278, 319. But Plaintiff ***did*** consent to the challenged disclosures by agreeing to the Privacy Contracts. *See M.D.*, 2025 WL 2710095, at *5 (privacy policy "establishes users' consent to the data collection practices" at issue).

Similarly, **Claims 1 and 2** (negligence and negligence per se) assert that PHH acted

unlawfully by permitting the "***unauthorized*** … disclosure" of his information. *Id.* ¶¶ 180, 187 (emphasis added). The Privacy Contracts establish that there was no unauthorized disclosure here—just forms of information sharing that PHH was expressly authorized to perform. That also defeats **Claim 5** (CCPA), which asserts that PHH acted unlawfully by "collecting, using, and selling" Plaintiff's information "without providing consumers with notice." *Id.* ¶ 236.

      **Claim 6** (breach of contract) fails for similar reasons. It alleges that PHH breached promises to "keep" Plaintiff's information "confidential" from Google, Yahoo!, and Microsoft. *Id.* ¶ 244. The governing Privacy Contracts establish that PHH made no such promise and instead—quite the contrary—reserved PHH's right to share Plaintiff's information with third parties.

      Finally, **Claim 11** (Wiretap Act) contends that PHH acted unlawfully by intercepting and sharing his communications in a way that purposefully constituted an "invasion of privacy." *Id.* ¶ 308. As *M.D. v. Google* recently held when dismissing a similar claim, Plaintiff "cannot have a reasonable expectation of privacy" because he "consented to the intrusion." 2025 WL 2710095, at *4. That also dooms the CIPA § 632(a) claim, which does not apply where a party "may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c).

## B.    Plaintiff's Claims Fail As A Matter Of Law For A Range Of Additional Reasons.

      Plaintiff's claims also fail as a matter of law for a variety of additional, independent reasons.

### 1.    Plaintiff's negligence claims fail to establish an actionable breach of duty, harm, or damages.

      **No breach of duty.** Plaintiff has not identified a cognizable negligence duty that PHH purportedly breached. The Complaint relies primarily on the negligence per se doctrine[5] to establish such a duty, claiming that two statutes—the Federal Trade Commission ("FTC") and Gramm-Leach-Bliley ("GLB") Acts—create obligations enforceable in tort. Compl. ¶¶ 172–73. That is wrong as a matter of law. The FTC and GLB Acts do not provide private rights of action. Congress thus decided that "an individual cannot bring a lawsuit based on these statutes." *Hall v. Equifax*

---

[5] The Complaint improperly pleads negligence per se as "a separate cause of action," but it is merely "an evidentiary presumption" relevant to "the standard of care." *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020).

*Info. Servs.*, 2021 WL 5566746, at *1 (E.D. Cal. Nov. 29, 2021). Negligence per se is not a backdoor around that congressional choice. As courts have long emphasized, the doctrine "does not provide" an otherwise missing "private right of action for violation of a statute." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016). That is why many "district courts" have already declined to "permit negligence *per se* claims to hinge on the FTC[ Act]," *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) (collecting cases), and why the GLB Act likewise provides no ground for a negligence action, *e.g.*, *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1158 (D. Utah 2018).

The Complaint then falls back on vague allegations that PHH "owed to Plaintiff and Class Members a duty to exercise reasonable care" by "implementing industry-standard privacy procedures sufficient to reasonably protect [their] information from disclosure and unauthorized transmittal." Compl. ¶ 171. That duty would perhaps be relevant in a data breach case where the defendant's security "procedures" allegedly failed to "protect" information from infiltration. But Plaintiff does not allege that PHH failed to protect data from infiltration. He claims only that PHH did not adequately disclose its information-sharing arrangements with other technology companies. Even on its own terms, that is not a breach of the vague duty to "protect" that Plaintiff proposes.

**No harm.** Plaintiff has separately failed to establish the "actual loss" required for a negligence recovery—that is, a present, legally cognizable harm. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). The Complaint identifies just one tangible impact of PHH's purported sharing of information: Plaintiff "began receiving advertisements on his Facebook feed regarding loans, refinancing, and mortgages." Compl. ¶ 133. The Complaint pleads no facts showing that those advertisements harmed Plaintiff. All it offers is a laundry list of conclusory assertions—that Plaintiff somehow suffered "[e]mbarrassment, humiliation, frustration, and emotional distress," "[d]ecreased value of" his information, and "[i]ncreased risk of future harm resulting from future use and disclosure of" his information. *Id.* ¶ 145. Courts have rejected exactly these sorts of vague, unsubstantiated assertions as too "conclusory" to establish cognizable harm. *E.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024). Here, too, Plaintiff's "conclusory allegations" are "unsupported by any facts"—say, details "explaining what economic value the information held *to*

*Plaintiffs* and how it was lost through Defendant's dissemination." *Id.*

**No damages.** Even where a pleading establishes actual injury, negligence "liability is limited to damages for physical injuries and recovery of economic loss is not allowed," absent some sort of "special relationship" between the parties. *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008). Plaintiff alleges no physical injury here—just purely economic harms like the "lost benefit of their bargain," "lost value of their Personal and Financial Information and diminution in value," and "lost time and money incurred to mitigate and remediate the effects of use of their information."[6] Compl. ¶ 179; *see Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 537 (2022) ("lost-time damages" are purely economic losses); *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d at 920 (same).

The economic loss rule applies with particular force here because Plaintiff's negligence claim is rooted in the "Privacy Contracts." He admits having "agreed" to information sharing consistent with those contracts, Compl. ¶ 135, but alleges that PHH negligently exceeded what was permitted. The economic loss rule bars this sort of claim precisely because it is not "independent of [Plaintiff's privacy] contracts with" PHH, and a central purpose of the rule is to "prevent[ ] the erosion of contract doctrines by the use of tort law to work around them." *Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1114 (9th Cir. 2024) (quoting *Moore*, 83 Cal. App. 5th at 548).

### 2.    Plaintiff lacks standing under the UCL and CDAFA.

To state a UCL claim under Cal. Bus. & Prof. Code §§ 17203–04, Plaintiff must establish that PHH's purported violation of the statute caused "lost money or property." *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023). The Complaint attempts that showing solely by pleading that Plaintiff suffered diminishment of his "property interest in [his] Personal and Financial Information." Compl. ¶ 217. As explained, that assertion is factually unsubstantiated. *Supra* __. It is also legally insufficient in any event. Courts have consistently held that "personal information does not constitute property for purposes of a UCL claim." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011); *see also Hazel*, 2023 WL 3933073, at *6.

---

[6] Emotional distress is likewise not cognizable in negligence absent "physical injury, not simply damage to property or financial interests." *Erlich v. Menezes*, 21 Cal. 4th 543, 554–55 (1999).

Similarly, to state a CDAFA claim under Cal. Penal Code § 502, Plaintiff must adequately plead resulting "economic harm or loss." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Critically, because § 502 narrowly prohibits unauthorized access to computer systems and the data they contain, Plaintiff must establish economic harm ***caused by*** "damage to the computer system, network, program, or data contained on that computer." *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *19 (E.D. Cal. June 9, 2025) (quoting *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023)). The Complaint fails to make that showing. It again points to the "diminished … value of Plaintiff's and Class Members' Personal and Financial Information." Compl. ¶ 205. But that information was not stored on Plaintiff's computer system and subsequently unlawfully accessed; Plaintiff "generated" it "while engaging with [PHH's] website." *Tenet Healthcare Corp.*, 2025 WL 1635956, at *19 (quoting *Heiting*, 709 F. Supp. 3d at 1021). Plaintiff "cannot base [his] CDAFA damages on [that] theory." *Id.* (quoting *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024)). The Complaint's only other allegation of economic harm—that Plaintiff "did not get the full value of the financial services for which [he] paid," Compl. ¶ 205—falls short for the same reason.

### 3.    Plaintiff lacks standing under the CCPA.

The CCPA provides a notably narrow private right of action: Litigants may sue only if the violation entails "unauthorized access and exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" "as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civil Code § 1798.150(a), (c). Thus, as the title of this section reflects, the private right of action is limited to "Personal Information Security Breaches." *Id.* § 1798.150. The California Department of Justice has recently emphasized—precisely because of misguided lawsuits like this one—that private plaintiffs may sue only "if there is a data breach, and even then, only under limited circumstances." California Department of Justice, "What can I do if I think a business violated the CCPA?", *available at* https://oag.ca.gov/privacy/ccpa (last accessed October 1, 2025). Private litigants may not sue for any "other violations of the CCPA," including insufficient notice or opt-out rights. *Id.*

Plaintiff's CCPA claim falls on the wrong side of the line. It does not allege a data breach

1  actionable under § 1798.150 (or affected "personal information" under § 1798.81.5(d)(1)). Plaintiff

2  instead claims that PHH violated § 1798.115 by failing to "provid[e] consumers with notice" and

3  "abide by Customers' requests to delete collected personal information." Compl. ¶¶ 236–38.[7]

4  ### **4.    Plaintiff has not stated a breach of contract claim.**

5        The Privacy Contracts expressly authorized PHH to share information about Plaintiff with

6  nonaffiliates for their own marketing purposes. *Supra __.* No surprise, then, that Plaintiff cannot

7  point to ***any*** contractual promise by PHH ***not to*** share information in exactly that way. The

8  Complaint offers only the vague, conclusory assertion that PHH somehow "explicitly and implicitly

9  agreed to safeguard and protect Plaintiff's and Class Members' Personal and Financial

10  Information," without pleading any further details—not even ***which*** express contract (let alone

11  which specific provisions therein) purportedly contained this promise. That is insufficient, as "a

12  plaintiff must allege the specific provisions in the contract creating the obligation the defendant is

13  said to have breached," *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011),

14  including by "delv[ing] into additional detail on the terms and scope of [any] alleged implied

15  contract," *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016).

16        Plaintiff's implied contract theory also fails for an additional reason: "[A]n implied contract

17  cannot exist when there is an express contract between parties covering the same subject." *Doe I v.*

18  *Google LLC*, 2024 WL 3490744, at *10 (N.D. Cal. July 22, 2024). The Complaint's single contract

19  claim presents the purported express and implied contracts as co-extensive, characterizing them

20  collectively as "an express and implied contract" containing the same "express and implied

21  promises." Compl. ¶¶ 242–44. That lack of daylight dooms the implied contract theory.

22  ### **5.    Plaintiff has not stated an unjust enrichment claim.**

23        Plaintiff's unjust enrichment claim fails because "[t]here is no cause of action in California

24  labeled unjust enrichment." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206

25  (2023) (quotation marks omitted). And while some courts have reframed this sort of claim as one

26  for restitution, "[u]njust enrichment is generally an inapplicable basis for restitution where the

27

28  ---
[7] Plaintiff cannot seek statutory damages because he admits failing to provide the required pre-filing "30 days' written notice" to PHH. Cal. Civil Code § 1798.81.5(b); *see* Compl. ¶ 239.

parties have an enforceable express contract." *Id.* at 207. It is no answer to plead "in the alternative." Compl. ¶ 255. "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here," as Plaintiff's "unjust enrichment claim [does] not deny the existence or enforceability of" the Privacy Contracts. *Sepanossian*, 97 Cal. App. 5th at 207 (quotation marks omitted).

### 6.    Plaintiff has not stated a breach of confidence claim.

Plaintiff's breach of confidence claim fails for similar reasons. "A breach of confidence claim [] must be based on an implied obligation or contract—not an express contract." *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *8 (N.D. Cal. Dec. 19, 2019) (dismissing claim because "breach of confidence claim [was] based on an express contract"). Here, however, Plaintiff alleges that PHH owed him a duty of confidence pursuant to the "explicit … understandings" and "terms" set out in the Privacy Contracts. Compl. ¶¶ 267–69. That theory is untenable as a matter of law.

### 7.    Plaintiff has not stated a CIPA claim.

**Section 631(a).** This provision applies only to "the contents or meaning of any message," Cal. Penal Code § 631(a)—that is, "the intended message conveyed" by the sender, *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiff alleges that PHH aided and abetted third parties in violating that provision. *See* Compl. ¶ 287. But the Complaint pleads no supporting facts. As explained, Google, Yahoo!, and Microsoft never recorded the ***contents*** of any communication.[8] *Supra* __. According to the Complaint, those companies' tracking software recorded only certain bare facts about how website visitors navigated PHH's website—whether they viewed certain webpages and engaged with forms or loan calculators. *Supra* __. There is no allegation that Google, Yahoo!, or Microsoft intercepted the ***substance*** of any information that Plaintiff conveyed through PHH's website. In that respect, their purported trackers resemble session

---

[8] Plaintiff does not (and could not) assert that PHH's sharing of information with Blend violated § 631(a). Echoing the entire Complaint's focus on the purported sharing of information for third parties' marketing purposes, the CIPA claim alleges that Plaintiff "reasonably expected" only that his information "was not being intercepted … ***for marketing and profit***." Compl. ¶ 286 (emphasis added). There is no allegation that Plaintiff did not authorize PHH to share information with its application processor ***in order to process loan applications***. For good reason: PHH's Privacy & Security Policy authorizes sharing with "service providers" to "support our business." *Id.* ¶ 92.

replay software, which likewise does not collect the "content" of a website visitor's communications. *Yoon*, 549 F. Supp. 3d at 1082–83.

**Section 632(a).** Plaintiff suggests that PHH violated § 632(a) by "recording" his communications with its website. *Id.* ¶ 278. This theory has nothing to do with sharing information with third parties—Plaintiff contends that PHH broke the law simply by recording information that its own website visitor conveyed. The Complaint never alleges that Plaintiff did not consent to that recording. Nor could it: The Privacy Contracts disclosed—and Plaintiff agreed—that PHH would "collect" information about Plaintiff "when you visit our websites." *Id.* ¶ 91.

### 8.    Plaintiff has not stated a federal Wiretap Act claim.

Unlike CIPA, the Wiretap Act ordinarily does not prohibit interception if *any* "party to the communication" consents. 18 U.S.C. § 2511(2)(d). Even setting aside *Plaintiff's* consent, therefore, this claim fails because *PHH* consented to any alleged interception. In an effort to get around that legal bar, Plaintiff attempts to invoke the so-called crime-tort exception, which permits claims to proceed notwithstanding consent if the defendant intercepted a communication "for the purpose of committing any criminal or tortious act." *Id.*; *see* Compl. ¶ 308. Plaintiff suggests without elaboration that the tortious act here was "invasion of privacy." *Id.* But the Complaint never even identifies the elements of invasion of privacy, let alone alleges facts showing that PHH committed that tort. And even if the Complaint had done all of that, it would still fail to allege facts establishing that PHH's *purpose* was to invade Plaintiff's privacy. Just the opposite: Plaintiff asserts that PHH acted "to increase its profit margins and save on marketing costs," which does not suffice. *Id.* ¶ 309; *see Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (crime-tort exception does not apply where "the purpose of the interception was not to perpetuate torts on millions of Internet users, but to make money" (quotation marks omitted)).

### 9.    Plaintiff has not stated a declaratory judgment claim.

Because all of Plaintiff's substantive claims fail several times over, his derivative request for a declaratory judgment also fails. *See* Compl. ¶¶ 257–64.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, PHH requests dismissal of the Complaint with prejudice.

1

2   Dated: October 9, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP

3
                                             /s/ Rebecca Harlow
4                                            Rebecca Harlow (SBN 281931)
                                             rharlow@orrick.com
5                                            Melissa Levin (SBN 328146)
                                             melissalevin@orrick.com
6                                            405 Howard Street
                                             San Francisco, CA 94105
7                                            Telephone: (415) 773-5700

8
                                             Aravind Swaminathan (*pro hac vice forthcoming*)
9                                            aswaminathan@orrick.com
                                             401 Union Street, Suite 3300
10                                           Seattle, WA 98101
                                             Telephone: (206) 639-9157
11

12
                                             *Attorneys for Defendant PHH Mortgage*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28