Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

***Counsel for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **ETHAN ALLISON, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**PHH MORTGAGE,**<br><br>**Defendant.** | Civil Action No. 3:25-cv-05323-RFL<br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**<br><br>Date: January 6, 2025<br>Time: 10:00 a.m.<br><br>Judge: Hon. Rita F. Lin |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND.................................................... 1

ARGUMENT ............................................................................................................. 3

STANDARD OF REVIEW ....................................................................................... 4

    I.   Plaintiff Did Not Consent. ........................................................................ 4

    II.   Plaintiff's Claims Are Well Pled. ......................................................... 7

        A.   The Negligence Claim is Well Pled ................................................7

        B.   Plaintiff Has Standing Under the UCL and CDAFA. .....................10

        C.   Plaintiff Has Standing under the CCPA. .........................................10

        D.   The Breach of Contract Claims Survive. .........................................11

        E.   The Unjust Enrichment Claim Survives. .........................................12

        F.   The Breach of Confidence Claim Survives. ....................................12

        G.   The CIPA Claim Survives. ..............................................................12

        H.   The Federal Wiretap Claims Survive. ..............................................13

        I.   The Declaratory Judgment Claim Survives. ....................................13

CONCLUSION.......................................................................................................... 13

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
3:25-cv-05323-RFL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ...............................................................8

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...........................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................4

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ...............................................................6

*Barker v. Riverside Cnty. Off. of Educ.*,
584 F.3d 821 (9th Cir. 2009) ............................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..........................................................................5

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..............................................................10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................................6

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................6

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025) ...................10

*In re Eureka Casino Breach Litig.*,
No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024) ...................11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................7, 9, 12

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................10

*Guardant Health, Inc. v. Natera, Inc.*,
  580 F. Supp. 3d 691 (N.D. Cal. 2022) ...................................................................................4

*Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*,
  61 Cal.4th 988 (2015) .............................................................................................................12

*Jensen v. Brown*,
  131 F.4th 677 (9th Cir. 2025) ...............................................................................................5

*Lusnak v. Bank of Am., N.A.*,
  883 F.3d 1185 (9th Cir. 2018) .............................................................................................6

*M.D. v. Google LLC*,
  No. 24-CV-06369-AMO, 2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ...............................5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) .............................................................................................4

*M.G. v. Therapymatch, Inc*,
  No. 23-cv-04422-AMO, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024) .......................4

*In re Meta Pixel Tax Filing Cases*,
  724 F. Supp. 3d 987 (N.D. Cal. 2024) ...............................................................................8, 9

*In re Progressive Leasing Breach Litig.*,
  No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744 (D. Utah Jan. 16, 2025).......................11

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075 (N.D. Cal. 2025) .............................................................................13

*Rodriguez v. Google LLC*,
  772 F. Supp. 3d 1093 (N.D. Cal. 2025) .............................................................................10

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) .............................................................................................6

*Shah v. Cap. One Fin. Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ......................................................................... *passim*

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020).................................................................................9

*Stein v. Edward-Elmhurst Health*,
  No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ...........................................13

*Toy v. Life Line Screening of Am. Ltd.*,
  No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024).................................9

**Statutes**

15 U.S.C. § 6801 ............................................................................................................8

18 U.S.C. § 2511 ...........................................................................................................13

Cal. Bus. & Prof. Code § 17200 et. seq. .....................................................................10

Cal. Civ. Code § 1798.150 ...........................................................................................11

ECPA .............................................................................................................................13

**Rules**

Fed. R. Civ. P. 8 ..................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiff Ethan Allison respectfully submits this response in opposition to Defendant PHH Mortgage (PHH's)'s Motion to Dismiss.

The conduct alleged in this case involves the disclosure of the most sensitive kinds of data: a person's financial information and condition. This is not a case where a plaintiff is trying to secure a windfall based on how he jiggled his mouse while alone in his basement buying retail products. This is a case about PHH sharing with tech companies the choices that a consumer-customer makes while interacting with its website, choices like which products the consumer is interested in, ownership information, and pending financial decisions such as whether they are trying to cash out equity in their home. This is highly sensitive data that PHH was bound by law to safeguard. Instead it shared and sold it.

PHH goes all in to assert that there is no case here because no matter what PHH did, Allison consented to it. This is wrong for a number of reasons, chief among them that consent is a factual issue that should not be resolved at the Rule 12 stage particularly where as here, it is contested. PHH also regurgitates large portions of its privacy policy to contend that the data sharing and collection that occurred here was consistent with those policies. But the facts alleged in the complaint must be accepted as true here, and PHH cannot rewrite the complaint to suit its litigation goals. This motion should be denied.

## FACTUAL & PROCEDURAL BACKGROUND

PHH is a mortgage company that disclosed personal and financial information of consumers like Plaintiff to tech companies. D.E. 1 at ¶ 4. PHH used a variety of trackers to collect a vast assortment of consumer data, including Google, HotJar, Microsoft, Yahoo, and Blend/Sentry.io. D.E. 1 at ¶¶ 38, 39. These trackers allow PHH to share with tech companies not

only who is using its website and whether that person is a customer, but what types of products the user is viewing on the website, loan application activity, their use of an online loan calculator, and whether the customer requested a callback to apply for a loan. D.E. 1 at ¶ 45. The data shared includes whether the consumer has a coborrower on a loan application, whether the consumer is trying to cash out their equity, whether the consumer is looking into buying an investment property, whether the consumer is interested in a reverse mortgage, and real estate ownership information. D.E. 1 at ¶¶ 63, 68, 78, 81, 142. This is far more than just record information of no use to anymore. This is real data that can be and was sold – for a price.

Plaintiff did not consent to this collection – the complaint alleges this over and over again. D.E. 1 at ¶¶ 1, 13, 87, 108, 130, 136, 141, 143, 249. This case alleges several alternative theories of liability, including statutory violations and breach of contract in Count Six. D.E. 1 at ¶¶ 241–247. Pleading in the alternative is specifically countenanced by Rule 8. PHH misconstrues the allegations in the complaint to argue that Plaintiff consented to the kind of data collection here,[1] and the privacy policies PHH spends pages regurgitating do not bear. The allegation here is that PHH shares consumer-customer data indiscriminately in violation of its own policies or abuses the discretion its policies outline. D.E. 1 at ¶¶ 105, 108. Even if Plaintiff consented (he did not), and

---

[1] The allegations here are that PHH's data collection and sharing practices run afoul of statutory, common law, and contractual duties. D.E. 1 at ¶¶ 13, 103. If PHH did have a contractual obligation to protect Plaintiff's data, D.E. 1 at ¶¶ 157(i), 168(e, f), then the allegation here is that it breached those obligations and exceeded the scope of the contract, D.E. 1 at ¶¶ 103, 246. But even if Plaintiff assented to the Privacy Policies, he did not assent to the data collection and sharing practices that PHH uses. PHH argues that the Complaint concedes Plaintiff consented to the collection by consenting to the Privacy Policy. D.E. 18 at 7 (blue pagination) (citing D.E. 1 at ¶ 90). But the complaint says in multiple places that Plaintiff did not assent to the *collection practices* PHH used. D.E. 1 at ¶¶ 1, 13, 87, 108, 130, 136, 141, 143, 249. Even if he assented to the Privacy Policy, that does not mean he consented to these practices.

the privacy policy permits PHH to share some information with non-affiliates, that does not permit PHH to share information in violation of the law. *E.g.*, D.E. 1 at ¶ 124.

PHH spends a great deal of its brief offering its own spin on the allegations in the complaint, characterizing the information it shared as "notably limited" and calling the claims "head-scratching." D.E. 18 at 9, 11. That kind of language should telegraph to the Court that PHH is simply attempting to distract from what is actually pled in the complaint. Sharing that a loan applicant has applied for a loan (and actually hit the "Apply" button), D.E. 1 at ¶ 4, is not information that is public. PHH avers that because sharing that information is not as bad as sharing the words a customer entered into the loan form, D.E. 18 at 9, it should be free from liability here. Mortgages are one of the biggest investments an individual can make over their lifetimes, and mortgage companies have access to information that, if communicated to a stranger to that relationship, could inform the stranger that the mortgagor is cash-poor, recently secured a windfall, or needs to tap into their equity or refinance. The disclosure of this wholly private and confidential information—that personally identifies the consumer—is offensive.

Plaintiff sought relief in this case on June 25, 2025. D.E. 1. Following stipulated extensions of time to respond, on October 9, 2025, PHH moved to dismiss. D.E. 18.

## ARGUMENT

PHH's bid to dismiss this case amounts to, "*Well, Judge, everyone was doing this, so we shouldn't be liable for something everyone was doing.*" D.E. 18 at 7 (calling the allegations "recycle[d]" and "copied and pasted"). A commercial practice like data collection can be ubiquitous but still unlawful, as it is here. PHH's Motion is replete with characterizations that find no foundation in the complaint and argument that can be generously characterized as spin or gloss.

1    But a glance at what the actual complaint demonstrates that PHH's motion is not well taken and

2    the case should not be delayed further.

3                                    **STANDARD OF REVIEW**

4         Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant

5    fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

6    550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but

7    merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

8    on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6)

9    motion, the Court must "accept factual allegations in the complaint as true and construe the

10   pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine*

11   *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). All reasonable inferences are to be drawn in the

12   pleader's favor. *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 702 (N.D. Cal. 2022).

13   **I.    Plaintiff Did Not Consent.**

14        PHH's entire motion is premised on consent. D.E. 18 at 11 (arguing each claim would fail

15   if "Plaintiff did know about and agree to the challenged information sharing"). Plaintiff did not

16   consent to the collection that happened here. D.E. 1 at ¶¶ 1, 13, 87, 108, 130, 136, 141, 143, 249.

17   On a motion to dismiss, all facts in the complaint must be presumed to be true. *Barker v. Riverside*

18   *Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The paragraphs to which PHH cites as

19   bespeaking consent do not say that. D.E. 18 at 12 (referencing paragraphs 90 and 135 of the

20   complaint to state "Plaintiff asserts that he formed several Privacy Contracts with PHH").

21   Paragraph 90 (quoted in full above) is a general allegation about "contracts PHH had with its

22   customers[,]" and Paragraph 135 says in full: "Plaintiff relied on Defendant's Website to

23   communicate Personal and Financial Information and did so with the understanding that PHH

would not share his Personal and Financial Information except as agreed in the Privacy Policies."

D.E. 1 at ¶¶ 90, 135. It is disingenuous to assert that the complaint admits Plaintiff consented.

Plaintiff is expressly permitted to plead in the alternative by Rule 8. Fed. R. Civ. P. 8(d)(3) ("A

party may state as many separate claims or defenses as it has, regardless of consistency."),

however, setting that side, Plaintiff never concedes under any theory that Plaintiff consented to the

massive data harvesting done by PHH.

PHH is further incorrect that the complaint "never alleges any sharing of information by

PHH that was inconsistent with or went beyond what was described in the Privacy contracts." D.E.

18 at 12. The Complaint alleges precisely these things. D.E. 1 at ¶¶ 93, 97, 103–105, 108, 128–

130, 135–141. And the Complaint also alleges that if the policies are contracts, PHH broke them.

D.E. 1 at ¶¶ 13 ("PHH breached its…contractual obligations…"), 241–247. PHH makes much hay

of the exact language in its privacy policy, but the allegation here that PHH employs its privacy

policy as a way to trick consumers into thinking it cared about their privacy. D.E. 1 at ¶¶ 93, 97,

103–105. The contract claim is pled in the alternative. This is not a "foundational flaw," as PHH

asserts, D.E. 18 at 14, but a willful misreading that serves only PHH's litigation position. *M.D.*,

the only case PHH cites in this section, is a case in which counsel for the plaintiffs conceded that

the privacy policy established user consent to the data collection practices. *M.D. v. Google LLC*,

No. 24-CV-06369-AMO, 2025 WL 2710095, at *5 (N.D. Cal. Sept. 23, 2025) (granting leave to

amend anyway). The bottom line is that the Complaint alleges Plaintiff did not consent, and the

court must presume that to be true in ruling on this motion.

Consent is an affirmative defense upon which the *defendant* bears the burden of proof.

*Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). And affirmative defenses are

generally not resolvable on motions to dismiss. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025)

("This rule reflects that affirmative defenses require the defendant to prove facts beyond those necessary to support the plaintiff's *prima facie* case, making it difficult to assess the defense's merit on a 12(b)(6) motion where review is limited to the allegations in the complaint."); *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as preemption may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact."); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citation omitted). PHH is attempting to raise this defense early in the hopes of securing a windfall ruling that is ungrounded in the law.

Consent implicates not only whether Plaintiff assented to specific policies, but whether the privacy policies provide sufficient notice of what PHH is doing with the data. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (finding lack of consent was sufficiently pled and denying motion to dismiss). So it is not appropriate to resolve here. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) ("[T]he question of whether Plaintiffs consented to Plaid's collection of their personal information is a key factual dispute to be decided on the merits rather than a Rule 12 motion."); *see also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023).

The privacy policy that PHH spends precious pages reciting does not resolve this Motion or this case. "[I]f a reasonable Facebook user could plausibly have interpreted the contract language as *not* disclosing that Facebook would engage in particular conduct, then Facebook cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)."

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789–90 (N.D. Cal. 2019) (emphasis in original). The Complaint explicitly pleads that a reasonable consumer would not have understood PHH's policy as providing consent for these activities. *See, e.g.*, D.E. 1 at ¶¶ 12 ("The notice and consent PHH purports to provide and obtain, through the policies it provides on its website, is not appropriate or sufficient, as a reasonable Consumer would not have understood those policies as notifying the[m] of PHH's disclosure of their Personal and Financial Information to Third Parties for third- and fourth- party use."), 103–108. A reasonable consumer would not expect a mortgage company's privacy policy to permit that mortgage company to share the consumer's information with any old retailer of non-financial products or a competitor of the mortgage company. If a privacy policy simply permits the company to blast a consumer's information all over the Internet to anyone, anywhere, then what is the point of the policy at all? Companies that have discretion of what to share must exercise that discretion in accordance with their normal duties of good faith and fair dealing and consistent with a consumer's expectation of what would happen with the data they disclose to the mortgage company. PHH did not do that. D.E. 1 at ¶¶ 12, 103–108. So this Motion fails.

## II.   Plaintiff's Claims Are Well Pled.

PHH asserts a laundry list of theories to assert that it cannot possibly be liable under any of the claims presented in this case. D.E. 18 at 15.

### A.  The Negligence Claim is Well Pled

PHH argues that Plaintiff fails to allege duty, breach, and damages. D.E. 18 at 15–16. Of course, the elements of negligence are duty, breach, causation, and damages.

<u>Duty</u>. Contrary to PHH's baseless assertion that the Complaint relies "primarily" on a negligence per se theory, D.E. 18 at 15, the Complaint pleads a duty in multiple places arising not

just from statute but from other places as well. D.E. 1 at ¶¶ 171 (common law and reasonably prudent person standard), 172 (statute), 173 (statute), 175 (general duty allegations). PHH's position is at odds with the law and with common sense. *Shah*, 768 F. Supp. 3d at 1045 ("Here, Defendant's alleged lack of reasonable care in handling Plaintiffs' personal information caused foreseeable harm to Plaintiffs.") (rejecting a similar "no duty" argument). It is quite something for a mortgage and financial company to suggest that it owed its customers no duty to safeguard their information. Mortgages are one of the biggest investments an individual can make over their lifetimes, and mortgage companies have access to information that, if communicated to a stranger to that relationship, could inform the stranger that the mortgagor is cash-poor, recently secured a windfall, or needs to tap into their equity or refinance. Those are highly personal and confidential pieces of information that no reasonable consumer would expect to be shared with marketing companies.

Aside from a duty arising from California law, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) ("[T]here is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals."); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1018 (N.D. Cal. 2024), federal law supports a duty. 15 U.S.C. § 6801 ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."). PHH calls this self-evident duty "vague[,]" D.E. 18 at 16, which bespeaks its lack of respect for safeguarding consumer information from unnecessary disclosure. If by vague, PHH means very fact intensive and best resolved by a jury, Plaintiff agrees. Mortgage companies have a duty to safeguard the data of their customers, especially when the data they

collect is shared outside of the context of the mortgagor-mortgagee relationship. Imagine, in a less technical world, a loan officer disclosing to a drinking buddy over beers that Mrs. Jones had come to the bank in her Sunday best and tearily confessed that she needed to tap into her equity to pay her bills or needed to refinance to make ends meet. Sharing such information would be negligent and would unquestionably violate the bank employee's duty to keep Mrs. Jones' confidential information safe. PHH has a duty here.

Harm. Next, PHH attacks harm, arguing that the harms asserted are insufficient for a negligence claim to proceed. But that flies in the face of the actual text of the Amended Complaint, which sufficiently alleges the specific injuries suffered by Plaintiff, including improper disclosure of their information, lost value of his information, embarrassment, humiliation, frustration, and emotional distress. D.E. 1 at ¶¶ 145, 178, 179, 192. These are not speculative injuries. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (declining to dismiss negligence theory because plaintiffs' damages were not speculative, and noting at 786: "The alleged injury is 'concrete' largely for the reasons already discussed – if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely.").

Damages. PHH's damages argument (that the economic loss rule bars any damages) fails here because Plaintiff does plead non-economic damages. D.E. 1 at ¶ 145; *Shah*, 768 F. Supp. 3d at 1046 ("Plaintiffs, for instance, allege that their injuries include the lost time and money incurred to mitigate the effect of the use of their information. Court have found that lost time is not an economic loss."); *see also Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024); *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1039; *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020).

The negligence claims in Counts One and Two are well pled and survive.

**B.  Plaintiff Has Standing Under the UCL and CDAFA.**

PHH contends that Plaintiff has not alleged a legally sufficient injury to be liable under the UCL and the CDAFA (Counts Three and Four). D.E. 18 at 17. As PHH admits, Plaintiff has indeed alleged damages here sufficient to invoke the UCL, Cal. Bus. & Prof. Code § 17200 et. seq. *See* D.E. 1 at ¶¶ 145, 217, 226–230. The injuries Plaintiff alleges are cognizable bases for UCL liability. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("Indeed, the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *12 (D. Nev. Aug. 15, 2025) (similar).

PHH makes a similar argument regarding pleading loss under the CDAFA. D.E. 18 at 18. Here again, the injuries in the complaint are sufficient to invoke statutory standing, because Plaintiff alleges a disgorgement theory. D.E. 1 at ¶¶ 145, 205–207, 230, 253, 256, Prayer for Relief at ¶ G. Courts have said that such damages are sufficiently pled under the CDAFA. *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("Accordingly, a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data.") (denying summary judgment). And importantly, "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010).

**C.  Plaintiff Has Standing under the CCPA.**

PHH again suggests that Plaintiff lacks statutory standing to seek relief under Count Five. D.E. 18 at 18. The California Department of Justice's gloss on Section 1798.150, cited by PHH, is apropos of nothing and is just as legally binding as the unsupported argument PHH offers (i.e., not one bit). The law does not require Plaintiff to plead a security breach. *Shah*, 768 F. Supp. 3d at 1048–49 ("Courts, however, have also permitted the CCPA claims to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the 'defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.'") (quoting *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024)). *See also* D.E. 1 at ¶¶ 89, 145(f), 168(i), 185 (allegations regarding insufficient security protocols). PHH offers no real argument in support of its position other than to call this lawsuit "misguided."[2]

### D.  The Breach of Contract Claims Survive.

PHH contends that Plaintiff cannot point to a particular provision of the contract that was breached. Not so. D.E. 1 at ¶¶ 96, 97, 102–105, 106–108, 244, 246. PHH promised to protect and safeguard the data of Plaintiff and consumers like him and did not. It did so by abusing the discretion the contract afforded it and breached its duty of good faith. D.E. 1 at ¶ 104. So the specific sections of the contract that PHH breached are indeed alleged here. Plaintiff is permitted to plead in the alternative at this stage, including as to express and implied theories. The implied contract claim survives because the elements are the same, the details of what promises were

---

[2] PHH's position regarding the notice required under Section 1798.150(b) is likewise incorrect. First, Plaintiff sent the required notice under Cal. Civ. Code § 1798.150(b). D.E. 1 at ¶ 239. This argument is a red herring—*if* there is a deficiency, the remedy is to amend. Second, courts have found that statutory damages are sufficiently alleged in amended complaints following the expiration of the 30-day period. *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *13 (D. Nev. Sept. 19, 2024); *see also In re Progressive Leasing Breach Litig.*, No. 2:23-CV-00783-DBB-CMR, 2025 WL 213744, at *20 (D. Utah Jan. 16, 2025).

broken are adequately alleged, and courts have found implied contract claims survive where individuals disclose sensitive information to receive a benefit. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021).

### E. The Unjust Enrichment Claim Survives.

Under California law, unjust enrichment can be an alternative theory to breach of contract. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (plaintiffs stated claim for unjust enrichment under California law as alternative to contract theory); *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988, 998 (2015) ("An individual who has been unjustly enriched at the expense of another may be required to make restitution"). Alternative pleading is permitted by Rule 8, so this claim survives.

### F. The Breach of Confidence Claim Survives.

PHH asserts that a breach of confidence theory is untenable because it must be based on an implied obligation. D.E. 18 at 20. Again, that theory is sufficiently alleged here and pleading in the alternative (even inconsistently) is expressly permitted by Rule 8. D.E. 1 at ¶¶ 265–274.

### G. The CIPA Claim Survives.

PHH once again offers only its own misreading of the Complaint to argue the Complaint does not allege that PHH reviewed the contents of the communications. But the Complaint does allege that. D.E. 1 at ¶¶ 281, 283, 285, 307, 318, 323, 324. And this dovetails with Plaintiff's extensive discussion in the Complaint of the fact that PHH shares what types of products the user views on the website, whether they use a loan calculator, whether they have a coborrower, whether they are trying to cash out their equity, whether they are looking into buying an investment property, whether they are interested in a reverse mortgage, and real estate ownership information. D.E. 1 at ¶¶ 45, 63, 68, 78, 81, 142. Thus, the Section 631(a) claim is properly alleged. *Shah*, 768

F. Supp. 3d at 1054 ("Because Plaintiffs' communications included Plaintiffs' personal information, Defendant therefore disclosed contents of the communication."). And as to the Section 632(a) claim, PHH again mischaracterizes what the Complaint says. It does allege recording and lack of consent to that recording. D.E. 1 at ¶¶ 38, 41, 212, 215, 279–282, 287.

### H.  The Federal Wiretap Claims Survive.

On the final page of its brief, PHH argues that the federal wiretap claims fail because Plaintiff has improperly invoked the crime-tort exception and that these claims must fail because PHH's profit motive was not tortious. This is well-worn territory for this Court on these claims. Plaintiff is invoking the crime-tort exception to the Wiretap Act's consent defense. 18 U.S.C. § 2511(2)(d). And as other courts have found, the crime-tort exception applies here. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) ("Because Plaintiffs have otherwise adequately alleged that LiveRamp intercepted their communications for the purpose of 'associating their data with preexisting [identity] profiles' and then preparing that data for sale on LiveRamp's data marketplace—triggering the crime-tort exception and rendering consent an inapplicable defense—the Court declines to dismiss their Wiretap Act claim.") (internal citations omitted); *see also Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime – it was to make money.") (extensive analysis of crime-tort exception, relied on by *Riganian*). The tort claim for negligence claim survives, thus the ECPA claims survive too.

### I.  The Declaratory Judgment Claim Survives.

Because Plaintiff's other claims survive, the declaratory judgment claim does too.

### CONCLUSION

The gloss that PHH puts on these claims and on the allegations in the complaint do not govern here. Rule 8 does. This is a motion to dismiss seeped in snide asides[3] that lacks actual legal content. PHH spends two thirds of its brief regurgitating and wading through the confusing language of its privacy policy, which it says conclusively establishes that Plaintiff consented to these collection activities. Setting aside that the Complaint clearly says Plaintiff *never* consented, and setting aside that consent is an affirmative defense not suitable for resolution at the Rule 12 stage, the simple reality is that the policies do not go as far as PHH wishes. If a privacy policy for a company trusted with sensitive financial information authorized the company to share anything with anyone at any time, that would defeat the purpose of even having such a policy. And PHH is only entitled to win at this stage if there was consent (there was not) and if the policy is only susceptible to one interpretation (it is not).

Many of the issues raised by this motion are well-worn territory in this Court, with different judges going different ways on some of these same claims. What matters is this. When a consumer interacts with a mortgage company, the information they share with that mortgage company is private. This mortgage company has, in search of greater profit, decided that sharing and selling consumer data is good business. But in the process, the technologies that it employed caused the disclosure of data that should not have been shared under the law. Plaintiff has pled different theories of recovery to seek redress for those injuries. In today's connected world, information about a consumer (intimate information like why someone wants to refinance) is very valuable. That's why PHH sold it.

---

[3] "[A]llegations copied and pasted[,]" claims sharing "the same head-scratching premise," and stating "[t]hat is ridiculous" in response to a statement made in the Complaint. D.E. 18 at 7, 11, 13

PHH's motion is exactly what it seems like: a typical defense motion made on behalf of a company that went too far in pursuing profit over preserving consumer privacy. It should be denied.

Dated: November 14, 2025

Respectfully submitted,

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

Carly M. Roman, No. 349895
STRAUSS BORRELLI, PLLC
2261 Market Street, Suite 22946
San Francisco, CA, 94114
(872) 263-1100
(872) 263-1109 (facsimile)
croman@straussborrelli.com

***Counsel for Plaintiff and the Proposed Classes***

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
3:25-cv-05323-RFL

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document

Date: November 14, 2025                                   */s/Natalie A. Lyons*
                                                          Natalie A. Lyons

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
3:25-cv-05323-RFL