ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice forthcoming*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
Melissa Levin (SBN 328146)
melissalevin@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700

*Attorneys for Defendant*
PHH MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ALLISON, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE,<br><br>Defendant. | Case No. 3:25-cv-05323-RFL<br><br>**DEFENDANT PHH MORTGAGE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: January 6, 2026<br>Time: 10:00 a.m.<br><br>Judge: Hon. Rita F. Lin |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A. Plaintiff's Claims Fail As A Matter Of Law Because He Consented. ..................... 1

    B. Plaintiff's Claims Fail As A Matter Of Law For Myriad Additional Reasons. ................................................................................................................ 4

        1. Plaintiff's negligence claims fail to establish duty, harm, or damages. ............................................................................................... 4

        2. Plaintiff lacks standing under the UCL, CDAFA, and CCPA. .................... 5

        3. Plaintiff has not stated a breach of contract claim. .................................... 7

        4. Plaintiff has not stated an unjust enrichment claim. .................................. 8

        5. Plaintiff has not stated a breach of confidence claim. ................................ 8

        6. Plaintiff has not stated a CIPA claim. ........................................................ 8

        7. Plaintiff has not stated a federal Wiretap Act claim. ................................ 10

        8. Plaintiff has not stated a declaratory judgment claim. ............................. 10

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litigation*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 1, 2, 8

*In re Bank of America California Unemployment Benefits Litigation*,
  674 F. Supp. 3d 884 (S.D. Cal. 2023) ................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 1

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ............................................................................ 3, 6

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. July 22, 2024) ..................................................................... 7

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................................ 6

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................ 3

*Gardiner v. Walmart Inc.*,
  2021 WL 2520103 (N.D. Cal. 2021) ................................................................................... 5

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. 2015) ................................................................................... 1

*Katz-Lacabe v. Oracle America, Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .............................................................................. 10

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................................. 1, 2, 3, 10

*Lau v. Gen Digital Inc.*,
  2023 WL 10553772 (N.D. Cal. 2023) ................................................................................. 6

*M.D. v. Google LLC*,
  2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ............................................................ 1, 2, 3

*Moore v. Centrelake Medical Group, Inc.*,
  83 Cal. App. 5th 515 (2022) ................................................................................................ 5

*Shah v. Capital One Financial Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................................ 10

DEFENDANT PHH MORTGAGE'S REPLY IN SUPPORT OF DISMISSAL – Case No. 3:25-cv-05323-RFL

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................................................. 1

*Wesch v. Yodlee, Inc.*,
  2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................................................................... 6

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................................... 7

*In re Zynga Privacy Litigation*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................................................. 8

**Statutes**

California Civil Code § 1798.150 ................................................................................................. 7

## I.  INTRODUCTION

Plaintiff's opposition brief defends this lawsuit only by distorting the governing pleading standard, mischaracterizing the Complaint, and outright ignoring many of PHH's grounds for dismissal. None of that cures the fundamental flaw in his pleadings: Plaintiff contractually authorized the alleged information sharing at issue. Nor does Plaintiff's obfuscation save the claims from their various other legal shortcomings. The Court should dismiss with prejudice.

## II.  ARGUMENT

### A.  Plaintiff's Claims Fail As A Matter Of Law Because He Consented.

Plaintiff defends his claims by disputing his own contractual consent. But that tactic demonstrates a basic misunderstanding of the pleading standard. His brief spends several pages insisting that "the court must presume" he never consented to PHH's information sharing simply because the Complaint says, in conclusory fashion, that he "did not consent." Opp. 4-5; *see id.* at 7 ("a reasonable consumer would not have understood PHH's policy as providing consent for these activities"). But those assertions are entitled to no weight. They should first be rejected because they contradict his admission that he entered into the Privacy Contracts, which specifically disclose the challenged activities. *See* Compl. ¶¶ 90, 135, Exs. A–D. Such "contradictory allegations … are inherently implausible." *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. 2015); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts "need not … accept as true allegations that contradict" exhibits). Moreover, the assertions are quintessential "legal conclusions couched as factual allegations" and are not "sufficient" to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is why courts have set aside nearly identical assertions when dismissing claims on consent grounds. *See, e.g.*, *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025) (dismissing even though "Plaintiffs allege they did not consent to Defendant's interception of their personal information"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1051 (N.D. Cal. 2025) (dismissing claims even though "Plaintiffs allege" defendant shared information "without obtaining their consent"). The existence of consent rises or falls solely on the "***factual content***" pled. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

As the Motion explained, Plaintiff's own allegations admit the facts necessary to establish his contractual consent to the alleged information sharing. First, Plaintiff pleads that he agreed to several "Privacy Contracts" with PHH, and that he used the company's website "with the understanding that PHH would not share his Personal and Financial Information *except as agreed*" in those contracts. Compl. ¶¶ 90, 135 (emphasis added). Plaintiff's brief does not dispute that, arguing only that "PHH broke" the "contracts." Opp. 5. But that is another bare legal conclusion entitled to no weight. The Court need only compare the relevant contractual terms and the scope of the alleged disclosures to confirm the information sharing did not exceed what Plaintiff agreed to.

That comparison is fatal to Plaintiff's claims. As the Motion detailed, the terms of the Privacy Contracts unambiguously authorized PHH to share website visitors' personal information with Google, Yahoo!, Microsoft, and other third parties for their marketing purposes. Mot. 1–2, 7. Indeed, Plaintiff expressly admits he agreed that PHH could decide how to share that information: The Consumer Privacy Notice defines "the reasons" that PHH may "choose[ ] to share" website visitors' "personal information," Compl. ¶ 98, and one authorized reason is "[f]or our nonaffiliates to market to you," where "nonaffiliate" is defined as including *any* "financial" or "nonfinancial" (including "technology") company. *Id.* ¶¶ 98, 101. PHH's Privacy & Security Policy echoes those disclosures, providing that PHH may use website visitor information "to work with marketing partners," including unaffiliated "retailers and other third parties" who will use the shared information "to market to you." *Id.* ¶¶ 91–92. Plaintiff's brief simply ignores that dispositive contractual language, ironically chiding PHH for "mak[ing] much hay of the exact language in its privacy policy." Opp. 5. That is precisely the point. The contractual language is critical "factual content" on the issue of consent. *Iqbal*, 556 U.S. at 678 (2009); *see M.D.*, 2025 WL 2710095, at *5 (language of defendant's "Privacy Policy … makes clear" that plaintiff consented); *Lakes*, 777 F. Supp. 3d at 1057 (defendant's "Privacy Policy" sufficiently "granular" to establish consent).

The remaining question is whether the alleged information sharing falls within the scope of what the Privacy Contracts disclosed—and Plaintiff agreed—PHH could perform. The answer is plainly yes. PHH was contractually authorized to share Plaintiff's "personal information" with non-affiliated third parties "for their use in their own advertising and marketing." Compl. ¶ 126; *see id.*

1  ¶¶ 92, 98 (authorizing PHH to share information for nonaffiliates "to market to you"). The Motion
2  explained why Google, Yahoo!, and Microsoft qualify as "nonaffiliates" under the Consumer
3  Privacy Notice. Mot. 7. Plaintiff does not even try to show otherwise, and the terms of the Privacy
4  Contracts are unambiguous. As in *M.D.* and *Lakes*, the Privacy Contracts squarely address
5  information sharing with these third parties for marketing purposes and make crystal clear that it is
6  contractually permitted. *See M.D.*, 2025 WL 2710095, at *5; *Lakes*, 777 F. Supp. 3d at 1057.

7  Unable to identify any gray area in the Privacy Contracts' meaning or application, Plaintiff
8  resorts to complaining that a "reasonable consumer would not expect a mortgage company's
9  privacy policy" to work that way. Opp. 7. But what consumers might expect to find **before** reading
10 PHH's Privacy Contracts is irrelevant. What matters is how a reasonable consumer would
11 understand what the Privacy Contracts **actually say**. *See Lakes*, 777 F. Supp. 3d at 1055 ("**The**
12 **disclosures** must have only one plausible interpretation for a finding of consent." (emphasis
13 added)); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794
14 (N.D. Cal. 2019) ("dismissal of a claim" on consent grounds premature only "if a reasonable …
15 user could have plausibly interpreted **the contract language** as not disclosing" the challenging
16 sharing (emphasis added)). As explained, there is no doubt on that issue—the Privacy Contracts
17 expressly authorize the challenged information sharing. Plaintiff agreed to those terms and remains
18 bound by them even if he now questions "the point of the policy." Opp. 7.

19 Plaintiff points to cases like *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021),
20 where courts concluded that unresolved factual disputes precluded dismissal on consent grounds.
21 Opp. 6. But those decisions involved different facts. *Cottle*, for example, declined even to consider
22 the defendant's privacy policy because the pleadings, unlike Plaintiff's Complaint, did not "refer
23 extensively" enough to the policy to incorporate it by reference. 536 F. Supp. at 478. It also makes
24 no difference whether consent is an "affirmative defense." Opp. 5-6. As *M.D.* and *Lakes*
25 demonstrate, and Plaintiff's own cites confirm, an affirmative defense is a proper basis for dismissal
26 on the pleadings where, as here, it "raises no disputed issues of fact." *Id.* at 6 (quoting *Scott v.*
27 *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)).

28 Plaintiff does not dispute that if he consented to the alleged information sharing, all of his

claims must be dismissed. Mot. 8-9. The Court should grant PHH's Motion on that basis alone.

### B. Plaintiff's Claims Fail As A Matter Of Law For Myriad Additional Reasons.

Plaintiff's claims also fail as a matter of law for a variety of additional, independent reasons.

#### 1. Plaintiff's negligence claims fail to establish duty, harm, or damages.

**No breach of duty.** The Complaint attempts to plead duty in two ways: By citing the Federal Trade Commission ("FTC") and Gramm-Leach-Bliley ("GLB") Acts as statutory sources of duty under the negligence per se doctrine, and by invoking a common-law duty to "protect" user data with "industry-standard privacy procedures." Compl. ¶¶ 171-73. The Motion explained why both approaches fail as a matter of law, and Plaintiff's brief offers no answer.

First, the FTC and GLB Acts do not provide private rights of action. Courts have long deemed negligence per se inapplicable in those circumstances—including regarding these particular statutes. Mot. 9-10 (citing *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) (FTC Act) and *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1158 (D. Utah 2018) (GLB Act)). Plaintiff ignores that rule when he insists that "federal law supports a duty." Opp. 8.

Second, the common-law duty to "protect" user data with "privacy procedures" has no application here. Plaintiff does not allege that PHH was deployed insufficient safeguards against unauthorized exfiltration. Mot. 10. So PHH cannot have violated its duty to implement such safeguards. Plaintiff highlights the mismatch by citing ***a data breach decision*** as the source of this "duty arising from California law." Opp. 8 (citing *In re Accellion, Inc. Data Breach Litigation*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024)). And he misses the point by claiming that PHH is "suggest[ing] that it owed its customers no duty to safeguard their information." *Id.* PHH is not denying the existence of the duty that Plaintiff invokes—just its relevance to his negligence claim.

**No harm.** Plaintiff separately fails to plead cognizable harm. Mot. 10-11. Although the Complaint lists several purported injuries—that Plaintiff somehow suffered "[e]mbarrassment, humiliation, frustration, and emotional distress," "[d]ecreased value of" his information, and "[i]ncreased risk of future harm resulting from future use and disclosure of" his information, Compl. ¶ 145—it does not plead the facts necessary to substantiate them. Regarding decreased value of information, for example, the Complaint alleges no facts "explaining what economic value

the information held *to Plaintiffs* and how it was lost through Defendant's dissemination." Mot. 10-11 (quoting *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024)). Courts have rejected exactly these sorts of vague, unsubstantiated assertions as too "conclusory" to establish cognizable harm. *Id.* Plaintiff again ignores that precedent, pointing instead to an inapposite discussion of the distinct "concrete injury" test for Article III standing. Opp. 9 (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019)).

**No damages.** Plaintiff does not dispute that the economic loss doctrine applies with special force here because his claims are not "independent of [Plaintiff's privacy] contracts with" PHH, and a central purpose of the rule is to "prevent[ ] the erosion of contract doctrines by the use of tort law to work around them." Mot. 11 (quoting *Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1114 (9th Cir. 2024)). His sole counter is that the Complaint alleges "lost time and money incurred to mitigate the effect of" PHH's information sharing. *Id.* (quoting *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046 (N.D. Cal. 2025)). That fails twice over. For one thing, the Complaint does not plead facts establishing that Plaintiff spent any time or money on mitigation efforts. It is not clear what "mitigation" would even mean here. Plaintiff does not claim that criminal actors obtained his personal information, such that he must guard against identity fraud. He merely alleges that he received some "targeted advertisements" while using the internet. Compl. ¶¶ 145, 179. In any event, lost time and money are economic harms. Lost money is of course economic in nature. And both federal and state courts in California have held that allegations of "lost time" likewise entail only "economic harm not recoverable under the economic loss doctrine." *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. 2021) (collecting cases); *see In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 920 (S.D. Cal. 2023); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 537 (2022). Plaintiff contends otherwise by citing *Shah*. But that decision mistakenly relied on the flawed decision in *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019), which courts have convincingly rejected as lacking "any reasoning." *Moore*, 83 Cal. App. 5th at 537.

### 2. Plaintiff lacks standing under the UCL, CDAFA, and CCPA.

The Complaint attempts to plead a cognizable UCL injury (lost money or property) solely

1  by asserting a supposedly diminished "property interest in Plaintiff's … Personal and Financial
2  Information." Mot. 11 (quoting Compl. ¶ 217). But the Complaint pleads no facts plausibly
3  establishing any such diminishment—a point Plaintiff does not attempt to rebut. *Id.*; *supra* 5. In
4  any event, courts have consistently held that "personal information does not constitute property for
5  purposes of a UCL claim." Mot. 11 (quoting *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714
6  (N.D. Cal. 2011)). Plaintiff urges the Court to hold otherwise by following *Calhoun v. Google LLC*,
7  526 F. Supp. 3d 605 (N.D. Cal. 2021). But that decision has been roundly criticized and rejected
8  by other decisions in this District because it relied on inapposite case law. *See Doe I v. Google LLC*,
9  741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (rejecting *Calhoun*'s "tenuous" reasoning); *Lau v. Gen*
10 *Digital Inc.*, 2023 WL 10553772, at *6–7 (N.D. Cal. 2023), *aff'd sub nom. Karwowski v. Gen*
11 *Digital, Inc.*, 2025 WL 3002610 (9th Cir. 2025); *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4
12 (N.D. Cal. July 19, 2021); *Cottle*, 536 F. Supp. 3d 4at 484 n.8.

13      The Complaint likewise relies on the supposed diminished value of Plaintiff's information,
14 along with his purported overpayment for PHH's "financial services," to establish the "economic
15 harm or loss" required for CDAFA standing. Mot. 12 (quoting *Williams v. Facebook, Inc.*, 384 F.
16 Supp. 3d 1043, 1050 (N.D. Cal. 2018)). The Motion explained that those harms are legally
17 insufficient because they were not ***caused by*** "damage to the computer system, network, program,
18 or data contained on that computer"—the form of causation that CDAFA, an anti-hacking law,
19 demands. *Id.* (quoting *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *19 (E.D. Cal. 2025)).
20 Plaintiff again ignores this flaw, arguing that the damages he seeks sound in "disgorgement" and
21 that CDAFA "sets no threshold level of damage or loss." Opp. 10. Those points do nothing to
22 relieve Plaintiff of the obligation to plead economic loss ***caused by*** harm to his computer system.

23      Plaintiff suggests that "PHH offers no real argument in support of its position" that the
24 CCPA provides a private right of action only for security failures. Opp. 11. He also dismisses the
25 California Department of Justice's statements to that effect as erroneous "gloss." *Id.* But the basis
26 for PHH's reading (and the Department of Justice's guidance) could hardly be clearer: The statute
27 states that litigants may sue only for a § 1798.150 violation that entails "unauthorized access and
28 exfiltration, theft, or disclosure" of "nonencrypted and nonredacted personal information" "as a

1  result of the business' violation of the duty to implement and maintain reasonable security
2  procedures and practices." Cal. Civil Code § 1798.150(a), (c). The private right of action is thus
3  limited to "Personal Information Security Breaches." *Id.* § 1798.150. Plaintiff's insistence that he
4  need not "plead a security breach," Opp. 11, flies in the face of that statutory language. More
5  broadly, even Plaintiff does not dispute that the CCPA's private right of action is available only for
6  violations of § 1798.150 (however Plaintiff may wish to characterize those violations). Plaintiff's
7  claim rests exclusively on a different section, § 1798.115. *See* Compl. ¶¶ 236–38. Extending a
8  private right of action that far would impermissibly rewrite the statute.[1]

### 3.    Plaintiff has not stated a breach of contract claim.

Plaintiff's cursory discussion of the contract claim confirms that the Complaint states no viable legal theory. Plaintiff does not dispute that he "must allege the specific provisions in the contract creating the obligation the defendant is said to have breached," *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011), including by "delv[ing] into additional detail on the terms and scope of [any] alleged implied contract," *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016). But he cannot offer the requisite specifics. Instead of quoting particular contractual terms, Plaintiff string-cites ten paragraphs of the Complaint, covering multiple contracts, and then makes the vague assertion that "PHH promised to protect and safeguard the data of Plaintiff and consumers like him" but broke that promise by "abusing the discretion the contract afforded it." Opp. 11. That is not just insufficiently detailed—it is incoherent on its own terms. If PHH contractually reserved "discretion" (i.e., the right) to share information with third parties for their marketing purposes, then it never "promised" not to do so.

Plaintiff also does not dispute that "an implied contract cannot exist when there is an express contract between parties covering the same subject." *Doe I v. Google LLC*, 2024 WL 3490744, at *10 (N.D. Cal. 2024). He merely notes that it may be permissible "to plead in the alternative … as to express and implied theories." Opp. 11. But that is not what the Complaint does. It offers a single

---

[1] Plaintiff inexplicably suggests that Compl. ¶ 239 shows he "sent the required notice" under the CCPA before filing. Opp. 11 n.2. That paragraph says that he "***will send*** Defendant notice," meaning it had not been sent at filing. Compl. ¶ 239 (emphasis added). That bars statutory damages.

claim premised on both "express and implied promises." Mot. 13 (quoting Compl. ¶¶ 242–44).

### 4.     Plaintiff has not stated an unjust enrichment claim.

A similar flaw dooms the Complaint's unjust enrichment claim, even if this Court were to reframe it as one for restitution. Plaintiff urges that "unjust enrichment can be an alternative theory to breach of contract." Opp. 12. But that may be true only where the unjust enrichment claim "allege[s] … the absence of an enforceable agreement." Mot. 14 (quoting *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 207 (2023)). There is no such allegation here.

### 5.     Plaintiff has not stated a breach of confidence claim.

Plaintiff does not dispute that "[a] breach of confidence claim [] must be based on an implied obligation or contract—not an express contract." *Id.* (quoting *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *8 (N.D. Cal. Dec. 19, 2019)). He simply asserts, without further explanation, that such a "theory is sufficiently alleged here." Opp. 12. The Motion showed why that is wrong: Far from invoking an implied obligation or contract, the Complaint alleges that PHH owed Plaintiff a duty of confidence pursuant to the "explicit … understandings" and "terms" set out in the Privacy Contracts. Mot. 14 (quoting Compl. ¶¶ 267–69).

### 6.     Plaintiff has not stated a CIPA claim.

**Section 631(a).** This provision applies only if PHH impermissibly shared a message's contents—that is, "the intended message conveyed" by the sender. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The Complaint cannot plead that element merely by repeating the word "contents." Opp. 12. It must allege "factual content" that shows PHH shared a substantive message that Plaintiff conveyed. *Iqbal*, 556 U.S. at 678. Plaintiff suggests, in a single sentence, that the Complaint makes that showing with "extensive discussion … of the fact that PHH shares what types of products the user views on the website, whether they use a loan calculator, whether they have a coborrower, whether they are trying to cash out their equity, whether they are looking into buying an investment property, whether they are interested in a reverse mortgage, and real estate ownership information." Opp. 12. But the Motion parsed the relevant allegations in detail and explained precisely why they fall short. Mot. 3-4, 7.

To begin with, PHH never purportedly shared "whether [a user has] a coborrower" or "real

1  estate ownership information" with Google, Yahoo!, or Microsoft. *Contra* Opp. 12. As the Motion
2  explained, the Complaint alleges that PHH shared that information ***only with its third-party***
3  ***application processor,*** **Blend.** Mot. 4. That is the sole context in which PHH disclosed whether an
4  applicant indicated she has "a coborrower" or owns "any real estate"—information that Blend
5  needed to process applications. *Id.* (quoting Compl. ¶ 63). Those allegations are not the basis for
6  Plaintiff's claims under § 631(a) (or any other cause of action). The Complaint alleges that PHH
7  violated § 631(a) solely by sharing his information with third parties like Google "***for marketing***
8  ***and profit***"—not with Blend to process loan applications. Mot. 14 n.8 (quoting Compl. ¶ 286).

9  The remaining information sharing has nothing to do with the contents of communications.
10 According to the Complaint, PHH informs Google of the ***bare fact*** that a website visitor navigated
11 to certain webpages, like those designed to help visitors "learn about getting a loan pre-approval"
12 or access PHH's loan "calculator." Compl. ¶¶ 59, 78; *see id.* ¶¶ 60, 67–68. PHH also shares a few
13 data points about how visitors navigate these pages: whether and how far a visitor "scrolled" on the
14 "Get-started" page, *id.* ¶ 61; whether a visitor started or submitted forms related to an "equity loan"
15 or "callback request," *id.* ¶¶ 70, 74–76; and whether a visitor submitted information to the loan
16 calculator, *id.* ¶¶ 78–80. There is no allegation that PHH shares with Google (or anyone else) any
17 ***substantive information*** that a visitor inputs on any of PHH's webpages. Mot. 3.

18 PHH also allegedly shares with Google, Yahoo!, and Microsoft limited information related
19 to libertyreversemortage.com, a separate website to which PHH allegedly directs interested visitors.
20 *Id.* ¶ 81. PHH purportedly shares that a user has reached that separate website and interacted with
21 its "reverse mortgage calculator." *Id.* ¶¶ 82–83, 85–86. Once more, however, Plaintiff does not
22 allege that PHH shares any of the ***substantive information*** that website visitors convey. Mot. 4.

23 Plaintiff tries to sweep those details under the rug, but they demonstrate that the Complaint
24 fails to allege that PHH shared ***the contents*** of any communication with Google, Yahoo!, or
25 Microsoft. Rather, as the Motion noted, PHH shared only the sort of website usage information that
26 session replay software might collect, like which webpages a user visited. Session replay does not
27 access the "content" of a website visitor's communications. Mot. 15 (quoting *Yoon v. Lululemon*
28 *USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021)). The same is true here. Plaintiff's

citation to *Shah*, Opp 12-13, simply underscores the point. That decision ruled that the contents of communications were at issue solely because the defendant allegedly shared all sorts of substantive information, like "bank account information," not at issue here. *See Shah*, 768 F. Supp. 3d at 1041.

**Section 632(a).** Plaintiff barely defends the § 632(a) claim, which is premised on PHH itself recording information about Plaintiff's website visits. Plaintiff makes no effort to explain how that was unauthorized when the Privacy Contracts disclosed, and Plaintiff agreed, that PHH would "collect" information about Plaintiff "when you visit our websites." *Id.* ¶ 91.

### 7. Plaintiff has not stated a federal Wiretap Act claim.

The Complaint fails to satisfy the Wiretap Act's crime-tort exception for two reasons. First, it does not adequately plead that PHH's sharing of information was independently tortious. Plaintiff suggests without elaboration that the tort here was "invasion of privacy," Compl. ¶ 308, but the Complaint never identifies its elements or alleges facts showing PHH performed them. Mot. 15. Plaintiff does not acknowledge this fatal shortcoming.

Second, even if the Complaint adequately pled that PHH's information sharing was tortious, it fails to allege that PHH acted with the *purpose* of committing such a tort. *Id.* All it says on that front is that PHH acted "to increase its profit margins and save on marketing costs." Compl. ¶ 309. As Plaintiff notes, this is "well-worn territory," Opp. 13—courts have repeatedly ruled that allegations of a profit motive alone do not to establish the tortious purpose that the crime-tort exception requires. *See Lakes*, 777 F. Supp. 3d at 1058; *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). It is of course true that "an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose." Opp. 13 (quoting *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. 2025)). But the pleadings must separately allege such a purpose, and the Complaint never does.

### 8. Plaintiff has not stated a declaratory judgment claim.

Plaintiff's derivative declaratory judgment claim fails on all the same grounds.

### III. CONCLUSION

For the foregoing reasons, PHH requests dismissal of the Complaint with prejudice.

| | |
|---|---|
| Dated: December 5, 2025 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | /s/ *Rebecca Harlow* |
| | Rebecca Harlow (SBN 281931) |
| | rharlow@orrick.com |
| | Melissa Levin (SBN 328146) |
| | melissalevin@orrick.com |
| | 405 Howard Street |
| | San Francisco, CA 94105 |
| | Telephone: (415) 773-5700 |
| | |
| | Aravind Swaminathan (*pro hac vice forthcoming*) |
| | aswaminathan@orrick.com |
| | 401 Union Street, Suite 3300 |
| | Seattle, WA 98101 |
| | Telephone: (206) 639-9157 |
| | |
| | *Attorneys for Defendant PHH Mortgage* |