ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700

*Attorneys for Defendant*
PHH MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ALLISON, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE,<br><br>Defendant. | Case No. 3:25-cv-05323-RFL<br><br>**DEFENDANT PHH MORTGAGE'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Judge: Hon. Rita F. Lin |

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant PHH Mortgage ("PHH") hereby moves this Court for an order granting leave to file a motion for reconsideration of this Court's March 31, 2026 Order to the extent it (1) concluded a reasonable consumer could have read the Privacy Contracts not to authorize the collection of information on which Plaintiff's claims are premised; (2) treated the Blend allegations as a basis for Plaintiff's negligence and ECPA claims (or any other cause of action); and (3) permitted the ECPA claim to proceed while dismissing the § 631(a) claim.

This Motion is made pursuant to Local Civil Rule 7-9 on the ground that the March 31, 2026 Order failed to consider material facts or dispositive legal arguments which were presented in PHH's motion to dismiss. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, and all other supporting papers and documents on file with the Court, the record in this action, and such oral and documentary evidence as may be presented at any hearing.

Dated:  April 30, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP


/s/ *Aravind Swaminathan*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700

*Attorneys for Defendant PHH Mortgage*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................................ii

I.     INTRODUCTION ........................................................................................................................ 1

II.    LEGAL STANDARD .................................................................................................................. 2

III.   ARGUMENT ............................................................................................................................... 2

       A.     The Order Misapprehended the Privacy Contracts' Disclosures and the Extent to Which They Apply to Plaintiff and His Claims ...................................... 2

       B.     The Order Overlooked That the Complaint's Allegations About Information Shared With Blend for Loan Processing are not a Basis for Plaintiff's Marketing-Based Claims ........................................................................ 6

       C.     The Order Overlooked That Plaintiff's ECPA Claim Must Be Dismissed for the Same Reasons as the § 631(a) Claim ........................................................... 8

IV.    CONCLUSION ............................................................................................................................ 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ...................................... *passim*

California Penal Code § 502 .......................................................................................................... 4

California Penal Code § 631(a) .......................................................................................... 1, 2, 8, 9

California Penal Code § 632 .......................................................................................................... 4

**Rules**

Local Civil Rule 7-9 ...................................................................................................................... 1, 2

DEFENDANT PHH MORTGAGE'S MOTION FOR LEAVE TO SEEK RECONSIDERATION – CASE NO. 3:25-CV-05323-RFL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendant PHH Mortgage ("PHH") respectfully requests leave to file a motion for reconsideration regarding three issues in the Court's March 31, 2026 Order (ECF No. 44) (the "Order").  The Order granted in part and denied in part PHH's Motion to Dismiss (ECF No. 18) (the "Motion").  Along the way, the Order failed "to consider material facts or dispositive legal arguments which were presented to the Court," L.R. Civil 7-9(b), as to three disputes: (1) whether a reasonable consumer could have read the Privacy Contracts not to authorize the collection of information on which Plaintiff's claims are premised; (2) whether Plaintiff's claims are based, even in part, on allegations that PHH shared information with its loan processor, Blend; and (3) whether the Complaint may state an ECPA claim if it fails to state a § 631(a) claim.

On the first dispute, the Order ruled that by agreeing to the Privacy Contracts, Plaintiff did not as a matter of law consent to the collection of his website navigation data for subsequent sharing with third-party marketing companies.  The Order did not contest that PHH unambiguously reserved the right to share the user information it collected with third-party marketers.  But the Order concluded that a reasonable consumer could read the Privacy Contracts to "disavow any collection of website activity *at the individual level*."  Order 10 (emphasis).  In the Order's view, a reasonable consumer could have concluded that PHH would collect their information only "in the aggregate."  Order 9.

In so ruling, the Order made two errors that independently warrant reconsideration.  First, the Order relied chiefly on the provisions of PHH's CCPA Disclosure, which by its own terms ***does not apply*** to this case.  Second, the Order conflated how the applicable Privacy Contracts expressly authorize PHH to ***collect*** user information (which necessarily happens at the individual level) with how the Privacy Contracts authorize PHH to ***later format the data for viewing*** (which is legally irrelevant to Plaintiff's claims or PHH's consent defense).  PHH respectfully seeks reconsideration as to whether the Privacy Contracts establish Plaintiff's consent to the alleged data collection as a matter of law, and a revised order dismissing all claims with prejudice on that basis.

On the second dispute, the Order noted that PHH allegedly shared with its loan processor,

1

Blend—but no other third party—substantive information that users provided about their coborrower status, real estate ownership, and loan type. The Order then treated that alleged sharing as a basis for Plaintiff's lawsuit, relying on it to sustain the negligence and ECPA claims. In doing so, the Order overlooked PHH's explanation (which Plaintiff did not dispute) that the Blend allegations *are not a basis for Plaintiff's claims*. All of Plaintiff's claims are premised solely on PHH's purportedly unauthorized sharing of information *for marketing purposes*. There is no allegation that PHH shared any data with Blend for marketing purposes—just loan processing services. The allegations involving Blend are thus legally irrelevant and appear to have been included in the Complaint solely to generate the sort of confusion that emerged here. PHH respectfully seeks reconsideration as to whether Plaintiff has stated a negligence or ECPA claim, and a revised order dismissing both causes of action.

On the third dispute, the Order correctly dismissed the § 631(a) claim for failing to allege that PHH intercepted the "contents" of any communication. It also correctly noted that ECPA shares the same elements, including the contents requirement. But the Order mistakenly overlooked that its ground for dismissing the § 631(a) claim necessarily doomed the ECPA claim as well. PHH respectfully seeks reconsideration as to whether Plaintiff has stated an ECPA claim, and a revised order dismissing that cause of action.

## II.    LEGAL STANDARD

Under Local Civil Rule 7-9, anytime "[b]efore the entry of a judgment," a "party may make a motion ... requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order." Leave to file such a motion is properly granted when the applicant makes any of a number of showings including, as relevant here, "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." L.R. Civil 7-9(b).

## III.    ARGUMENT

### A.    The Order Misapprehended the Privacy Contracts' Disclosures and the Extent to Which They Apply to Plaintiff and His Claims

The Order held that Plaintiff's agreement to the Privacy Contracts did not establish his

consent to PHH's collection of his website navigation data for subsequent sharing with third-party marketing companies.  The Order did not dispute PHH's showing that the Privacy Contracts unambiguously disclosed the possible sharing of user information for marketing purposes.  Mot. 6-7.  But the Order concluded that a reasonable consumer could read the Privacy Contracts to only authorize the collection of information "in the aggregate," not on a per-session basis.  Order 9.  PHH respectfully submits that no reasonable consumer could read the Privacy Contracts that way, and that the Order misapprehended two critical points in ruling otherwise.

First, the Order relied principally and heavily on language from the CCPA Disclosure, which does not apply to Plaintiff or other consumers of mortgage services.  The Order emphasized that "[t]he CCPA Disclosure unequivocally states, 'We do not sell or share personal information for cross-context behavioral advertising. We do not sell or share sensitive personal information.'"  *Id.* (quoting Compl. Ex. B, at 9).  The Order further highlighted that "[t]he CCPA [Disclosure] also fails to list 'Internet or Other Similar Network Activity,' which includes information about a consumer's interactions with PHH's website, among the categories of information that PHH discloses to third parties."  *Id.* (quoting Compl. Ex. B, at 6-7).  The Order framed these provisions of the CCPA Disclosure as the chief source of potential consumer confusion:  How could a consumer read "We do not sell or share personal information for cross-context behavior advertising" and understand that PHH would share information for marketing purposes?

The answer is simple:  The CCPA Disclosure is irrelevant to this case because it does not apply to PHH's provision of mortgage services to Plaintiff or other consumers.  Rather, the CCPA Disclosure expressly states at the outset that it "'does not apply' to any 'consumer or customer of personal, household, or family financial products or services.'"  *Id.* (citing Compl. Ex. B, at 1).  No reasonable consumer—particularly a mortgage holder like Plaintiff—could read that disclosure and believe the CCPA Disclosure applied to PHH's mortgage or reverse mortgage websites, which plainly constitute financial products and services (of which Plaintiff is a customer).  Indeed, Plaintiff **did not dispute** that the CCPA Disclosure has "no application" to this case.  Mot. 2.  The Order overlooked this undisputed point when it relied on the CCPA Disclosure to conclude that Plaintiff did not consent to PHH's alleged sharing of information.    That alone warrants

reconsideration, as the Order's remaining analysis was interwoven with its mistaken reliance on the CCPA Disclosure and may look entirely different once that contract is removed from consideration.

Second, the Order conflated two distinct factual issues and misapprehended their relationship to Plaintiff's claims and PHH's arguments: (1) *what* data PHH collected, and (2) how PHH *formatted the data for viewing*. Those are different considerations. When an individual uses a website, the website may collect data about the individual's visit. The question of *what* data the website collects is necessarily answered on an individual level: did the website capture that individual user's clicks, webpage visits, or substantive inputs? It would make no sense to suggest that data about an individual's interactions with a website might only be collected "in the aggregate." Any data that a website collected from a user's visit, and that might give rise to that user's legal claim, is necessarily specific to the user. By analogy, if a plaintiff sued a police officer for collecting his computer without a warrant, the officer would have collected the computer from the plaintiff on an individual basis even if it was part of a broader sweep in which the officer also collected items from others.

In contrast, when a website *formats collected data for viewing* (either by the website itself or a third party), it may view data on an individual, per-visit basis, or combine data from various visits and view it "in the aggregate." Returning to the analogy, the police officer could itemize each item collected in the sweep by individual or, alternatively, prepare a report that simply lists the total numbers of collected items. Even if the officer took the latter approach, however, each item still would have been *collected* from a specific person on an individual basis; it simply would not later be *viewable* on an individual basis.

Critically, Plaintiff's claims are based solely on what data PHH purportedly collected for marketing purposes—*not* on how PHH subsequently formatted the data for viewing. The § 632 claim, for example, seeks to impose liability for PHH's alleged "recording" of Plaintiff's website visits. Compl. ¶ 278. His § 502 claim seeks to impose liability for PHH's alleged efforts to "obtain" data about his visits. *Id.* ¶ 201. His UCL claim seeks to impose liability because PHH allegedly "records" his visits. *Id.* ¶ 212. These and other claims assert that PHH broke the law

4

merely by *collecting* information about Plaintiff's use of the website for the purpose of later sharing it with marketers.  It makes no difference how PHH *later formatted* the shared data for viewing by third parties; Plaintiff asserts that PHH is liable merely for collecting data about his website visits for an unauthorized purpose, *regardless* of whether PHH ultimately formatted that data for viewing by third parties on an individual level or aggregated with other users' information.

The Order misapprehended that fundamental distinction.  It concluded that "the Privacy Contracts appear to disavow any *collection* of website activity at the individual level."  Order 10 (emphasis added).  As explained, however, a website user's data is always and necessarily *collected* on an individual level—the user visits the website, and the website collects data specific to that individual visit.  No reasonable consumer could read the Privacy Contracts to say PHH's collection of data would occur only in "aggregated" form, *id.*, because data *cannot* be collected in the aggregate.  It can only be subsequently formatted for viewing in the aggregate, which is legally irrelevant to Plaintiff's claims.

That is the only sense in which the Privacy Contracts mention the possibility of aggregated data.  As the Order notes, the Terms & Conditions state that PHH "produce[s] *reports* that permit [PHH] *to view* [user] activity on [its] website in anonymous *or aggregated* form."  *Id.* (quoting Compl. Ex. C, at 3) (emphasis added).  The Privacy and Security Policy, in turn, states "(a) that PHH uses information it collects about users or that users provide it 'to *report* aggregated information to [its] advertisers' and (b) that "PHH may *disclose* aggregated information about [its] users, and information that does not identify an individual."  *Id.* (quoting Compl. Ex. A, at 4, 6) (emphasis added).  Those disclosures provide that after collecting data from each website visit, PHH may aggregate the data for subsequent viewing by third parties.  (Contrary to the Order's suggestion, PHH also unambiguously reserved the right to share data in any other format that is "anonymous" and so "does not identify an individual.")

Simply put, none of that has any bearing on whether Plaintiff consented to PHH's *collection* of his website navigation data for the purpose of sharing it with third-party marketing companies— the basis for his lawsuit.  The Privacy Contracts could not be clearer on that dispositive point.  PHH expressly reserved the right to "collect several types of information from and about" website

5

visitors, including "[i]nformation collected automatically as you navigate through the Website" such as "usage details, IP addresses and infor[ma]tion collected through cookies for advertisements." Compl. Ex. A, 2-3. PHH further disclosed that it "may 'choose[ ] to share' website visitors' 'personal information' … '[f]or our nonaffiliates to market to you,' where 'nonaffiliate' is defined as including any 'financial' or 'nonfinancial' (including 'technology') company." Mot. 7 (quoting Compl. ¶¶ 98, 101). That establishes PHH's consent defense as a matter of law. Plaintiff's claims all seek to hold PHH liable merely for collecting (i.e., recording or obtaining) data about his website visits with an eye toward sharing it with third parties for marketing purposes. That is precisely what the Privacy Contracts permitted. Statements regarding the potential aggregation of collected data for viewing have no significance for Plaintiff's legal theories or PHH's corresponding consent defense.

For all of those reasons, PHH respectfully submits that the Court should grant reconsideration, revise its assessment of how a reasonable consumer would read the relevant disclosures in the Privacy Contracts, and dismiss all claims on the basis of Plaintiff's contractual consent to the relevant collection and sharing of information.

### B.    The Order Overlooked That the Complaint's Allegations About Information Shared With Blend for Loan Processing are not a Basis for Plaintiff's Marketing-Based Claims

The Motion emphasized critical distinctions between two forms of information sharing alleged in the Complaint. On one hand, Plaintiff alleges that PHH shared limited information about how Plaintiff and other customers *navigated* its website with Google, Yahoo!, and Microsoft, which purportedly used that information *for their marketing purposes*. Mot. 3-4. On the other hand, Plaintiff alleges that PHH shared *users' substantive inputs* about coborrower status, real estate ownership, and loan type only with Blend, a third-party loan processor that *is not alleged to have used information for marketing*—merely loan processing on PHH's behalf. Mot. 4.

These distinctions are critical to the actual scope of Plaintiff's lawsuit. All of his claims are based exclusively on allegations that PHH lacked authorization to send information "to Third Parties *for marketing and advertisement*," but did so anyway. Compl. ¶ 124 (emphasis added). The Order correctly noted that limitation on Plaintiff's legal theories. It explained that Plaintiff

purportedly "did not expect his personal information to be transmitted to third parties *that were uninvolved in providing mortgage services*," and "would not have submitted his information to PHH if [he] had known it would be shared with Third Parties and further sold to fourth parties *for purposes of marketing*." Order. 7 (citing Compl. ¶¶ 136–38, 144) (emphasis added).

The upshot is straightforward: No claim seeks to impose liability on PHH for sharing loan processing information with Blend, which did not conduct marketing activity. Indeed, the Complaint never alleges that PHH lacked authorization to share information with Blend. Mot. 7 n.4. Plaintiff has never contested this point: After the Motion emphasized the distinction and argued that the Blend allegations have no legal relevance, Plaintiff's opposition made no effort to argue otherwise and mentioned Blend only once, when summarizing the Complaint's allegations. *See* Opp. (ECF No. 27) at 1. At bottom, then, the only purpose of the Blend allegations appears to be confusing the reader about the true scope of Plaintiff's legal theories.

Nonetheless, the Order erroneously treated the allegations about Blend as part of the basis for Plaintiff's claims. It noted that "PHH allegedly shares users' pre-approval application activities with Google and Blend/Sentry," sending webpages viewed and "scrolling details" to Google, then separately telling Blend when an applicant has indicated "whether they have a coborrower, whether they own real estate, and whether they are applying for a purchase rather than a refinance." Order 3. The Order overlooked that Blend never allegedly used the information it received for marketing (just loan processing) and that the other third parties are not alleged to have received that information at all. Instead, the Order grouped Blend together with Google, Yahoo!, and Microsoft as one of the third parties relevant to Plaintiff's marketing-based claims.

The Order then relied squarely on Blend's receipt of coborrower, real estate ownership, and loan type information to sustain Plaintiff's negligence and ECPA claims. The Motion argued that Plaintiff had failed to state a negligence claim because (among other reasons) the Complaint did not "establish the 'actual loss' required for a negligence recovery—that is, a present, legally cognizable harm. Mot. 10 (citing *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). In rejecting that argument and ruling that Plaintiff "adequately alleged that PHH caused him injury," the Order appeared to rely exclusively on a single alleged fact: "PHH disclosed his *coborrower*

7

*information, real estate ownership information, and the type of loan he applied for* (Compl. ¶ 142), which qualify as sensitive financial information that, if disclosed, can give rise to 'a non-economic privacy injury traditionally recognized under the law.'"  Order 11 (quoting *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024)) (emphasis added). That ruling erroneously treated the Blend allegations as a basis for Plaintiffs' marketing-based claims.  PHH respectfully submits that once those allegations are removed from the analysis, the Court should dismiss the negligence claim for failing to plead a present, legally cognizable loss.

Separately, the Motion argued that Plaintiff could not invoke the crime-tort exception to ECPA's one-party consent defense because (again, among other reasons) the Complaint did not establish that PHH acted for a tortious purpose.  Mot. 15.  The Order disagreed, ruling that the Complaint established "invasion of privacy under California law" by alleging "that PHH collected and disclosed users' *sensitive financial information, such as whether a particular user was applying for a certain type of loan, was applying with a coborrower, or owned real estate*, in addition to collecting and disclosing IP addresses and other information capable of identifying a particular user."  Order 19 (emphasis added).  Again, that ruling erroneously treated the Blend allegations as a basis for Plaintiffs' marketing-based claims.  PHH respectfully submits that once those allegations are removed from the analysis, the Court should rule that the Complaint fails, as a matter of law, to invoke ECPA's crime-tort exception, such that PHH's consent to the alleged information sharing defeats the ECPA claim.

### C. The Order Overlooked That Plaintiff's ECPA Claim Must Be Dismissed for the Same Reasons as the § 631(a) Claim

The Order correctly dismissed Plaintiff's § 631(a) claim because the Complaint "contains no allegations that the personal and financial information PHH allegedly shared with third parties were the 'contents' of any communications between users and PHH's website."  Order 18. (Incidentally, this was one spot where the Order soundly omitted the Blend allegations from its analysis.)  The Order also correctly noted that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act."  Order 17 (quoting *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020)).  That includes the requirement that the defendant must intercept the

8

contents of a communication.  When it analyzed the ECPA claim, however, the Order did not dismiss it in parallel with the § 631(a) claim.  PHH respectfully submits that those materially identical causes of action must be dismissed together.

## IV.  **CONCLUSION**

For the foregoing reasons, PHH respectfully requests that the Court grant leave to file a motion to reconsider the portions of the Order that (1) concluded a reasonable consumer could have read the Privacy Contracts not to authorize the collection of information on which Plaintiff's claims are premised; (2) treated the Blend allegations as a basis for Plaintiff's negligence and ECPA claims (or any other cause of action); and (3) permitted the ECPA claim to proceed while dismissing the § 631(a) claim.

Dated: April 30, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *Aravind Swaminathan*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700

*Attorneys for Defendant PHH Mortgage*