ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone:  (206) 639-9157

Rebecca Harlow (SBN 281931)
rharlow@orrick.com
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  (415) 773-5700

*Attorneys for Defendant*
PHH MORTGAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ALLISON, individually, and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>PHH MORTGAGE,<br><br>             Defendant. | Civil Action No. 3:25-cv-5323<br><br>**DEFENDANT PHH MORTGAGE'S ANSWER TO CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Rita F. Lin |

Defendant PHH Mortgage[1] ("PHH") by and through its counsel of record, hereby answers the Class Action Complaint of Plaintiff Ethan Allison ("Plaintiff") in the above-entitled action as follows:

## CLASS ACTION COMPLAINT

Plaintiff, Ethan Allison, individually, and on behalf of all others similarly situated (hereinafter "Plaintiff") brings this Class Action Complaint against Defendant, PHH Mortgage ("PHH" or "Defendant"), and alleges, upon personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows.

*RESPONSE:* PHH admits that Plaintiff purports to bring a class action against PHH, but denies that this action may be properly maintained as a class action. PHH denies any remaining allegations in the preamble to the Class Action Complaint.

## INTRODUCTION

1. Plaintiff brings this class action to address Defendant's outrageous, illegal, and widespread practice of disclosing—without consent—the Nonpublic Personal Information[2] and Personally Identifiable Financial Information[3] (together, "Personal and Financial Information") of Plaintiff and the proposed Class Members to third parties, including Meta Platforms, Inc. d/b/a Google, LLC ("Google"), Google Analytics, Google DoubleClick Ads, HotJar, Microsoft Corp. ("Microsoft"), Yahoo, Blend/Sentry.io, and possibly others (collectively the "Third Parties") (in short, "the Disclosure").

*RESPONSE*: PHH admits that Plaintiff purports to bring a class action against PHH but denies that this action may be properly maintained as a class action. PHH denies any remaining

---

[1] PHH Mortgage is now known as Onity Mortgage Corporation. However, for consistency with the record in this case and allegations in the Complaint, this Answer continues to refer to the Defendant as "PHH Mortgage" or PHH.

[2] The United States Congress defines "nonpublic personal information" as "personally identifiable financial information-- (i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution." The Gramm-Leach-Bliley Act, 15 U.S.C.A. § 6809(4)(A) ("GLBA").

[3] "Personally identifiable financial information means any information:  (i) A consumer provides to [a financial institution] to obtain a financial product or service from [the financial institution]; (ii) About a consumer resulting from any transaction involving a financial product or service between [a financial institution] and a consumer; or (iii) [a financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer." 16 C.F.R. § 313.3(o)(1).

allegations in Paragraph 1.

2.     PHH is a massive mortgage lender and servicer that provides services to customers across the globe and the United States, including in California.  To provide these services, PHH operates and encourages its customers to use its website, https://www.phhmortgage.com/ (the "Website"), on which customers can, among other things, apply for loans, use an online loan calculator, request callbacks from PHH to apply for a loan, and navigate to libertyreversemortgage.com (the "Liberty Website") to learn about and apply for reverse mortgages.[4]

*RESPONSE*: PHH admits that it is a financial services company providing mortgage servicing and origination solutions. PHH also admits that it operated and maintained the websites https://www.phhmortgage.com and libertyreversemortgage.com[5] until March 23, 2026. PHH admits that for the time the websites were operable, customers could access loan information and information regarding products on the websites. PHH denies any remaining allegations in Paragraph 2.

3.     Despite its unique position as a massive and trusted mortgage lender and servicer, PHH used its Website to blatantly collect and disclose Consumers'[6] and Customers'[7] (collectively, "Customers") Personal and Financial Information to Third Parties uninvolved in the provision of mortgage services—entirely without their knowledge or authorization.  PHH did so by knowingly and secretly configuring and implementing code-based tracking devices ("trackers" or "tracking technologies") into its Website.

*RESPONSE*: PHH denies the allegations in Paragraph 3.

---

[4] *See* "Reverse Mortgages" on *Home | PHH Mortgage*, https://www.phhmortgage.com/ (last visited June 16, 2025), linking to *Home | Liberty Reverse Mortgage*, https://libertyreversemortgage.com/ (last visited June 16, 2025).

[5] The website libertyreversemortgage.com no longer exists. All responses regarding this website are as of March 23, 2026, when the website was decommissioned.

[6] The term "consumer" means "an individual who obtains or has obtained a financial product or service . . . that is to be used primarily for personal, family, or household purposes, or that individual's legal representative." 16 C.F.R. § 313.3; 15 U.S.C.A. § 6809(9).

[7] "Customer means a consumer who has a customer relationship with [a financial institution]." 16 C.F.R. § 313.3. "The term 'time of establishing a customer relationship' shall . . . in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer." 15 U.S.C.A. § 6809.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

4.      Through these trackers, PHH disclosed and continues to disclose Personal and Financial Information that Customers input into and accessed on PHH's Website.  This information includes without limitation, the user's status as a customer; the user's browsing activities, including that the user clicked certain buttons and what URLs or webpages they led to; loan application activities, such as that a user is applying for a loan or mortgage; Customers' use of PHH's online loan calculator; when a Customer requested a callback from PHH to apply for a loan; and disclosures about users' activities on the Liberty Website[8] when users browse pages about reverse mortgages.  Upon information and belief, PHH utilized data from trackers to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales.  PHH benefited from use of Customers' Personal and Financial Information.  PHH further allowed the Third Parties, who are uninvolved in PHH's provision of mortgage services, to profit from its Disclosure of Customers' Private and Financial information.  And the Third Parties used Customers' Personal and Financial Information for themselves and disclosed to fourth parties who also profited off of it.  Google, for example, will use the data collected from Customers of PHH to sell ads to fourth parties who will further profit off the use of that information

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in the final two sentences of Paragraph 4, and on that basis denies them.  PHH denies the remaining allegations in Paragraph 4.

5.      Customers, like Plaintiff and Class Members, simply do not anticipate that a trusted mortgage lender and servicer will send their Personal and Financial Information to hidden Third Parties (who in turn share with fourth parties), all of whom profit off of it.  Likewise, when Plaintiff and Class Members used Defendant's Website, they thought they were communicating exclusively with a trusted mortgage lender and servicer for the sole purpose of obtaining mortgage information and/or services.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 5, and on that basis denies them.

---

[8] "© 2025 PHH Mortgage Corporation, d/b/a Liberty Reverse Mortgage." *Home | Liberty Reverse Mortgage*, https://libertyreversemortgage.com/ (last visited June 16, 2025).

6.     At no time did PHH disclose to Plaintiff or Class Members that it was sharing their Personal and Financial Information with the Third Parties for third- and fourth-party use.  Plaintiff and Class Members never signed a written authorization permitting Defendant to send their Personal and Financial Information to the Third Parties who were uninvolved in the provision of financial services.

*RESPONSE*: PHH denies the allegations in the first sentence of Paragraph 6. PHH admits that Plaintiff and Class Members never provided authorization in writing but further states that PHH's data sharing practices are disclosed in the policies attached to the Complaint. PHH denies any remaining allegations in Paragraph 6.

7.     Defendant owed a variety of duties, including common law, statutory, contractual, and regulatory duties, to keep Plaintiff's and Class Members' Personal and Financial Information safe, secure, and confidential.

*RESPONSE*: The remaining allegations in Paragraph 7 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 7.

8.     Furthermore, by obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Personal and Financial Information, Defendant assumed legal and equitable duties to those individuals to protect and safeguard their information from unauthorized disclosure.

*RESPONSE*: The allegations in Paragraph 8 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 8.

9.     The statutory and regulatory duties PHH owed Customers include its obligations under federal law.  For example, the GLBA requires that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801. Under this federal law, financial institutions like PHH are explicitly prohibited from disclosing a Customer's Personal and Financial Information without sufficient advance notification and opt-out opportunity.  15 U.S.C. § 6801, *et seq.*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

*RESPONSE*: The second sentence in Paragraph 9 purports to quote a portion of 15 U.S.C. § 6801, which speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH denies the allegations. The remaining allegations in Paragraph 9 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 9.

10.     PHH ignored all its duties and obligations, including the GLBA's requirements, by disclosing Customers' Personal and Financial Information without proper advance notification and opt-out rights as required under the GLBA.

*RESPONSE*: The allegations in Paragraph 10 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 10.

11.     Examples of "Personal and Financial Information" included in the GLBA are indistinguishable from the types of information PHH disclosed to Facebook, Google, and Microsoft, including, among other things:  (a) "[i]nformation a consumer provides to [PHH] on an application to obtain a loan, credit card, or other financial product or service"; (b) "[t]he fact that an individual is or has been one of [PHH's] customers or has obtained a financial product or service from [PHH]"; (c) "information about [PHH] consumer . . . disclosed in a manner that indicates that the individual is or has been [PHH] consumer"; and (d) "any information [PHH] collect[s] through an Internet 'cookie' (an information collecting device from a web server)." 16 C.F.R. 313.3(o)(2)(i).

*RESPONSE*: The allegations in Paragraph 11 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 11.

12.     PHH breached its duties under California state law, including, for example, the California Consumer Privacy Act.  That statue provides California consumers with rights to control personal information including the right to know what personal information is being collected about they and whether that information is sold or disclosed and to whom, the right to prohibit the sale of their personal information, and the right to request deletion of their personal information.  Cal. Civ.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

Code § 1798.100, *et seq*. PHH breached its obligations under this statute by, for example, failing to provide Customers with appropriate notice that their information was being disclosed to Third Parties for third- and fourth- party use. The notice and consent PHH purports to provide and obtain, through the policies it provides on its website, is not appropriate or sufficient, as a reasonable Consumer would not have understood those policies as notifying they of PHH's disclosure of their Personal and Financial Information to Third Parties for third- and fourth- party use.

*RESPONSE*: The allegations in Paragraph 12 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 12.

13. PHH breached its common law, statutory, and contractual obligations to Plaintiff and Class Members by, *inter alia*, (i) failing to adequately review its marketing programs and web based technology to ensure its Website was safe and secure; (ii) failing to remove or disengage technology that was known and designed to collect and share Personal and Financial Information; (iii) aiding, agreeing, and conspiring with the Third Parties to intercept communications sent and received by Plaintiff and Class Members; (iv) failing to obtain the written consent of Plaintiff and Class Members to disclose their Personal and Financial Information to Third Parties for Third Party and fourth party use; (v) failing to protect Personal and Financial Information and take steps to block the transmission of Plaintiff's and Class Members' Personal and Financial Information through the use of tracking technology; (vi) failing to warn Plaintiff and Class Members; and (vii) otherwise failing to design and monitor its Website to maintain the confidentiality and integrity of its customers' Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 13 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 13.

14. Plaintiff seeks to remedy these harms and brings causes of action of (I) Negligence; (II) Negligence Per Se; (III) Violation of the Comprehensive Computer Data Access And Fraud Act ("CDAFA"), Cal. Penal Code § 502; (IV) Violation Of California's Consumer Protection Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (V) Violation of California Consumer Privacy

Act ("CCPA"), 1798.100, *et seq.*; (VI) Breach of Express and Implied Contract; (VII) Unjust Enrichment; (VIII) Declaratory Judgment; (IX) Breach Of Confidence; (X) Violation of The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*; (XI) Violation of The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; and (XII) Violation of The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(3)(a) Unauthorized Divulgence By Electronic Communications Service.

*RESPONSE*: PHH admits that Plaintiff purports to bring twelve causes of action against PHH, but denies that any causes of action are valid. PHH further states that the Court has dismissed Counts II, III (as to the claims brought under Cal. Penal Code §§ 502(c)(2) and 502(c)(8)), VI (as to the Breach of Implied Contract claim), VII, IX, and X (as to the claim brought under Cal. Penal Code § 631(a)), so no response to those allegations is necessary. PHH denies any remaining allegations in Paragraph 14.

15.     Plaintiff brings this action, individually and on behalf of all others similarly situated, for damages and equitable relief.

*RESPONSE*: PHH admits that Plaintiff purports to bring a class action against PHH but denies that this action may be properly maintained as a class action. PHH denies any remaining allegations in Paragraph 15 and denies that Plaintiff and the putative class are entitled to any damages or equitable relief.

## PARTIES

16.     Plaintiff Ethan Allison is a natural person and citizen of California, where he intends to remain.  Plaintiff Allison resides in Foster City, California.  Plaintiff Allison has a mortgage with PHH and is a victim of Defendant's unauthorized Disclosure of Personal and Financial Information.

*RESPONSE*: PHH admits that it is the servicer for a mortgage loan of Plaintiff Allison. PHH denies that there has been any unauthorized disclosure of any of Plaintiff Allison's information.  PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 16, and on that basis denies them.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

17. Defendant PHH, a subsidiary of Onity Group Inc.,[9] is a Maryland financial services corporation that services mortgage loans. Defendant has its principal place of business in Mount Laurel, New Jersey. Defendant transacts or has transacted business in this District and throughout the United States, including in its California offices.

*RESPONSE*: PHH admits that it is a subsidiary of Onity Group Inc. PHH admits that Onity is a New Jersey Corporation and further states that Onity's principal place of business is in West Palm Beach, Florida. PHH admits that its transacts or has transacted business in this District and throughout the United States, including in its California offices. PHH denies any remaining allegations in Paragraph 17.

18. PHH is a financial institution, as that term is defined by Section 509(3)(A) of the GLBA, 15 U.S.C. § 6809(3)(A).

*RESPONSE*: The allegations in Paragraph 18 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 18.

## **JURISDICTION AND VENUE**

19. This Court has personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business in this State, maintains corporate offices in California, and committed tortious acts in this State.

*RESPONSE*: The allegations in Paragraph 19 contain legal conclusions to which no response is required.

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Complete diversity exists between Defendant and at least one member of the proposed Classes, and there are more than one hundred (100) members in the proposed Classes.

*RESPONSE*: The allegations in Paragraph 20 contain legal conclusions to which no

---

[9] PHH is "changing [its] name to Onity Mortgage…Onity Mortgage will be established as a dba (doing business as) of PHH Mortgage." *PHH-FAQs*, https://correspondent.phhmortgage.com/PHHCorrespondent/media/PHHCorrespondent/PDF/PHH-FAQs.pdf (last visited June 16, 2025).

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

response is required.

21.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because it arises under the laws of the United States.  The Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

*RESPONSE*: The allegations in Paragraph 21 contain legal conclusions to which no response is required.

22.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district and continue to occur in this district.

*RESPONSE*: The allegations in Paragraph 22 contain legal conclusions to which no response is required.

## COMMON FACTUAL ALLEGATIONS

**A.    PHH:  A Dominant Mortgage Lender and Servicer that Collects Personal and Financial Information Under the Guise of Protecting it[10]**

23.    PHH "is one of the largest servicers of residential mortgages in the United States."[11] "PHH Mortgage offers industry-leading mortgage solutions for the entire mortgage lifecycle including correspondent lending, MSR/Co-Issue, subservicing, commercial servicing, reverse mortgages and portfolio retention."[12]

*RESPONSE*: Paragraph 23 purports to quote portions of the formerly operable PHHMortgage.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH admits the allegations.

24.    On information and belief, PHH provides mortgage services to Customers in every state in America.

*RESPONSE*: PHH admits that its services are available to customers in every state in America.

---

[10] Here and throughout its Answer, PHH denies any allegations contained within the headings of Plaintiff's Complaint—as well as text below the headings unconnected to any numbered paragraph in the Complaint—unless expressly admitted.

[11] *Our Story*, https://business.phhmortgage.com/About-Us/Our-Story (last visited June 14, 2025).

[12] *Id.*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

25.    PHH represents to its customers that it "respects your privacy."[13]

*RESPONSE*: Paragraph 25 purports to quote a portion of Exhibit A, which speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH admits the allegations.

26.    Through its Website, PHH allows users to explore various services relating to their mortgages and home loans, including refinancing, home purchasing, applying for pre-approval, loan applications and loan approval.[14]

*RESPONSE*: Paragraph 26 purports to paraphrase portions of the formerly operable PHHMortgage.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

27.    PHH's Website also encourages to use various mortgage calculators through which they can enter their personal and financial information to calculate their estimated payments, payoff amounts, refinancing options, homebuying budget, and options for renting versus buying a home.[15] In short, Defendant encourages customers to use its Website to apply for, manage, and access their mortgages and accounts.

*RESPONSE*: The allegations in Paragraph 27 purport to characterize or paraphrase portions of the PHHMortgage.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

28.    Defendant encourages the use of its Website in service of its own goal of increasing profitability. In furtherance of that goal, Defendant purposely and secretly installed the Third Parties' online tracking technology onto its Website to gather and share information about Customers.

*RESPONSE*: PHH denies the allegations in Paragraph 28.

29.    PHH utilized the information it collected to market its services and bolster its profits by surreptitiously diverting the information to Third Parties like Google and Facebook.

---

[13] *Privacy | Onity*, https://www.onitygroup.com/Privacy (last visited June 14, 2025) (attached as Exhibit A).

[14] *See Buy a Home | PHH Mortgage*, https://www.phhmortgage.com/Buy-a-Home (last visited June 14, 2025).

[15] *See Calculators | PHH Mortgage*, https://www.phhmortgage.com/Calculators (last visited June 14, 2025)

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

*RESPONSE*: PHH denies the allegations in Paragraph 29.

30.    But Defendant did not only collect information for its own use; Defendant also shared—and continues to share—Customers' information, including Personal and Financial Information, with the unauthorized Third Parties who then use it for their own benefit and to benefit fourth parties who are even further removed from the Customers.

*RESPONSE*: PHH denies the allegations in Paragraph 30.

**B.    Third Parties and Trackers:  Collectors and Profiteers of Personal and Financial Information**

31.    The invisible Third Party online tracking technologies installed by PHH on its Website gathers a vast assortment of Customer data.  The installation of these trackers—and thus their transmission of data—is in PHH's exclusive control.

*RESPONSE*: PHH denies the allegations in Paragraph 31.

32.    When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers instantaneously and surreptitiously duplicate communications with that webpage and send they to the Third Party.  The information travels directly from both the user's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker.  The communications and information transmitted via these trackers are entirely in Defendant's control.  Customers trust PHH with the information they input on PHH's Website, and PHH is in complete and exclusive control of its Website and the data input therein.

*RESPONSE*: PHH denies the allegations in the first three sentences of Paragraph 32.  PHH lacks knowledge or information sufficient to form a belief as to the allegations in the fourth sentence of Paragraph 32, and on that basis denies them.

33.    Online tracking technologies may not be deleted from an individual's device; they are built into a webpage, and a webpage Customer has no control or warning over their presence or data collection.   Third party trackers cause information to flow directly from the website Customer's browser and the website owner's server to the Third Party itself.  A webpage Customer cannot prevent or even detect this transmission of data.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 33, and on that basis denies them.

34.    Accordingly, without any knowledge, authorization, or action by a user, a website owner who has installed Third Party trackers is utilizing website source code to commandeer its users' computing devices and web browsers, causing they to invisibly re-direct the users' communications to Third Parties.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 34, and on that basis denies them.

35.    In this case, Defendant employed the Third Party trackers to intercept, duplicate, and re-direct Plaintiff's and Class Members' Personal and Financial Information to the Third Parties contemporaneously, invisibly, and without the customer's knowledge.

*RESPONSE*: PHH denies the allegations in Paragraph 35.

36.    Consequently, when Plaintiff and Class Members visited Defendant's Websites and communicated their Personal and Financial Information, that information was simultaneously intercepted and transmitted to the Third Parties.

*RESPONSE*: PHH denies the allegations in Paragraph 36.

37.    The Third Party trackers do not provide any substantive content on PHH's Website. their only purpose is to collect and share information to be used for the Third Party and fourth parties' marketing and sales purposes.

*RESPONSE*: PHH denies the allegations in Paragraph 37.

38.    The Google trackers allow Defendant to track and share with Google (1) who uses PHH's Website; (2) what is performed on the Website; (3) when Customers visit the Website; (4) where on the Website Customers perform these actions; and (5) how Customers navigate through the Website to perform these actions. The Google trackers also record events that include data such as users' IP addresses, cookies, and "browser fingerprints,"[16] all of which can be used to identify

---

[16] "Browser fingerprinting happens when websites use special scripts to collect enough information about you — such as your browser, timezone, default language, and more — that they can uniquely identify you out of the sea of other internet users." *What is Browser Fingerprinting and How Can You Prevent It?*, AVAST, https://www.avast.com/c-what-is-browser-fingerprinting#:~:text=Browser%20fingerprinting%20happens%20when%20websites,sea%20of%20other%20interne

the user. Google gathers this information using trackers embedded on PHH's Website and generates corresponding reports.[17] Google Tag Manager, Google Analytics, and DoubleClick are used by Google to collect all of this.[18] Google's collection of this data "enables advertisers to more effectively create, manage and grow high-impact digital marketing campaigns."[19] Data PHH sends to DoubleClick include the DSID and IDE cookies. Additionally, data sent to Google's Consent Mode and Google's other ad-related endpoints include the _Secure-3PAPISID, __Secure-3PSID, __Secure-3PSIDCC, __Secure-3PSIDTS, and NID cookies. These cookies are used by Google to identify and track users across websites.

*RESPONSE*: PHH admits that it may use certain Google technologies for various internal purposes as outlined in its privacy policies. Paragraph 38 purports to summarize portions of certain websites, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH lacks knowledge or information sufficient to form a belief as to such allegations and on that basis denies them.

39. On information and belief, the trackers Defendant installed from other Third Parties, including HotJar, Microsoft, Yahoo, and Blend/Sentry.io, work similarly to the Google trackers and likewise transmitted Plaintiff's and the Class Members' Personal and Financial Information without Plaintiff's and Class Members' knowledge or authorization.

*RESPONSE*: PHH admits that it may use or have used certain technologies for various purposes as outlined in its privacy policies. PHH denies the remaining allegations in Paragraph 39.

40. "The Hotjar Tracking Code is used to trigger data collection when installed" and "is

---

[17] *See generally, A big list of what Google Analytics can & cannot do*, MarketLyrics, avail. at https://marketlytics.com/blog/list-of-things-google-analytics-can-and-cannot-do/.

[18] *See the DoubleClick Digital marketing Suite, Google Developers*, https://developers.google.com/app-conversion-tracking/third-party-trackers/doubleclick (last visited Apr. 23, 2025).

[19] *See DoubleClick Digital Marketing*, Google Help, https://support.google.com/faqs/answer/2727482?hl=en (last visited Apr. 23, 2025).

t%20users. (last visited Apr. 23, 2025). Because browser fingerprints differ from cookies, "even when cookies are disabled, fingerprints can be used to fully or partially identify users or devices." Pau, Kiu Nai, *et al*., The Development of Data Collection and Browser Fingerprinting System, NAT. LIBRARY OF MEDICINE (Mar. 13, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10057587/#:~:text=A%20browser%20fingerprint%20is%20described,system%2C%20and%20other%20current%20settings.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

responsible for collecting and sending the data to" whichever Third Party installed the code.[20] Hotjar code, like the other trackers discussed herein, requires "administrative access to the web hosting of [the] site [the Third Party] want[s] to track" as well as "the ability to insert the Hotjar tracking code into the HTML of [the] pay [the Third Party] want[s] to track. This requires that [the Third Party] either own[s] the site or ha[s] explicit permission from the site owner to edit it."[21]

**RESPONSE**: Paragraph 40 purports to quote portions of the Hotjar.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 40, and on that basis denies them.

41.    The Microsoft trackers, including the Microsoft Clarity analytics tool,[22] allow Defendant to "[t]rack what your customers are doing after they click on your ad."[23] According to Microsoft, the tracker "records what customers do on your website . . . [and] will collect data that allows you to track conversion goals and target audiences with remarketing lists."[24] PHH discloses user data to Microsoft on the lakeview reverse mortgage website. On information and belief, data sent to Microsoft includes cookies that are used to identify and track users across websites.

**RESPONSE**: The first two sentences of Paragraph 41 purport to quote portions of the Microsoft.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. PHH denies any remaining allegations in Paragraph 41.

42.    The Yahoo trackers "use a variety of tools, including but not limited to, IP Addresses, web beacons, SDKs, cookies, and similar technologies to recognize, associate, and

---

[20] *What is the Hotjar Tracking Code?, HOTJAR*, https://help.hotjar.com/hc/en-us/articles/115011639927-What-is-the-Hotjar-Tracking-Code (last accessed May 11, 2025).

[21] *Platforms and Frameworks Not Compatible with Hotjar*, HOTJAR, https://help.hotjar.com/hc/en-us/articles/115012499507-Platforms-and-Frameworks-Not-Compatible-with-Hotjar (last accessed May 11, 2025).

[22] *See Clarity Overview*, MICROSOFT LEARN, https://learn.microsoft.com/en-us/clarity/setup-and-installation/about-clarity (last accessed May 27, 2025).

[23] *Microsoft Advertising, Microsoft.com*, https://about.ads.microsoft.com/en/tools/performance/conversion-tracking#:~:text=Universal%20Event%20Tracking%20(UET)%20is,target%20audiences%20wit h%20remarketing%20lists (last visited June 26, 2024).

[24] *Id.*

collect data about visitors to Yahoo's and our customer's sites, apps, products, brands and services."[25] "The data collected commonly includes information such as cookies and/or device identifiers, IP address, time spent, your interactions, links clicked, your location, apps on the device, or advertisements viewed.  This data is collected by Yahoo Analytics and other tools so that Yahoo can report statistical information and recognize unique users."[26] Yahoo "collects this information on our own brands, websites, apps, advertising services, products, services or technologies ("Services") and on behalf of our customers, such as our advertisers and publishers, so that they can assess the effectiveness of their services."[27]

*RESPONSE*: Paragraph 42 purports to quote portions of the Yahoo.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 42, and on that basis denies them.

43.     Defendant further uses Blend[28]/Sentry.io.[29] Blend is a third-party application processor used by PHH to process its pre-approval loan applications, and on information and belief is hosted on PHH's domain.  Blend appears to use a self-hosted instance of the Sentry.io tracker, but may further be using and/or sending data to Sentry's cloud infrastructure, which may be sending data to an additional third-party.

*RESPONSE*: PHH admits that it uses a Blend application for the purposes identified in the applicable privacy policies.  PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 43, and on that basis denies them.

44.     The collection and disclosure of users' data via these trackers occurs automatically.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the

---

[25] *Yahoo Analytics | Yahoo*, https://legal.yahoo.com/us/en/yahoo/privacy/topics/analytics/index.html (last visited June 16, 2025).

[26] *Id.*

[27] *Id.*

[28] *Blend:  Digital Lending & Account Opening for Banks, Credit Unions & Mortgage Providers*, https://blend.com/ (last visited June 16, 2025).

[29] *Application Performance Monitoring & Error Tracking Software | Sentry*, https://sentry.io/welcome/ (last visited June 16, 2025).

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

allegations in Paragraph 44, and on that basis denies them.

45.    On information and belief, each tracker installed on Defendant's website also sets its own cookies to help identify users on Defendant's Website.  Furthermore, the trackers Defendant used support persistent user identification through a combination of browser cookies, browser metadata, and, in some cases, server-side identifiers.  As part of their operation, IP addresses and browser characteristics (which may contribute to browser fingerprinting) are necessarily transmitted to the tracking platforms.

*RESPONSE*: PHH denies the allegations in Paragraph 45.

**C.    PHH Used Trackers to Disclose Personal and Financial Information Without Users' Authorization.**

46.    On information and belief, PHH installed each of these trackers, through which PHH transmitted Customers' communications with PHH's website and thus their Personal and Financial Information to the Third Parties without Customers' knowledge or authorization.  This information included their browsing activities including the pages they viewed and the buttons they clicked; the user's status as a customer; the user's browsing activities, including that the user clicked certain buttons and what URLs or webpages they led to; loan application activities, such as that a user is applying for a loan or mortgage; Customers' use of PHH's online loan calculator; when a Customer requested a callback from PHH to apply for a loan; and disclosures about users' activities on the Liberty Website when users browse pages about reverse mortgages.

*RESPONSE*: PHH denies the allegations in Paragraph 46.

47.    On information and belief, since at least February 7, 2016, and at least as recently as June 6, 2025, PHH has had tracking technologies installed on its Website.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 47, and on that basis denies them.

48.    Accordingly, PHH disclosed its Customers' data and Personal and Financial Information to the Third Parties, like Facebook, beginning some time prior to February 2016 and continuing up until at least June 2025.

*RESPONSE*: PHH denies the allegations in Paragraph 48.

49.    The information and data collected by these trackers allowed Third Parties like Google, HotJar, Microsoft, Yahoo, and Blend/Sentry.io to identify individual users and link those Customers to other online accounts, such as the Customer's Google account.

**RESPONSE**: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 49, and on that basis denies them.

50.    PHH begins tracking users as they load PHH's homepage.  When a user loads PHH's homepage, PHH reports this to Google disclosing that the user is on the page "https://www.phhmortgage.com/."

**RESPONSE**: PHH denies the allegations in Paragraph 50.

51.    PHH began installing web tracking tools at least as early as February 7, 2016 when it installed Adobe Analytics and a Google Tag Manager container with ID GTM-5K99G3 ("GTM1").

**RESPONSE**: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 51, and on that basis denies them.

52.    Next, between March 15 and August 20, 2018, PHH removed GTM1 and added a Google Analytics tracker with ID UA-118379242-1 ("GA1").

**RESPONSE**: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 52, and on that basis denies them.

53.    Then, around December 19, 2020, PHH added a new Google Tag Manager container with ID GTM-KMJGC85 ("GTM2").

**RESPONSE**: PHH admits that it uses the Google Tag Manager container with ID GTM-KMJGC85.

54.    PHH continues to install GTM2 today.

**RESPONSE**: PHH admits the allegations in Paragraph 54.

i.    *PHH Discloses Users' Application Related Activities*

55.    PHH offers users the ability to apply different types of loans, including equity and refinancing loans.  Users can also apply to request a callback from PHH to begin apply for a loan. Additionally, users can use PHH's online calculator to help them determine the affordability of

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

potential properties.  Finally, users can navigate to learn about reverse mortgage products on the Liberty Website, from PHH's website as well.

*RESPONSE*: To the extent Paragraph 55 purports to characterize or paraphrase portions of PHH's formerly operable website, PHH states that the website speaks for itself. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

56.    As users conduct each type of activity, PHH sends events to third parties disclosing details about users' activities.

*RESPONSE*: PHH denies the allegations in Paragraph 56.

*a.    Loan Applications*

57.    When users navigate to and complete loan applications, including for a mortgage pre-approval, an equity loan, and refinancing loan, PHH discloses users' activities to Google.

*RESPONSE*: PHH denies the allegations in Paragraph 57.

*i.    Pre-Approval Application*

58.    PHH shares users' pre-approval application activities with Google.

*RESPONSE*: PHH denies the allegations in Paragraph 58.

59.    PHH discloses as a user loads a page to learn about getting a loan pre-approval, and also discloses as the user loads a page to get started with the pre-approval application.

*RESPONSE*: PHH denies the allegations in Paragraph 59.

60.    First, PHH sends events to Google informing it that the user is on a page entitled "Get Pre-Approved | PHH Mortgage." Next, PHH sends another set of events informing it that the user is on a page with the URL, "https://www.phhmortgage.com/Get-started."

*RESPONSE*: PHH denies the allegations in Paragraph 60.

61.    PHH also discloses users' scrolling details on the "Get-started" page.  As a user scrolls to the bottom of the "Get-started" page, PHH reveals that the user scrolled through 90% of the page.

*RESPONSE*: PHH denies the allegations in Paragraph 61.

62.    As the user completes the application, PHH sends events to Blend, a third-party application processor used by PHH to process its pre-approval loan applications.  Blend appears to

- 19 -

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

use a self-hosted instance of the Sentry.io tracker, but may further be using and/or sending data to Sentry's cloud infrastructure and sending data to an additional third-party.

*RESPONSE*: PHH admits that it uses a technology offered by Blend to process its preapproval loan applications, and otherwise denies the allegations in the first sentence of Paragraph 62. PHH lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 62, and on that basis denies them.

63.    Some of the events PHH sends to Blend's Sentry.io tracker ("Sentry") includes details that users provide for their application. For example, when a user indicates that they do not have a co-borrower, PHH sends an event to Sentry disclosing that the user submitted "No" for the question on whether "the borrower has a coborrower." As another example, when a user indicates that they do not own real estate, PHH reveals to Sentry that the user answered "No" as to whether the user owned any real estate. In another instance, when an applicant is applying for a purchase, PHH divulges to Sentry that the user submitted the answer "PURCHASE" for the question of whether the user is applying for a "Purchase or refinance."

*RESPONSE*: PHH denies the allegations in Paragraph 63.

64.    The other events PHH sends to Sentry describes the type of information that the user provides for their loan application. For example, when the user is creating an account in order to start their application, PHH discloses that the user is engaging to "CREATE_ACCOUNT;" and when PHH requests co-borrower information, PHH discloses the user's task description as, "Ask if the borrower has a coborrower." Certain of the events PHH sends also include the user's screen size details, which is arguably irrelevant to Blend's processing of the loan application.

*RESPONSE*: PHH denies the allegations in Paragraph 64.

    *ii.    Equity and Refinancing Loan Application*

65.    On information and belief, PHH also discloses information to Third Parties on Customers' equity and refinancing loan applications. Users can also begin the application process for other loans such as equity loans and refinancing loans. PHH also reports these activities to Google.

*RESPONSE*: PHH admits the allegations in the second sentence of Paragraph 65. PHH

denies the remaining allegations in Paragraph 65.

66.    As soon as users access the page for each such financial product, PHH sends events to Google with details about users' activities.

*RESPONSE*: PHH denies the allegations in Paragraph 66.

67.    For example, when a user loads the equity loan page to learn about PHH's equity loan products, PHH sends events to Google informing it that the user is on a page for "Get Cash Out of Your Equity | PHH Mortgage."

*RESPONSE*: PHH denies the allegations in Paragraph 67.

68.    Likewise, when a user loads a page for PHH's cash out refinancing product, PHH reports the user's activity to Google, informing it that the user is on a page for "cash-out-refinance."

*RESPONSE*: PHH denies the allegations in Paragraph 68.

69.    Once the users are on the "Get Cash Out of Your Equity" page and the "cash-out-refinance" page, users can fill out a short form to begin their application process for each product.

*RESPONSE*: To the extent Paragraph 69 purports to characterize or paraphrase portions of PHH's formerly operable website, PHH states that the website speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH denies the allegations.

70.    As a user fills out their equity loan form, PHH reports to Google that the user took a "form_start" action on the page about PHH's "Equity-Loan" products.  Similarly, as a user fills out their form to begin their refinancing loan application, PHH also reports this to Google, indicating that the user engaged in "form_start" action while they are on the page about PHH's "cash-out-refinance" loans.

*RESPONSE*: PHH denies the allegations in Paragraph 70.

71.    When the users finally submit their forms, PHH reports this to Google too.

*RESPONSE*: PHH denies the allegations in Paragraph 71.

72.    PHH informs Google that the user who filled out the form for an equity loan is now on a "thank-you" page after they visited the page about "Equity-Loan[s]." Similarly, PHH informs Google that the user who filled out the form for a cash out refinancing loan is now on a "thank-you" page after they visited the page about "cash-out-refinance" loans.

*RESPONSE*: PHH denies the allegations in Paragraph 72.

  ii. *Requesting Callback for Loan Application*

73. On information and belief, PHH also discloses information to Third Parties on when Customers request a callback.  Users can request a callback from a PHH loan officer instead of beginning a loan application online.  PHH likewise reports this type of user activities to third parties.

*RESPONSE*: PHH admits that users of https://www.phhmortgage.com could request a callback from a PHH loan officer rather than complete a loan application online. PHH denies the remaining allegations in Paragraph 73.

74. As soon as a user loads the page to fill out a callback request, PHH sends events to Google disclosing that the user is on a page with the URL, "https://www.phhmortgage.com/marketing-pages/Get-Started."

*RESPONSE*: PHH denies the allegations in Paragraph 74

75. PHH also sends another event to Google as the user fills out the form, disclosing that the user is filling out a "ShortLead" form and that PHH requests the user's "FirstName."

*RESPONSE*: PHH denies the allegations in Paragraph 75.

76. When the user submits the form, PHH sends events to Google notifying it that the user is now on a page called "Thankyou Page | PHH Mortgage."

*RESPONSE*: PHH denies the allegations in Paragraph 76.

  iii. *PHH Discloses Users' Loan Calculator Activities*

77. On information and belief, PHH also discloses information to Third Parties on Customers' use of PHH's loan calculator.  PHH offers a calculator on their website to help users assess the affordability of potential investment homes.  PHH reports when users access the calculator to Google.

*RESPONSE*: PHH admits that it offered a calculator feature on https://www.phhmortgage.com. PHH denies the remaining allegations in Paragraph 77.

78. As soon as a user loads the page about investment properties, PHH discloses to Google that the user is on a page about "Buy-a-Home/My-Investment-Property." Then, as the user

loads PHH's calculator, PHH discloses this by sending events to Google reporting that the user is now viewing "https://www.phhmortgage.com/Calculators/Purchase."

*RESPONSE*: PHH denies the allegations in Paragraph 78.

79.    PHH also reports as the user fills in their application, disclosing that the user is providing their "AnnualIncome" on a page with a calculator about "Home Purchase | PHH Mortgage."

*RESPONSE*: PHH denies the allegations in Paragraph 79.

80.    As the user submits their information, PHH reports this to Google, disclosing that the user clicked for "Calculator Submit," on an "Affordability calculator form submission."

*RESPONSE*: PHH denies the allegations in Paragraph 80.

     *iv.*    *Users' Reverse Mortgage Related Activities on the Liberty Website Are Disclosed*

81.    On information and belief, PHH also discloses information to Third Parties on Customers' use of PHH's reverse mortgage products.  Users can navigate from PHH's website to learn about reverse mortgage products.  When users click to learn about reverse loan mortgage loans from PHH's website, PHH leads users to the Liberty Website.  Users' activities on this website is reported to Google as well as other third parties.

*RESPONSE*: PHH admits that https://www.phhmortgage.com provided resources for users who wish to learn about reverse mortgage products, including by redirecting users to www.libertyreversemortgage.com. PHH [admits/denies] the remaining allegations in Paragraph 81.

82.    As soon as a user loads the Liberty Website, PHH transmits events to Google, Microsoft, Yahoo, reporting that the user is on the page "https://libertyreversemortgage.com/."

*RESPONSE*: PHH denies the allegations in Paragraph 82.

83.    From the Liberty Website, users can then use a reverse mortgage calculator and submit their borrower information to determine options for a reverse mortgage.

*RESPONSE*: PHH admits the allegations in Paragraph 83.

84.    When a user loads the page with the calculator for a quote, events are sent to Google and Microsoft, reporting that the user is on a page with a "reverse-mortgage-calculator."

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 84, and on that basis denies them.

85.    Next, as the user submits the requested information on the calculator, additional events are sent to Google and Yahoo disclosing that the user is now viewing the results generated on their "Reverse Mortgage Calculator."

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 85, and on that basis denies them.

86.    After the user submits the request information, more information is requested from the user to generate reverse mortgage options.  When the user submits this information, events are sent to Microsoft, Google, and Yahoo reporting that the user is now on a "reverse-mortgage-calculator/graywater-thank-you" page.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 86, and on that basis denies them.

**D.    PHH Uses Ambiguous, Disingenuous, and Deceptive Privacy Policies That Fail to Sufficiently Disclose or Notify Customers of Defendant's Data Sharing.**

*i.    PHH's Privacy Representations*

87.    Customers never consented, agreed, authorized, or otherwise permitted Defendant to intercept their Personal and Financial Information or to use or disclose it for marketing and profit purposes.  Customers were never provided with any written notice that Defendant disclosed their Personal and Financial Information to Third Parties (who then allowed fourth parties to use it for profit).

***RESPONSE***: PHH denies the allegations in Paragraph 87.

88.    Customers relied on Defendant to keep their Personal and Financial Information confidential and securely maintained and to use this information only for the purpose of providing legitimate financial services.  Customers relied on Defendant to make only authorized disclosures of this information.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 88, and on that basis denies them.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

89.    Furthermore, Defendant actively misrepresented it would preserve the security and privacy of Customers' Personal and Financial Information.

*RESPONSE*: PHH denies the allegations in Paragraph 89.

90.    The contracts that PHH has with its Customers include its Privacy & Security Policy,[30] California Notice at Collection and Privacy Policy/California Consumer Privacy Act Disclosure ("CCPA Disclosure"),[31] Terms & Conditions,[32] and Privacy Notice[33] (collectively, "Privacy Contracts").

*RESPONSE*: The allegations in Paragraph 90 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH states as follows: PHH admits that it provides on its website a Privacy & Security Policy, California Notice at Collection and Privacy Policy/California Consumer Privacy Act Disclosure, Terms & Conditions, and Privacy Notice, all of which describe its data collection and sharing practices.

91.    In its Privacy & Security Policy, Defendant represents that it "respects your privacy."[34] That policy "describes the types of information PHH Mortgage Corporation may collect from you offline or when you visit our websites . . . and our practices for collecting, using, maintaining, protecting, and disclosing that information."[35] Defendant further explains how it uses customer information:

---

[30] *See Privacy*, https://www.onitygroup.com/Privacy (Exhibit A).

[31] *See Onity-CPRA-2024.pdf*, https://www.onitygroup.com/Onity/media/Onity/PDFs/Onity-CPRA-2024.pdf (last visited June 16, 2024) ("*CCPA Disclosure*") (attached as Exhibit B). While the Privacy states that it does not apply to consumers, it also states that it *does* apply to "consumers." *Onity-CPRA-2024.pdf*. Furthermore, PHH presents this policy as a "California Consumer Privacy Act" Disclosure and Privacy Policy and further lists this policy in multiple consumer privacy notices sections of its website, for example in its "Customer Resource Center." *See Privacy | Onity*, https://www.onitygroup.com/Privacy (last visited June 16, 2024) (sending Customers to https://www.mortgagequestions.com/YOUR-PRIVACY/CCPA-Form, which further directs customers to *Onity-EE-Privacy-2024.pdf*). *Helpful Forms and Links*, https://www.phhmortgage.com/Customers/Forms (last visited June 16, 2024) (linking to virtually identical policy, *Onity-EE-Privacy-2024.pdf*); As PHH holds this policy out as applying to Customers, it is reasonable for Consumers to rely on this policy

[32] *See Terms | Onity*, https://www.onitygroup.com/Web-terms-and-conditions (last visited June 16, 2025) (attached as Exhibit C)

[33] *Onity-CA-Annual-Privacy-Notice-2024*, https://www.onitygroup.com/Onity/media/Onity/PDFs/Onity-CA-Annual-Privacy-Notice-2024.pdf (last visited June 16, 2025) (attached as Exhibit D).

[34] *Privacy* (Exhibit A).

[35] *Id.*

DEFENDANT PHH MORTGAGE'S ANSWER TO CLASS ACTION COMPLAINT 3:25-cv-5323

We use information that We collect about you or that you provide to us:

- to present our Website and its contents to you;
- to provide you with information, products, or services that you request from Us;
- to determine your eligibility for financial products that we offer;
- to provide you with notices about your account, including insurance expiration and renewal notices;
- to carry out Our obligations and enforce Our rights arising from any contracts entered into between you and Us, including for billing and collection;
- to notify you about changes to our Website or any products or services PHH Mortgage Corporation Family offers or provides though it;
- to allow you to participate in interactive features on our Website;
- to work with marketing partners to provide you with products or services that may be of interest to you;
- to provide referrals to Our affiliates, subject to our Financial Privacy Notices;
- to report aggregated information to Our advertisers and to audit use of the Website;
- to enforce compliance with Our Website terms of use agreement, We may use your unique internal protocol address;
- to fulfill any other purpose for which you provide it and in any other way We may describe when you provide the information; and
- for any other purpose with your consent.

**RESPONSE**: Paragraph 91 purports to quote portions of Exhibit A, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

92.     In its Privacy & Security Policy, Defendant explains who it discloses its information to:

- to Our subsidiaries and affiliates, subject to our Financial Privacy Notices;
- to contractors, service providers, and other third parties We use to support our business;
- to retailers and other third parties to market to you, subject to our Financial Privacy Notices;
- to a buyer or other successor in the event of a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of PHH Mortgage Corporation Family's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which Personal Information held by PHH Mortgage Corporation Family about Our Website users is among the assets transferred;
- to fulfill the purpose for which you provide it;
- for any other purpose disclosed by Us when you provide the information; and
- with your consent or direction

**RESPONSE**: Paragraph 92 purports to quote portions of Exhibit A, which speak for themselves. To the extent such allegations do not accurately represent their full content and context,

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

PHH admits the allegations.

93.    In its Privacy & Security Policy, Defendant does not disclose that it shares Customers' Private and Financial Information with Third Parties for their advertising and marketing purpose, that Third Parties may share Customers' Private and Financial Information with fourth parties, or that Third and fourth Parties may use their information to advertise non-PHH products.

*RESPONSE*: PHH denies the allegations in Paragraph 93.

94.    Defendant's CCPA Disclosure "explains how Onity Group Inc. and its subsidiaries and affiliates, including PHH Mortgage Corporation and its subsidiaries and affiliates (collectively "PHH", "us", "our", or "we") collect, use, disclose, and/or retain personal information ("Information Practices") subject to the California Consumer Privacy Act."[36] It states unequivocally: "We do not sell or share personal information for cross-context behavioral advertising. We do not sell or share sensitive personal information."[37]

*RESPONSE*: Paragraph 94 purports to quote portions of Exhibit B, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

95.    In its Terms & Conditions, PHH states clearly:

Our website does not covertly capture information regarding the specific activities of any particular user. Our website does, however, produce reports that permit us to view your activity on our website in anonymous or aggregated form. The only personal information that we capture has been specifically submitted to us through our email information request function, or data specifically input by users into predetermined input forms and webpages programmed throughout our website.[38]

*RESPONSE*: Paragraph 95 purports to quote portions of Exhibit C, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

96.    Finally, the Consumer Privacy Notice recognizes that, under federal law, Customers

---

[36] *CCPA Disclosure* (Exhibit B).

[37] *Id.*

[38] *Terms & Conditions* (Exhibit C).

may limit "sharing for nonaffiliates to market to" them.[39] PHH's Consumer Privacy Notice represents:

> Federal law also requires us to tell you how we collect, share, and protect your personal information. . . ***The types of personal information we collect and share depend on the product or service you have with us***.[40]

***RESPONSE***: The allegations in Paragraph 96 contain legal conclusions to which no response is required.  Paragraph 96 purports to quote or paraphrase portions of Exhibit D, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

97.     But the types of personal information that PHH collects and shares does ***not*** depend on the product or service a Customer has with it.  Instead, PHH indiscriminately collects and shares Customer information without regard to the product or service a Customer has with PHH.

***RESPONSE***: PHH denies the allegations in Paragraph 97.

98.     PHH list "the reasons financial companies can share their customers' personal information; the reasons Onity Group Inc. chooses to share; and whether you can limit this sharing."[41] Those reasons include "our everyday business purposes -- such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus"; "For our marketing purposes -- to offer our products and services to you"; "For joint marketing with other financial companies"; "For our affiliates' everyday business purposes - information about your transactions and experiences"; "For our affiliates' everyday business purposes -- information about your creditworthiness"; "For our affiliates to market to you"; and "For our nonaffiliates to market to you."[42]

***RESPONSE***: Paragraph 98 purports to quote portions of Exhibit D, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

---

[39] *Consumer Privacy Notice* (Exhibit D).

[40] *Id*.

[41] *Id*.

[42] *Id*.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

99.    The Consumer Privacy Notice defines an Affiliate as "Companies related by common ownership or control. they can be financial and nonfinancial companies."[43] Certainly, Third Parties and search engine companies like Google[44] do not meet this definition.

*RESPONSE*: PHH admits the allegations in the second sentence of Paragraph 99. The remaining allegations in Paragraph 99 purport to quote or paraphrase portions of Exhibit D, which speak for themselves.  To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

100.    Joint marketing is "A formal agreement between nonaffiliated financial companies that together market financial products or services to [Customers]."[45] PHH's "joint marketing partners include financial service providers (such as mortgage lenders, credit card companies, insurance companies, companies offering financial and credit products or services or non-profit financial and housing counseling organizations); or nonfinancial companies (such as technology, legal, health, home-related, media and communications service providers, education/training, entertainment, transportation, automotive and marketing companies, discount and membership programs, retailers, utilities, or employment resources)."[46] Third Parties and search engine companies like Google do not meet this definition, either.

*RESPONSE*: The allegations in Paragraph 100 purport to quote portions of Exhibit D, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

101.    PHH finally defines "nonaffiliates," which are "Companies not related by common ownership or control."[47] "They can be financial and nonfinancial companies."[48] PHH identifies the types of "[n]onaffiliates" it can share with as "include financial service providers (such as consumer

---

[43] *Id.*

[44] "Google is an American search engine company." *Google | History & Facts; Products & Services | Britannica Money*, https://www.britannica.com/money/Google-Inc (last visited June 16, 2025).

[45] *Consumer Privacy Notice* (Exhibit D).

[46] *Id.*

[47] *Id.*

[48] *Id.*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

banks, insurance companies and agencies or companies offering financial and credit products or services); or nonfinancial companies (such as technology, legal, health, home-related, media and communications service providers, education/training, entertainment, transportation, automotive and marketing companies, discount and membership programs, retailers, utilities, or employment resources)."[49] It is not clear that the Third Parties at issue fall under this category—Google, for example, is a search engine company, not an insurance company, service provider, or retailer.

*RESPONSE*: PHH denies the allegations in the last sentence of Paragraph 101. The remaining allegations in Paragraph 101 purport to quote or paraphrase portions of Exhibit D, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

102.    In stating that it "can include" its Customers' Personal and Financial Information, the Consumer Privacy Notice grants PHH the sole discretion to determine whether it will share Customers' information with nonaffiliates.  It does not include any information explaining or specifying what information it shares with nonaffiliates or under what conditions and circumstances it may do so.  PHH thus maintains complete discretion on whether and what to disclose and when it discloses it.

*RESPONSE*: PHH denies the allegations in Paragraph 102.

103.    Customers reasonably understand that PHH will securely maintain their Personal and Financial Information entrusted to it and protect that information from being shared or utilized by Third Parties (and fourth parties) that have nothing to do with PHH or its services.  PHH's Privacy Contracts only reinforced this reasonable understanding.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 103, and on that basis denies them. PHH denies the allegations in the second sentence of Paragraph 103.

104.    Nevertheless, PHH abuses the contractual discretion it reserved wholly for itself and acts in a manner that it knows to be inconsistent with its Customers' reasonable expectations under

---

[49] *Id.*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

its Privacy Contracts.

*RESPONSE*: PHH denies the allegations in Paragraph 104.

105.    By always exercising its discretion in its own favor and to the detriment of Customers, Defendant breaches the reasonable expectations of Customers and, in doing so, violates its duty to act in good faith.

*RESPONSE*: The allegations in Paragraph 105 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 105.

106.    Finally, PHH specifically represents to California residents that they have the "right[] to restrict the sharing of personal and financial information with our affiliates . . . and outside companies we do business with.  Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us."[50]

*RESPONSE*: Paragraph 106 purports to quote or paraphrase portions of Exhibit C, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

107.    California consumers like Plaintiff reasonably understand this language to mean that PHH will only share their information with its affiliates or outside companies PHH does business with as "necessary" to follow the law or to service consumers' accounts with PHH.

*RESPONSE*: PHH denies the allegations in Paragraph 107.

108.    In contrast to this reasonable understanding, PHH indiscriminately shares Personal and Financial Information with nonaffiliated Third Parties, without Customers' consent and for Third Party and fourth party marketing purposes that have nothing to do with servicing consumers' PHH accounts.

*RESPONSE:* PHH denies the allegations in Paragraph 108.

---

[50] *California Privacy Notice*, Ex. C at 1.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

ii.     *Third-Parties Further Share the Data and Information Collected from Trackers Installed on PHH's Website with Fourth Parties.*

109.    In addition to using the data for their own purposes, the third parties that obtain Customer data and information from trackers installed on PHH's website further profit from PHH's improper sharing practices by selling Customers' data to fourth parties.

**RESPONSE**: PHH denies that it employed improper sharing practices.    PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 109, and on that basis denies them.

110.    As one study found, "on average, companies that allow external sharing of [] data assets have data that has been exposed to 42 4th-party domains."[51]

**RESPONSE**: Paragraph 110 purports to quote portions of the DocControl.io website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

111.    Consequently, a fourth party that did not have a tracker directly installed on the PHH's website may obtain and use information collected via third-party trackers to provide direct advertisements to Customers on the fourth party's platform.

**RESPONSE**: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 111, and on that basis denies them.

112.    One common recipient of Customers' collected data is Facebook.

**RESPONSE**: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 112, and on that basis denies them.

113.    For example, Facebook and Google have engaged in practices that allowed for the sharing or accessibility of user data between their platforms.[52] Because of this, advertisements on

---

[52] *See* Steven Musil, *Facebook gave tech giants more access to users data than it said*, CBSNEWS (Dec. 19, 2018), https://www.cbsnews.com/news/facebook-gave-tech-giants-more-access-to-users-data-than-it-said-new-york-times/ (last visited Apr. 24, 2025); Steven Musil, *Facebook acknowledges it shared user data with dozens of companies* (Jul. 1, 2018), https://www.cnet.com/tech/tech-industry/facebook-acknowledges-it-shared-user-data-with-dozens-of-companies/ (last visited Apr. 24. 2025); Paresh Dave and Katie Paul, *Google secretly gave Facebook perks, data in ad deal* (Dec. 17, 2020), https://www.reuters.com/article/technology/google-secretly-gave-facebook-perks-data-in-ad-deal-us-states-alleges-idUSKBN28Q37G/ (last visited Apr. 24, 2025).

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

Facebook may reflect information collected via a Google tracker, either because of information shared directly or indirectly between the companies.

*RESPONSE*: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 113, and on that basis denies them.

114. Facebook and Google both act as data brokers, meaning they collect data, compile it into datasets, and sell it to third parties.[53] Two other popular data brokers are Acxiom and Oracle Data Cloud ("Oracle"). Facebook and Google have been known to buy information from, and sell information to, such data brokers.[54]

*RESPONSE*: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 114, and on that basis denies them.

115. Because of this, one company's tracker (e.g., Google Analytics) may collect information, compile it into a dataset (owned by Google), and act as a data broker to sell it to a third-party (e.g., Facebook), which uses the information to advertise for various parties (like other financial institutions) on its own platform.[55] Alternatively, one company's tracker (e.g., Google Analytics) may collect information, compile it into a dataset (owned by Google), and act as a data broker to sell it to a fourth-party advertiser (e.g., another financial institution), which uses the information to advertise for on other platforms (e.g., Facebook).[56] Or, one company's tracker (e.g., Google Analytics) may collect information, sell either the raw data or a compiled dataset to a third-party data broker (e.g., Acxiom or Oracle), which third party data broker sells the information to a fourth party (e.g., Facebook), which uses the information for still other parties' targeted

---

[53] *See* Jessie G Taft, *Facebook and Google Are the New Data Brokers* (Dec. 18, 2018, updated Jan. 5, 2021), https://dli.tech.cornell.edu/post/facebook-and-google-are-the-new-data-brokers (last visited Apr. 24. 2025).

[54] *See* Kalev Leetaru, *The Data Brokers So Powerful Even Facebook Bought their Data* (Apr. 05, 2018), https://www.forbes.com/sites/kalevleetaru/2018/04/05/the-data-brokers-so-powerful-even-facebook-bought-their-data-but-they-got-me-wildly-wrong/ (last visited Apr. 24. 2025).

[55] *See* Don Marti, *et. al., Who Shares Your Information With Facebook?* at 16 (Jan. 2024), https://innovation.consumerreports.org/wp-content/uploads/2024/01/CR_Who-Shares-Your-Information-With-Facebook.pdf (explaining how Facebook uses aggregated data from external data brokers to target users on its platform).

[56] *Id.*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

advertising.[57] In any event, the basic idea and results are the same. Google Analytics tracks and discloses information to fourth parties that use that data and information to advertise a variety of products on a variety of platforms.

**RESPONSE**: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 115, and on that basis denies them.

116. The information that data brokers like Acxiom and Oracle buy and compile from trackers (like Facebook's and Google's tackers) is inherently sensitive.

**RESPONSE**: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 116, and on that basis denies them.

**E.    PHH Violated the GLBA, FTC Standards, and Related Regulations**

117. As a financial institution, PHH is subject to the GLBA. 15 U.S.C. § 6809(3)(A) (a "financial institution" is "any institution the business of which is engaging in financial activities..."). Defendant recognizes this, noting, "If you have a mortgage or an application with us, the information we have about you is protected under federal privacy laws—such as the Gramm Leach Bliley Act and the Fair Credit Reporting Act. It is therefore excluded from state privacy laws, and not covered by the disclosures below."[58]

**RESPONSE**: The allegations in the first two sentences of Paragraph 117 contain legal conclusions to which no response is required. The third sentence of Paragraph 117 purports to quote portions of the Privacy Policy on the MrCooper.com website, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. PHH admits that it is a non-bank financial institution and otherwise denies the any remaining allegations in Paragraph 117.

118. Pursuant to the GLBA, "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of

---

[57] *See* Kalev Leetaru, *The Data Brokers So Powerful Even Facebook Bought their Data* (Apr. 05, 2018), https://www.forbes.com/sites/kalevleetaru/2018/04/05/the-data-brokers-so-powerful-even-facebook-bought-their-data-but-they-got-me-wildly-wrong/.

[58] *State Consumer Privacy Act Laws – FAQ*, MR. COOPER, https://www.mrcooper.com/privacy/state (last accessed May 12, 2025).

those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

**RESPONSE**: Paragraph 118 purports to quote 15 U.S.C. § 6801(a), which speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH denies the allegations.

119.    The FTC has interpreted Section 5 of the FTC Act, 15 U.S.C. § 45, to include compliance with the GLBA Privacy Rule, 16 C.F.R. § 313.1, *et seq*.  The FTC consistently enforces the GLBA Privacy Rule, as failure to comply with the GLBA Privacy Rule is an unfair act or practice prohibited by Section 5 of the FTC Act.[59]

**RESPONSE**: The allegations in Paragraph 119 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 119 and on that basis denies them.

120.    The GLBA Privacy Rule is a regulation that "governs the treatment of nonpublic personal information about consumers by the financial institutions." 16 C.F.R. § 313.1 *et seq*.

**RESPONSE**: Paragraph 120 purports to quote 16 C.F.R. § 313.1, which speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH denies the allegations.

121.    Pursuant to the GLBA Privacy Rule, "[a] financial institution must provide a notice of its privacy policies and practices with respect to both affiliated and nonaffiliated third parties, and allow the consumer to opt out of the disclosure of the consumer's nonpublic personal information to a nonaffiliated third party if the disclosure is outside of the exceptions."[60] PHH consistently fails to do this.

**RESPONSE**: The first sentence of Paragraph 121 purports to quote a portion of the GLBA Privacy Rule, which speaks for itself. To the extent such allegations do not accurately represent its

---

[59] *See How to Comply with the Privacy Rule*, https://www.ftc.gov/business-guidance/resources/how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act ("The FTC may brings enforcement actions for violations of the Privacy Rule.").

[60] *See* FTC, *Financial Privacy Rule*, https://www.ftc.gov/legal-library/browse/rules/ financial-privacy-rule (last visited August 8, 2024).

full content and context, PHH denies the allegations. PHH denies the remaining allegations in Paragraph 121.

122. The GLBA Privacy Rule, defines sensitive information that should not be indiscriminately disclosed:

(n)     (1) Nonpublic personal information means:
          (i)     Personally identifiable financial information; and
          (ii)    Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available....
        (3) Examples of lists—
          (i)     Nonpublic personal information includes any list of individuals' names and street addresses that is derived in whole or in part using personally identifiable financial information (that is not publicly available), such as account numbers....

(o)     (1) Personally identifiable financial information means any information:
          (i)     A consumer provides to you to obtain a financial product or service from you;
          (ii)    About a consumer resulting from any transaction involving a financial product or service between you and a consumer; or
          (iii)   You otherwise obtain about a consumer in connection with providing a financial product or service to that consumer.
        (2) Examples—
          (i)     Information included.  Personally identifiable financial information:
                  (A)   Information a consumer provides to you on an application to obtain a loan, credit card, or other financial product or service;
                  (B)   Account balance information, payment history, overdraft history, and credit or debit card purchase information;
                  (C)   The fact that an individual is or has been one of your customers or has obtained a financial product or service from you;
                  (D)   Any information about your consumer if it is disclosed in a manner that indicates that the individual is or has been your consumer;
                  (E)   Any information that a consumer provides to you or that you or your agent otherwise obtain in connection with collecting on, or servicing, a credit account;
                  (F)   Any information you collect through an Internet "cookie" (an information collecting device from a web server); and
                  (G)   Information from a consumer report.

16 C.F.R. § 313.3

**RESPONSE**: Paragraph 122 purports to quote portions of 16 C.F.R. § 313.3, which speak for themselves. To the extent such allegations do not accurately represent their full content and

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

context, PHH denies the allegations.

123. The information that PHH disclosed to Third Parties via trackers—including *e.g.*, information revealed in the application process regarding the user's status as a customer; the user's browsing activities, including that the user clicked certain buttons and what URLs or webpages they led to; loan application activities, such as that a user is applying for a loan or mortgage; Customers' use of PHH's online loan calculator; when a Customer requested a callback from PHH to apply for a loan; and disclosures about users' activities on libertyreversemortgage.com when users browse pages about reverse mortgages (all of which is information PHH obtained from the Customer in connection with providing financial products and services)—is "nonpublic personal information" under the GLBA and related regulations.  16 C.F.R. § 313.3.

*RESPONSE*: The allegations in Paragraph 123 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 123.

124. PHH has utterly failed to meet its privacy obligations under the GLBA:  it has explicitly disclosed Customers' nonpublic personal information and Personal and Financial Information to Third Parties for marketing and advertisement, including for Third Party and fourth party advertising use.

*RESPONSE*: The allegations in Paragraph 124 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 124.

125. PHH fails to meet its notice obligations under the GLBA.  "[A] financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title." 15 U.S.C.A. § 6802.  As outlined at length above, PHH's Privacy Policies fail to put Customers on notice as required here and actually promise that Customers' Personal and Financial Information will not be shared with Third Parties (and fourth parties) for targeted advertising purposes.

*RESPONSE*: The first and third sentences of Paragraph 125 contain legal conclusions to

- 37 -

which no response is required. The second sentence of Paragraph 125 purports to quote portions of 15 U.S.C.A. § 6802, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. PHH denies any remaining allegations in Paragraph 125.

126.    For example, by not including in its Privacy Policies that it discloses Customers' Personal and Financial Information to Third Parties for their use in their own advertising and marketing, the Privacy Policies fail to properly disclose:

> (1)    the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties . . . including []the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided [and] the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution . . .
> (2)    the categories of nonpublic personal information that are collected by the financial institution; [and]
> (3)    the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information

15. U.S.C.A. § 6803.

**RESPONSE**: The allegations in Paragraph 126 contain legal conclusions to which no response is required. Paragraph 126 purports to quote portions of 15 U.S.C.A. § 6803, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

127.    As detailed above, PHH also fails to meet its opt out obligations under the GLBA. The GLBA Privacy Rule requires financial institutions to, for example, "provide an opt out notice" to Customers, which notice "must state…[t]hat the consumer has the right to opt out of that disclosure [and] [a] reasonable means by which the consumer may exercise the opt out right." 16 C.F.R. § 313.7.  Under the GLBA, PHH

> may not disclose nonpublic personal information to a nonaffiliated third party unless—
> (A) [it] clearly and conspicuously discloses to the consumer. . . that such information may be disclosed to such third party;
> (B)    *the consumer is given the opportunity*, before the time that such information is initially disclosed, *to direct that such information not be disclosed to such third party*; and
> (C)    the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

15 U.S.C.A. § 6802 (emphasis added).

*RESPONSE*: The allegations in Paragraph 127 contain legal conclusions to which no response is required. Paragraph 127 purports to quote portions of 16 C.F.R. § 313.7 and 15 U.S.C.A. § 6802, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

128.    PHH fails to meet its opt out obligations because, as outlined above, PHH does not clearly and conspicuously disclose to Customers its Disclosure of their Personal and Financial Information to Third Parties.

*RESPONSE*: The allegations in Paragraph 128 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 128.

129.    PHH further fails to meet its opt out obligations because Customers are not provided an opportunity before disclosure to direct the nondisclosure of their information—as described above, PHH instantaneously discloses information when Customers visit its Website.

*RESPONSE*: The allegations in Paragraph 129 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 129.

130.    By perpetually disclosing its customers' Personal and Financial Information to third parties without consent, PHH failed and continues to fail to meet its obligations under the GLBA, FTC standards, and related regulations, to establish appropriate standards and safeguards relative to Customers' Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 130 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 130.

**F.    Plaintiff's Experiences**

131.    Plaintiff Ethan Allison applied for a mortgage with PHH on its Website in or around 2020 or 2021.  Plaintiff regularly used PHH's Website for managing his mortgage, checking his balance, making payments including setting autopay, and accessing tax forms.

***RESPONSE***: PHH admits that Plaintiff applied for a loan with a mortgage company other than PHH in July 2021 and PHH became the servicer of that loan effective October 1, 2021. PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 131, and on that basis denies them.

132. Plaintiff is a Facebook user.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 132, and on that basis denies them.

133. Beginning around the same time Plaintiff used PHH's Website, he began receiving advertisements on his Facebook feed regarding loans, refinancing, and mortgages. Plaintiff has regularly received such advertisements since first using PHH's Website.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 133, and on that basis denies them.

134. Plaintiff accessed Defendant's Website at Defendant's direction and encouragement.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 134, and on that basis denies them.

135. Plaintiff relied on Defendant's Website to communicate Personal and Financial Information and did so with the understanding that PHH would not share his Personal and Financial Information except as agreed in the Privacy Policies.

***RESPONSE***: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 135, and on that basis denies them.

136. At no point did Customers like Plaintiff sign any written authorization permitting Defendant to send their Personal and Financial Information to Third Parties (or fourth parties) uninvolved in providing they with financial or mortgage services.

***RESPONSE***: PHH admits that Plaintiff did not provide written authorization but further states that PHH's data sharing practices are disclosed in the policies attached to the Complaint. PHH denies the remaining allegations in Paragraph 136.

137. Plaintiff reasonably expected that his communications with PHH were confidential,

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

solely between each Plaintiff and PHH, and that, as such, those communications and any Personal and Financial Information submitted would not be transmitted to or intercepted by a third party (or used by a fourth party).

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 137, and on that basis denies them.

138.    Plaintiff provided his Personal and Financial Information to Defendant and trusted that the information would be safeguarded according to PHH's promises and the law.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 138, and on that basis denies them.

139.    Had he been aware of PHH's sharing practices, Plaintiff would not have authorized PHH to make his Personal or Financial Information available for sale on the resale market.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 139, and on that basis denies them.

140.    Plaintiff never intended to let PHH benefit from his Personal and Financial Information.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 140, and on that basis denies them.

141.    Through the systematic data sharing process described in this complaint, Plaintiff's interactions with PHH's online financial platform were disclosed to third parties, including Google. Plaintiff did not consent to those disclosures.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 141, and on that basis denies them.  PHH denies the allegations in the second sentence of Paragraph 141.

142.    On information and belief, through its use of Third Party trackers on its Website, Defendant disclosed to Third Parties information Plaintiff provided to PHH as a financial institution and resulting from a transaction for Plaintiff to obtain or access Defendant's mortgage services, including Plaintiff's:

a.    Existing user or Customer status;

b.      Browsing activities, including the pages and content Plaintiff viewed;

c.      Coborrower information;

d.      Real estate ownership information;

e.      The type of loan Plaintiff applied for;

f.      Identity, including via his IP address; and

g.      Information collected through an Internet "cookie" (or information collecting device from a web server).

*RESPONSE*: PHH admits that it may use or have used certain technologies for various purposes as outlined in its privacy policies. PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 142, and on that basis denies them.

143.    By failing to receive the requisite consent, PHH breached confidentiality and unlawfully disclosed Plaintiff's Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 143 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 143.

144.    Plaintiff would not have submitted his information to PHH if they had known it would be shared with Third Parties and further sold to fourth parties for purposes of marketing Third and fourth party products.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 144, and on that basis denies them.

145.    As a result of PHH's Disclosure of Plaintiff's Personal and Financial Information via the Meta Pixel and other tracking technologies to Third Parties (and fourth parties) without authorization, Plaintiff was harmed in the following ways:

a.      Loss of privacy;

b.      Unauthorized disclosure of his Personal and Financial Information;

c.      Unauthorized access to his Personal and Financial Information by Third Parties;

d.      PHH benefited from the use of Plaintiff's Personal and Financial Information without sharing that benefit with Plaintiff;

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

e.   Repeated targeted advertisements from Third and fourth parties on social media and other third-party websites, reflecting Plaintiff's Personal and Financial Information that was improperly disclosed and used;

f.   Lost benefit of his bargain with PHH, as Plaintiff did not receive the reasonable privacy and data security protections for which he paid;

g.   PHH enriched itself at Plaintiff's expense without sharing the revenue and profit attributable to collecting Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

h.   PHH profited from disclosing Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties) through savings in marketing costs;

i.   PHH profited as a result of collecting Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties) through its revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff;

j.   Plaintiff lost his ability to keep his Personal and Financial Information private or allow PHH to track his data;

k.   Embarrassment, humiliation, frustration, and emotional distress;

l.   Decreased value of Plaintiff's Personal and Financial Information;

m.   Increased risk of future harm resulting from future use and disclosure of his Personal and Financial Information; and

n.   Statutory damages.

*RESPONSE*: The allegations in Paragraph 145 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 145.

## **TOLLING, CONCEALMENT, AND ESTOPPEL**

146.   The applicable statutes of limitation have been tolled as a result of PHH's knowing and active concealment and denial of the facts alleged herein.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

*RESPONSE*: The allegations in Paragraph 146 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 146.

147.    PHH seamlessly incorporated trackers into its Website while providing Customers using those platforms with no indication that their Website usage was being tracked and transmitted to Third Parties.  PHH knew that its Website incorporated trackers, yet it failed to disclose to Plaintiff and Class Members that their sensitive Personal and Financial Information would be intercepted, collected, used by, and disclosed to Third Parties.

*RESPONSE*: PHH denies the allegations in Paragraph 147.

148.    Plaintiff and Class Members could not with due diligence have discovered the full scope of PHH's conduct, because there were no disclosures or other indication that they were interacting with websites employing tracking technology to unauthorizedly disclose their Personal and Financial Information to unaffiliated Third Parties or that their information would subsequently be sold to fourth parties for the purpose of marketing third and fourth party products.

*RESPONSE*: PHH denies the allegations in Paragraph 148.

149.    All applicable statutes of limitation have also been tolled by operation of the discovery rule and the doctrine of continuing tort.  PHH's illegal interception and disclosure of Plaintiff's and the Class's Personal and Financial Information has continued unabated.  What is more, PHH was under a duty to disclose the nature and significance of its data collection practices but did not do so.  PHH is therefore estopped from relying on any statute of limitations defenses.

*RESPONSE*: The allegations in Paragraph 149 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 149.

## **CLASS ACTION ALLEGATIONS**

150.    Plaintiff brings this nationwide class action on behalf of themselves and on behalf of all other similarly situated persons pursuant to Fed. R. Civ. P. 23.

*RESPONSE*: PHH admits that Plaintiffs purport to bring a class action against PHH but denies that this action may be properly maintained as a class action.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

151.   Plaintiff seeks to represent the following classes:

**Nationwide Class**:  All individuals in the United States who have had or applied for mortgage services with PHH within the applicable statute of limitations and whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

**California Subclass**:  All citizens of California who have had or applied for mortgage services with PHH within the applicable statute of limitations and whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

*RESPONSE*: PHH admits that Plaintiff purports to bring a class action against PHH but denies that this action may be properly maintained as a class action.

152.   Excluded from the Classes are the following individuals and/or entities:  Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

*RESPONSE*: PHH admits that Plaintiff purports to bring a class action against PHH but denies that this action may be properly maintained as a class action.

153.   Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

*RESPONSE*: The allegations in Paragraph 153 contain legal conclusions to which no response is required. PHH admits that Plaintiff purports to bring a class action against PHH but denies that this action may be properly maintained as a class action.

154.   This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23(a)(1)-(4).

*RESPONSE*: The allegations in Paragraph 154 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 154.

155.   <u>Numerosity</u>:  Class Members are so numerous and geographically dispersed that joinder of all members is impracticable.  Upon information and belief, there likely millions of

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

individuals throughout the United States whose Personal and Financial Information has been improperly used or disclosed by Defendant, and the Classes are identifiable within Defendant's records.

*RESPONSE*: The allegations in Paragraph 155 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 155.

156.    Ascertainability.    Class Members are readily identifiable from information in Defendant's possession, custody, and control.

*RESPONSE*: The allegations in Paragraph 156 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 156.

157.    Commonality and Predominance: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members.  These include:

    a.    Whether Defendant disclosed Class Members' Personal and Financial Information to Third Parties;

    b.    Whether Class Members consented to Defendant's disclosure of their Personal and Financial Information;

    c.    Whether Defendant owed duties to Plaintiff and Class Members to protect their Personal and Financial Information;

    d.    Whether Defendant breached its duty to protect Plaintiff's and Class Members' Personal and Financial Information;

    e.    Whether Defendant's disclosure of Plaintiff's and Class Members' Personal and Financial Information to Third Parties violated federal, state and local laws, or industry standards;

    f.    Whether Defendant's failure to allow Customers a meaningful opportunity to opt out of sharing with Third Parties violated federal, state and local laws, or industry standards;

    g.    Whether Defendant's conduct resulted in or was the actual cause of the disclosure

of Plaintiff's and Class Members' and Personal and Financial Information;

h.    Whether Defendant's conduct resulted in or was the proximate cause of the disclosure of Plaintiff's and Class Members' Personal and Financial Information;

i.    Whether Defendant has a contractual obligation to protect Plaintiff's and Class Members' Personal and Financial Information and whether it complied with such contractual obligation;

j.    Whether Defendant has a duty of confidence and whether it complied with such obligation;

k.    Whether Defendant's conduct amounted to violations of state consumer protection statutes;

l.    Whether Defendant's conduct amounted to violations of state and federal wiretap statutes;

m.    Whether Defendant's conduct amounted to violations of other California state laws;

n.    Whether Defendant should retain Plaintiff's and Class Members' valuable Personal and Financial Information;

o.    Whether, as a result of Defendant's conduct, Plaintiff and Class Members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief.

*RESPONSE*: The allegations in Paragraph 157 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 157.

158.    Defendant has engaged in a common course of conduct toward Plaintiff and the Class Members, in that the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully disclosed and accessed in the same way.  As set forth above, the common issues arising from Defendant's conduct affecting Class Members predominate over any individualized issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

*RESPONSE*: The allegations in Paragraph 158 contain legal conclusions to which no

response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 158.

159.    Typicality:  Plaintiff's claims are typical of those of other Class Members because all had their Personal and Financial Information compromised as a result of Defendant's use and incorporation of Meta Pixel, Google Pixel, Microsoft Pixel, and other tracking technology.

*RESPONSE*: The allegations in Paragraph 159 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 159.

160.    Policies Generally Applicable to the Classes:  This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole.  Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

*RESPONSE*: The allegations in Paragraph 160 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 160.

161.    Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff have no disabling conflicts of interest that would be antagonistic to those of the other Class Members.  Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiff has suffered is typical of other Class Members.  Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

*RESPONSE*: The allegations in Paragraph 161 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 161, and on that basis denies them.

162.    <u>Superiority and Manageability</u>:  Class litigation is an appropriate method for fair and efficient adjudication of the claims involved.  Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.  Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.  Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

*RESPONSE*: The allegations in Paragraph 162 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 162.

163.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged.  If the class action device were not used, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources.  Moreover, the costs of individual suits could unreasonably consume the amounts that would be recovered, whereas proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged.  Finally, individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

*RESPONSE*: The allegations in Paragraph 163 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 163.

164.    The litigation of the claims brought herein is manageable.  Defendant's uniform

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

**RESPONSE**: The allegations in Paragraph 164 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 164.

165.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

**RESPONSE**: The allegations in Paragraph 165 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 165.

166.    Unless a Class-wide injunction is issued, Defendant may continue in its unlawful use and disclosure and failure to properly secure the Personal and Financial Information of Plaintiff and the Class Members, Defendant may continue to refuse to provide proper notification to and obtain proper consent from Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

**RESPONSE**: The allegations in Paragraph 166 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 166.

167.    Moreover, Defendant has acted or refused to act on grounds generally applicable to the Classes, and, accordingly, final injunctive or corresponding declaratory relief regarding the whole of the Classes is appropriate.

**RESPONSE**: The allegations in Paragraph 167 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 167.

168.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to,

the following:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to the disclosure of customer information;

d. Whether Defendant was negligent and/or negligent *per se*;

e. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that contract;

f. Whether Defendant breached the contract;

g. In the alternate, whether Defendant was unjustly enriched;

h. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Personal and Financial Information had been used and disclosed to Third Parties and used for Third Party and fourth parties' benefit;

i. Whether Defendant failed to implement and maintain reasonable security procedures and practices;

j. Whether Defendant invaded Plaintiff and the Class Members' privacy;

k. Whether Defendant breached its implied duty of confidentiality; and,

l. Whether Plaintiff and the Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

*RESPONSE*: The allegations in Paragraph 168 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 168.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

169.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The allegations in Paragraph 169 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

170.     Plaintiff and Class Members submitted sensitive nonpublic personal information, including Personal and Financial Information, when accessing PHH's Website.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 170, and on that basis denies them.

171.     Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using Plaintiff's and Class Members' Personal and Financial Information in its care and custody, including implementing industry-standard privacy procedures sufficient to reasonably protect the information from disclosure and unauthorized transmittal and use of Personal and Financial Information that occurred.

*RESPONSE*: The allegations in Paragraph 171 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 171.

172.     Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under the GLBA, which imposes "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

*RESPONSE*: The allegations in Paragraph 172 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 172.

173.     Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

commerce," including the unfair practice of failing to keep the nonpublic personal information confidential.

**RESPONSE**: The allegations in Paragraph 173 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 173.

174. Defendant acted with wanton and reckless disregard for the privacy and confidentiality of Plaintiff's and Class Members' Personal and Financial Information by disclosing and providing access to this information to Third Parties for the financial benefit of Third Parties (and fourth parties) and Defendant.

**RESPONSE**: The allegations in Paragraph 174 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 174.

175. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's disclosure of their Personal and Financial Information to benefit Third Parties (and fourth parties) and Defendant. Defendant actively sought and obtained Plaintiff's and Class Members' Personal and Financial Information. And Defendant knew or should have known that by integrating tracking technology on its Website that Plaintiff's and Class Members' nonpublic personal information, including Personal and Financial Information, would be disclosed to the Third Parties (and used by the fourth parties).

**RESPONSE**: The allegations in Paragraph 175 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 175.

176. Personal and Financial Information is highly valuable, and Defendant knew, or should have known, the harm that would be inflicted on Plaintiff and Class Members by disclosing their Personal and Financial Information to Third Parties. This disclosure was of benefit to the Third Parties (and fourth parties) and Defendant by way of data harvesting, advertising, and increased sales.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

*RESPONSE*: The allegations in Paragraph 176 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 176.

177.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in the handling and securing of Personal and Financial Information of Plaintiff and Class Members.  This failure actually and proximately caused Plaintiff's and Class Members' injuries.

*RESPONSE*: The allegations in Paragraph 177 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 177.

178.    As a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or imminently will suffer injury and damages, including monetary damages, inappropriate advertisements and use of their Personal and Financial Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

*RESPONSE*: The allegations in Paragraph 178 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 178.

179.    Defendant's negligence and breach of its common-law duties to exercise reasonable care directly and proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation:  the unauthorized access of their Personal and Financial Information by Third Parties (and fourth parties); improper disclosure of their Personal and Financial Information; receipt of targeted advertisements reflecting private financial information; lost benefit of their bargain; lost value of their Personal and Financial Information and diminution in value; embarrassment, humiliation, frustration, and emotional distress; lost time and money incurred to mitigate and remediate the effects of use of their information, as to targeted advertisements that resulted from and were caused by Defendant's negligence; value to Plaintiff and the Class Members of surrendering their choices to keep their Personal and Financial

Information private and allowing Defendant to track their data; increased risk of future harm resulting from future use and disclosure of Plaintiff's and the Class Members' Personal and Financial Information; and other injuries and damages as set forth herein. These injuries are ongoing, imminent, immediate, and continuing.

*RESPONSE*: The allegations in Paragraph 179 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 179.

180. Defendant's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' Personal and Financial Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiff and Class Members seeks actual and compensatory damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence.

*RESPONSE*: PHH admits that Plaintiff seeks damages and other relief on behalf of himself and members of the putative class, but denies that he and they are entitled to any such relief. The remaining allegations in Paragraph 180 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 180.

181. Plaintiff and Class Members seek to recover the value of the unauthorized access to their Personal and Financial Information resulting from Defendant's wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property. Like a technology covered by a trade secret or patent, use or access to a person's personal information is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret protected technology. Nevertheless, a Plaintiff may generally recover the reasonable use value of the intellectual property—i.e., a "reasonable royalty" from an infringer. This is true even though the infringer's use did not interfere with the owner's own use (as in the case of a non-practicing patentee) and even though the owner would not have otherwise licensed such intellectual property to the infringer. A similar royalty or license measure of damages is appropriate here under common law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a)

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

Plaintiff and Class Members have a protectible property interest in their Personal and Financial Information; (b) the minimum damages measure for the unauthorized use of personal property is its rental value; and (c) rental value is established with reference to market value, i.e., evidence regarding the value of similar transactions

*RESPONSE*: PHH admits that Plaintiff seeks damages and other relief on behalf of himself and members of the putative class, but denies that he and they are entitled to any such relief. The remaining allegations in Paragraph 181 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 181.

182.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

*RESPONSE*: The allegations in Paragraph 182 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 182.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

183.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

184.    Plaintiff being this negligence *per se* count in the alternative to their common law negligence claim.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

185.    Pursuant to the laws set forth herein, including the FTC Act, the GLBA, and state law, Defendant was required by law and industry standards to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

186.    Plaintiff and Class Members are within the class of persons that these statutes and

rules were designed to protect.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

187.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

188.    Defendant owed a duty to timely and adequately inform Plaintiff and Class Members, in the event of their Personal and Financial Information being improperly disclosed to unauthorized Third Parties.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

189.    It was not only reasonably foreseeable, but it was intended, that the failure to reasonably protect and secure Plaintiff's and Class Members' Personal and Financial Information in compliance with applicable laws would result in unauthorized Third Parties gaining access to Plaintiff's and Class Members' Personal and Financial Information, and resulting in Defendant's liability under principles of negligence *per se*.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

190.    Defendant violated its duty under Section 5 of the FTC Act, the GLBA, and/or state law by failing to use reasonable measures to protect Plaintiff's and Class Members' Personal and Financial Information and not complying with applicable industry standards as described in detail herein.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

191.    Plaintiff's and Class Member's Personal and Financial Information constitutes personal property that was taken and misused as a proximate result of Defendant's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

192.    As a proximate result of Defendant's negligence *per se* and breach of duties as set forth above, Plaintiff and Class Members were caused to, *inter alia*, have their data shared with Third Parties without their authorization or consent, receive unwanted advertisements that reveal seeking treatment for specific financial services, fear, anxiety and worry about the status of their

Personal and Financial Information, diminution in the value of their personal data for which there is a tangible value, and/or a loss of control over their Personal and Financial Information, all of which can constitute actionable actual damages.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

193.    Defendant's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' Personal and Financial Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct.  Plaintiff and Class Members seek actual, and compensatory damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence *per se*.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

194.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights.  Such damages are needed to deter Defendant from engaging in such conduct in the future.

*RESPONSE*: The Court has dismissed Count II and therefore no response is required.

**COUNT III**
**VIOLATION OF THE COMPREHENSIVE COMPUTER DATA ACCESS**
**AND FRAUD ACT, CAL. PENAL CODE § 502**
**(On Behalf of Plaintiff and the California Subclass)**

195.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count III with respect to Plaintiff's claims for violations of Cal. Penal Code §§ 502(c)(2) and (8) and therefore PHH responds below only to the allegations as they pertain to Cal. Penal Code § 502(c)(1)(B), the sole surviving claim in Count III. The allegations in Paragraph 195 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

196.    The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 to "expand the degree of protection afforded to individuals,

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems," and finding and declaring "that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data." Cal. Penal Code § 502(a).

*RESPONSE*: To the extent Paragraph 196 pertains to Plaintiff's claims under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. Paragraph 196 purports to quote portions of Cal. Penal Code § 502(a), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 196 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 196.

197.    In enacting the CDAFA, the Legislature further found and declared "that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data." Cal. Penal Code § 502(a).

*RESPONSE*: To the extent Paragraph 197 pertains to Plaintiff's claims under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. Paragraph 197 purports to quote portions of Cal. Penal Code § 502(a), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 197 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 197.

198.    Plaintiff's and the Class Members' devices on which they accessed Defendant's Online Platforms and Websites, including their computers, smart phones, and tablets, constitute computers or "computer systems" within the meaning of CDAFA.  Cal. Penal Code § 502(b)(5).

*RESPONSE*: To the extent Paragraph 198 pertains to Plaintiff's claims brought under Cal.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 196 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 198.

199. By conduct complained of in the preceding paragraphs, Defendant violated Section 502(c)(1)(B) of CDAFA by knowingly accessing without permission Plaintiff's and Class Members' devices in order to wrongfully obtain and use their personal data, including their Personal and Financial Information, in violation of Plaintiff's and Class Members' reasonable expectations of privacy in their devices and data.

*RESPONSE*: The allegations in Paragraph 199 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 199.

200. Defendant violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking, copying, and using Plaintiff's and the Class Members' Personal and Financial Information.

*RESPONSE*: The Court has dismissed Plaintiff's claim under Cal. Penal Code § 502(c)(2) and therefore no response is required.

201. Defendant used Plaintiff's and Class Members' data as part of a scheme to defraud them and wrongfully obtain their data and other economic benefits. Specifically, Defendant intentionally concealed from Plaintiff and Class Members that Defendant had secretly installed tracking pixels on its Online Platforms that surreptitiously shared Personal and Financial Information with third party advertising companies like Facebook. Had Plaintiff and Class Members been aware of this practice, they would not have used Defendant's Website and Online Platforms.

*RESPONSE*: To the extent Paragraph 201 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 201 contain legal conclusions to which no response is required. To the extent a

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

response is otherwise required, PHH denies the allegations in Paragraph 201.

202. The computers and mobile devices that Plaintiff and Class Members used when accessing Defendant's Website all have and operate "computer services" within the meaning of CDAFA. Defendant violated § 502(c) of the CDAFA by knowingly and without permission accessing and using those devices and computer services, and/or causing them to be accessed and used, *inter alia*, in connection with the Third Parties' (and fourth parties') wrongful use of such data.

*RESPONSE*: To the extent Paragraph 202 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 202 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 202.

203. Under § 502(b)(12) of the CDAFA a "Computer contaminant" is defined as "any set of computer instructions that are designed to . . . record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."

*RESPONSE*: Paragraph 203 purports to quote portions of Cal. Penal Code § 502(b)(12), which speak for themselves. To the extent Paragraph 203 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 203 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 203.

204. Defendant violated § 502(c)(8) by knowingly and without permission introducing a computer contaminant via trackers embedded into the Online Platforms which intercepted Plaintiff's and the Class Members' private and sensitive financial information.

*RESPONSE*: The Court has dismissed Plaintiff's claim under Cal. Penal Code § 502(c)(8) and therefore no response is required.

205. Defendant's violation of the CDAFA caused Plaintiff and Class Members, at

minimum, the following damages:

    a.    Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

    b.    Defendant eroded the essential confidential nature of their relationship;

    c.    Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

    d.    Plaintiff and Class Members did not get the full value of the financial services for which they paid, which included Defendant's duty to maintain confidentiality; and

    e.    Defendant's actions diminished the value of Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: To the extent Paragraph 205 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), the allegations in Paragraph 205 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 205.

206.    Plaintiff and the Class Members seeks compensatory damages in accordance with Cal. Penal Code § 502(e)(1), in an amount to be proved at trial, and injunctive or other equitable relief; as well as punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) as Defendant's violations were willful and, upon information and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294; and reasonable attorney's fees under § 502(e)(2).

*RESPONSE*: To the extent Paragraph 206 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), PHH admits that Plaintiff and Class Members purport to seek compensatory, punitive, and exemplary damages as well as injunctive or other equitable relief, but denies that Plaintiff and Class Members are entitled to any relief. To the extent a response is otherwise required, PHH denies the allegations in

Paragraph 206.

207. Plaintiff and Class Members also seek such other relief as the Court may deem equitable, legal, and proper.

*RESPONSE*: To the extent Paragraph 207 pertains to Plaintiff's claims brought under Cal. Penal Code §§ 502(c)(2) and (8), those claims were dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 502(c)(1)(B), PHH admits that Plaintiff and Class Members purport to seek relief but denies that Plaintiff and Class Members are entitled to any relief.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S CONSUMER PROTECTION LAW ("UCL"), CAL.**
**BUS. & PROF. CODE §§ 17200, *et seq*.**
**(On Behalf of Plaintiff and the California subclass)**

208. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The allegations in Paragraph 208 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

209. Plaintiff and Defendant are each a "person" under Cal. Bus. & Prof. Code § 17201.

*RESPONSE*: The allegations in Paragraph 209 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH admits the allegations in Paragraph 209.

210. The California Business and Professions Code §§ 17201, *et seq*. prohibits acts of unfair competition, which includes unlawful business practices.

*RESPONSE*: The allegations in Paragraph 210 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH admits the allegations in Paragraph 210.

211. Defendant's business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* (the "UCL") because, as alleged above, Defendant violated California common law, and other statutes and causes of action alleged herein.

*RESPONSE*: The allegations in Paragraph 211 contain legal conclusions to which no

response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 211.

212. Defendant engaged in unlawful acts and practices by imbedding the Pixel on its Websites, which tracks, records, and transmits Plaintiff's and Class Members' Personal and Financial Information they disclose to Defendant in confidence its Website to Third Parties without Plaintiff's and Class Members' knowledge and/or consent, in violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*; the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; and by representing that their services have characteristics, uses, or benefits that they do not have in violation of Civil Code § 1770.

*RESPONSE*: The allegations in Paragraph 212 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 212.

213. When using Defendant's Website and services, Plaintiff and Class Members relied on Defendant's status as a trusted financial institution.

*RESPONSE*: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 213, and on that basis denies them.

214. Inconsistent with its role as a financial service provider, Defendant disclosed Plaintiff's and Class Members' Personal and Financial Information to Third Parties without their consent and for marketing purposes. Thus, Defendant represented that its services have characteristics, uses, or benefits that they do not have and represented that its services are of a particular standard, quality, or grade when they were not, in violation of Cal. Civil Code § 1770.

*RESPONSE*: The allegations in Paragraph 214 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 214.

215. Plaintiff and Class Members were reasonable to assume, and did assume, that Defendant would take appropriate measures to keep their Personal and Financial Information secure and not share it with Third Parties or allow Third Parties (and fourth parties) to use it without their express consent. Defendant also had a duty to disclose that it was sharing their Customers' Personal

and Financial Information with Third Parties.  However, Defendant did not disclose at any time that it was sharing this Personal and Financial Information with Third Parties via tracking technologies or that Third Parties (and fourth parties) were using their Personal and Financial Information.

**RESPONSE**: PHH denies the allegations in the last sentence of Paragraph 215. The remaining allegations in Paragraph 215 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the remaining allegations in Paragraph 215.

216.    Had Plaintiff and Class Members known that Defendant would intercept, collect, and transmit their Personal and Financial Information to Third Parties, Plaintiff and the Class Members would not have used Defendant's services.

**RESPONSE**: PHH lacks the knowledge or information sufficient to form a belief as to the allegations in Paragraph 216, and on that basis denies them.

217.    Plaintiff and Class Members have a property interest in their Personal and Financial Information.  By surreptitiously collecting and otherwise misusing Plaintiff's and Class Members' Personal and Financial Information, Defendant has taken property from Plaintiff and Class Members without providing just (or indeed any) compensation.

**RESPONSE**: The allegations in Paragraph 217 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 217.

218.    By deceptively collecting, using, and sharing Plaintiff's and Class Members' Personal and Financial Information with Third Parties for Third Party (and fourth parties) use, Defendant has taken money or property from Plaintiff and Class Members.  Accordingly, Plaintiff seeks restitution on behalf of themselves and the Class.

**RESPONSE**: PHH admits that Plaintiff seeks restitution on behalf of himself and the putative class but denies that he or they are entitled to any such relief.  The allegations in the first sentence of Paragraph 218 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in the first sentence of Paragraph 218.

219.    Defendant's business acts and practices also meet the unfairness prong of the UCL according to all three theories of unfairness.

*RESPONSE*: The allegations in Paragraph 219 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 219.

220.    First, Defendant's business acts and practices are "unfair" under the UCL pursuant to the three-part test articulated in *Camacho v. Automobile Club of Southern California* (2006) 142 Cal. App. 4th 1394, 1403:  (a) Plaintiff and Class Members suffered substantial injury due to Defendant's Disclosure of their Personal and Financial Information; (b) Defendant's disclosure of Plaintiff's and Class Members' Personal and Financial Information provides no benefit to Customers, let alone any countervailing benefit that could justify Defendant's Disclosure of Personal and Financial Information without consent for marketing purposes or other pecuniary gain; and (c) Plaintiff and Class Members could not have readily avoided this injury because they had no way of knowing that Defendant was implementing tracking technology.

*RESPONSE*: The allegations in Paragraph 220 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 220.

221.    Second, Defendant's business acts and practices are "unfair" under the UCL because they are "immoral, unethical, oppressive, unscrupulous, or substantially injurious" to Plaintiff and Class Members, and "the utility of [Defendant's] conduct," if any, does not "outweigh the gravity of the harm" to Plaintiff and Class Members.  *Drum v. San Fernando Valley Bar Ass'n*, (2010) 182 Cal. App. 4th 247, 257.  Defendant secretly collected, disclosed, and otherwise misused Plaintiff's and Class Members' Personal and Financial Information by bartering it to Third Parties in return for marketing and profit.  This surreptitious, willful, and undisclosed conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious.  Moreover, no benefit inheres in this conduct, the gravity of which is significant.

*RESPONSE*: PHH denies the allegations in the second sentence of Paragraph 221. The remaining allegations in Paragraph 221 contain legal conclusions to which no response is required.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

To the extent a response is otherwise required, PHH denies the remaining allegations in Paragraph 221.

222.    Third, Defendant's business acts and practices are "unfair" under the UCL because they run afoul of "specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256 (internal quotation marks and citations omitted).  California has a strong public policy of protecting consumers' privacy interests, including consumers' personal data, as codified in California's Constitution in Article I, section 1; the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*.; and the CDAFA, Cal. Penal Code § 502, among other statutes.

*RESPONSE*: The allegations in Paragraph 222 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 222.

223.    Defendant violated this public policy by, among other things, surreptitiously collecting, disclosing, and otherwise exploiting Plaintiff's and Class Members' Personal and Financial Information by sharing that information with Third Parties via tracking technologies without Plaintiff's and/or Class Members' consent.

*RESPONSE*: The allegations in Paragraph 223 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 223.

224.    Had Plaintiff and Class Members known Defendant would intercept, collect, and transmit their Personal and Financial Information to Facebook and other Third Parties, Plaintiff and Class Members would not have used Defendant's services.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 224, and on that basis denies them.

225.    Plaintiff and Class Members were reasonable to assume, and did assume, that Defendant would take appropriate measures to keep their Personal and Financial Information secure and not share it with Third Parties without their express consent.  Defendant was in sole possession of and had a duty to disclose the material information that Plaintiff's and Class Members' Personal and Financial Information would be shared with Third Parties via trackers.  Defendant did not

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

disclose at any time that they were sharing this Personal and Financial Information with Third Parties via trackers.

**RESPONSE**: The allegations in the second sentence of Paragraph 225 contain legal conclusions ton which no response is required. PHH denies the allegations in the final sentence of Paragraph 225. PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 225, and on that basis denies them.

226.    Plaintiff and Class Members have a property interest in their Personal and Financial Information.  By surreptitiously collecting and otherwise misusing Plaintiff's and Class Members' Personal and Financial Information, Defendant has taken property from Plaintiff and Class Members without providing just (or indeed any) compensation.

**RESPONSE**: The allegations in Paragraph 226 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 226.

227.    Plaintiff and Class Members have lost money and property due to Defendant's conduct in violation of the UCL.  Personal and Financial Information such as that which Defendant collected and transmitted to Third Parties has objective monetary value.  Companies are willing to pay for Personal and Financial Information, like the information Defendant unlawfully collected and transmitted to Third Parties.  For example, Pfizer annually pays approximately $12 million to purchase similarly sensitive information on health data, from various sources.[61]

**RESPONSE**: The allegations in the first sentence of Paragraph 227 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in the first sentence of Paragraph 227.  PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 227, and on that basis denies them.

228.    By deceptively collecting, using, and sharing Plaintiff's and Class Members' Personal and Financial Information with Third Parties, and by allowing Third Parties (and fourth

---

[61] SciAm, *How Data Brokers Make Money Off Your Medical Records*, https://www.scientificamerican.com/article/how-data-brokers-make-money-off-your-medical-records/.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

parties) to use their Personal and Financial Information, Defendant has taken money and/or property from Plaintiff and Class Members. Accordingly, Plaintiff seeks restitution on behalf of themselves and the Class.

*RESPONSE*: PHH admits that Plaintiff seeks restitution on behalf of himself and the putative class but denies that he or they are entitled to any such relief. The remaining allegations in Paragraph 228 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the remaining allegations in Paragraph 228.

229. As a direct and proximate result of Defendant's unfair and unlawful methods and practices of competition, Plaintiff and Class Members suffered actual damages, including, but not limited to, the loss of the value of their Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 229 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 229.

230. As a direct and proximate result of its unfair and unlawful business practices, Defendant has each been unjustly enriched and should be required to make restitution to Plaintiff and Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code, disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices, declaratory relief, attorney fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

*RESPONSE*: The allegations in Paragraph 230 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 230.

**COUNT V**
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT,**
**Cal. Civ. Code § 1798.100, *et seq*.**
**(On Behalf of Plaintiff and the California subclass)**

231. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The allegations in Paragraph 231 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the

above allegations as if fully stated here.

232. The CCPA grants consumers rights, including the right to know what personal information is being collected about them and whether that information is sold or disclosed and to whom, the right to prohibit the sale of their personal information, the right to request deletion of their personal information, and the right to nondiscrimination in service and price when they exercise privacy rights. Cal. Civ. Code § 1798.100, *et seq*.

*RESPONSE*: Paragraph 232 purports to summarize Cal. Civ. Code § 1798.10, which speaks for itself. To the extent such allegations do not accurately represent its full content and context, PHH denies the allegations.

233. The CCPA dictates specifically that "[a] third party shall not sell or share personal information about a consumer that has been sold to, or shared with, the third party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out." Cal. Civ. Code § 1798.115 (emphasis added).

*RESPONSE*: Paragraph 233 purports to quote portions of Cal. Civ. Code § 1798.115, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

234. Defendant collected Plaintiff's and Class Members Personal and Financial Information, including their personal information, with the purpose of providing financial services in the course of and as part of its business in California.

*RESPONSE*: PHH admits that in the ordinary course of its business of providing financial services, it obtains personal and financial information of its borrowers. PHH denies any remaining allegations in Paragraph 234.

235. Disclosing Plaintiff's and Class Members' Personal and Financial Information to Third Parties was not reasonably necessary or proportionate to perform the reasonably expected financial services that they applied for or received.

*RESPONSE*: The allegations in Paragraph 235 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 235.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

236. By collecting, using, and selling Plaintiff's and Class Members' personal information and location data to Third Parties for Third Party (and fourth party) use, all without providing consumers with notice, Defendant violated the CCPA.

*RESPONSE*: The allegations in Paragraph 236 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 236.

237. By failing to inform Customers like Plaintiff and Class Members of the personal information collected about they and the Third Parties with whom that personal information was shared, and the Third Parties' (and fourth parties') use of that personal information, Defendant violated the CCPA.

*RESPONSE*: The allegations in Paragraph 237 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 237.

238. By failing to abide by Customers' requests to delete collected personal information, Defendant violated the CCPA.

*RESPONSE*: The allegations in Paragraph 238 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 238.

239. Pursuant to Cal. Civ. Code § 1798.150(b), Plaintiff will send Defendant notice of their CCPA claims shortly after the date of this filing. If Defendant does not correct its business practices, Plaintiff will amend (or seeks leave to amend) the complaint to add claims for monetary relief, including statutory and actual damages under the CCPA. To date, Defendant has failed to cure the CCPA violation.

*RESPONSE*: PHH lacks knowledge or information sufficient to form a belief as to the allegations in the first two sentences of Paragraph 239, and on that basis denies them. PPH denies any remaining allegations in Paragraph 239.

240. As a result of Defendant's reckless violations, Plaintiff are entitled to actual damages, statutory damages, and attorneys' fees and costs. Cal. Civ. Code § 1798.150.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

*RESPONSE*: The allegations in Paragraph 240 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 240.

**COUNT VI**
**BREACH OF EXPRESS AND IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the California Subclass)**

241.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count VI with respect to Plaintiff's breach of implied contract claim and therefore PHH responds below only to the allegations as they pertain to the claim for breach of express contract, the sole surviving claim in Count VI. The allegations in Paragraph 241 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

242.    Plaintiff and Class Members also entered into an express and implied contract with PHH when they obtained financial services from PHH, or otherwise provided nonpublic personal information, including Personal and Financial Information, to PHH.

*RESPONSE*: To the extent Paragraph 242 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, PHH states that the allegations in Paragraph 242 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 242.

243.    As part of these transactions, PHH explicitly and implicitly agreed to safeguard and protect Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: To the extent Paragraph 243 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, PHH denies the allegations in Paragraph 243.

244.    Plaintiff and Class Members entered into express and implied contracts with the reasonable expectation (based on PHH's own express and implied promises) that PHH would keep their nonpublic personal information, including Personal and Financial Information, confidential.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

Plaintiff and Class Members believed that PHH would use part of the monies paid to PHH under the express and implied contracts to keep their nonpublic personal information, including Personal and Financial Information, confidential.

*RESPONSE*: To the extent Paragraph 244 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, PHH states that the first sentence in Paragraph 244 contains legal conclusions to which no response is required, but insofar as one is, PHH denies the allegations. PHH lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 244, and on that basis denies them.

245.    Plaintiff and Class Members would not have provided and entrusted their nonpublic personal information, including Personal and Financial Information, or would have paid less for PHH's services in the absence of the express and implied contract or implied terms between they and PHH.  The safeguarding of the nonpublic personal information, including Personal and Financial Information, of Plaintiff and class members was critical to realize the intent of the parties.

*RESPONSE*: To the extent Paragraph 245 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, the allegations in the second sentence of Paragraph 245 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations. PHH lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 245, and on that basis denies them.

246.    As extensively detailed above, PHH breached its express and implied contracts with Plaintiff and class members to protect their nonpublic personal information, including Personal and Financial Information, when it disclosed that information to Third Parties.

*RESPONSE*: To the extent Paragraph 246 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, the allegations in Paragraph 246 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

247. As a direct and proximate result of PHH's breach of express and implied contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

*RESPONSE*: To the extent Paragraph 247 pertains to Plaintiff's breach of implied contract claim, that claim was dismissed by the Court and therefore no response is required. With respect to the breach of express contract claim, the allegations in Paragraph 247 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations.

**COUNT VII**
**UNJUST ENRICHMENT (AS ALTERNATIVE TO CONTRACT CLAIMS)**
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

248. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

249. Plaintiff and Class Members have an interest, both equitable and legal and financial, in their Personal and Financial Information, that was conferred upon, collected by, and maintained by Defendant and that was ultimately disclosed without their consent.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

250. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of valuable, sensitive, personal, and financial information—Personal and Financial Information—that Defendant collected from Plaintiff and Class Members under the guise of keeping this information private. Defendant collected, used, and disclosed this information for its own gain, for marketing purposes, and for sale or trade with Third Parties. Defendant did not share this benefit with Plaintiff and Class Members.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

251. Plaintiff and Class Members would not have used Defendant's services, or would have paid less for those services, if they had known that Defendant would collect, use, and disclose their Personal and Financial Information to Third Parties or allow Third Parties (and fourth parties) to use their Personal and Financial Information.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

252.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

253.    The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members themselves.  Under unjust enrichment principles, it would be inequitable for Defendant to retain the profit and/or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

254.    Defendant continues to benefit and profit from its retention and use of Plaintiff's and Class Members' Personal and Financial Information, while its value to Plaintiff and Class Members has been diminished.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

255.    Plaintiff pleads this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiff's claims for damages or enters judgment in favor of the Defendant, Plaintiff will have no adequate legal remedy.  Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed.  Plaintiff and the Class Members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action, and, if so, will lack an adequate remedy at law.

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

256.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds it received as a result of the conduct and the unauthorized Disclosure alleged herein

*RESPONSE*: The Court has dismissed Count VII and therefore no response is required.

**COUNT VIII**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff the Nationwide Class, and the California Subclass)**

257.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth

herein.

**RESPONSE**: The allegations in Paragraph 257 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

258. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

**RESPONSE**: The allegations in Paragraph 258 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 258.

259. An actual controversy has arisen regarding PHH's present and prospective common law and other duties to keep its Customers' Personal and Financial Information confidential and whether Defendant is currently keeping that information confidential. Plaintiff remains a PHH Customers who needs to use PHH's Website to access the Personal and Financial Information PHH collected on him. Plaintiff and similar Class Members thus remain at imminent risk that additional disclosure of their Personal and Financial Information will occur in the future.

**RESPONSE**: The allegations in Paragraph 259 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH admits that Plaintiff has an active loan serviced by PHH and denies the allegations in Paragraph 259.

260. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant continues to owe a legal duty to secure Customers' Personal and Financial Information, under the common law, Section 5 of the FTC Act, the GLBA, and various state statutes;

b. Defendant continues to breach this legal duty by disclosing its Customers' Personal and Financial Information to unaffiliated Third Parties.

**RESPONSE**: The allegations in Paragraph 260 contain legal conclusions to which no

- 76 -

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 260.

261.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to keep its nonpublic personal information, including Personal and Financial Information, confidential consistent with law and industry standards.

**RESPONSE**: The allegations in Paragraph 261 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 261.

262.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy.  The risk of additional disclosure is real, immediate, and substantial as trackers remain operative on Defendant's website to this day.  If additional disclosure occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

**RESPONSE**: The allegations in Paragraph 262 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 262.

263.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.  Among other things, if PHH continues to disclose its Customers' Personal and Financial Information, Plaintiff and Class Members will likely be subjected to the harms described herein.  On the other hand, the cost to Defendant of complying with an injunction by keeping its Customers' Personal and Financial Information, confidential is relatively minimal (for example, removing trackers from its website), and Defendant has a pre-existing legal obligation to do so.

**RESPONSE**: The allegations in Paragraph 263 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 263.

264.    Issuance of the requested injunction will not disserve the public interest.  To the

contrary, such an injunction would benefit the public by preventing PHH's additional unlawful disclosures of Customers' Personal and Financial Information, thus eliminating the additional injuries that would result to Plaintiff and the hundreds of thousands of Customers whose information has been and will continue to be disclosed.

*RESPONSE*: The allegations in Paragraph 264 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 264.

**COUNT IX**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

265.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

266.    At all times during Plaintiff's and Class Members' interactions with PHH, PHH was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

267.    As alleged herein and above, PHH's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' Personal and Financial Information, would be collected, stored, and protected in confidence, and would not be disclosed to Third Parties, or used by Third Parties (and fourth parties) without notice and consent.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

268.    Plaintiff and Class Members provided PHH with their Personal and Financial Information, with the explicit and implicit understandings that PHH would protect and not permit that information to be disseminated to and used by unaffiliated Third Parties (and fourth parties) without notice, consent, and sufficient opportunity to opt out.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

269.    PHH voluntarily received in confidence Plaintiff's and Class Members' Personal and Financial Information, with the understanding and affirmative representation to Customers that the information would not be disclosed or disseminated to unaffiliated Third Parties for Third

Parties' (and fourth parties') marketing purposes.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

270. PHH disclosed Plaintiff's and Class Members' Personal and Financial Information, without notice, without express permission, and without opportunity to opt out.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

271. But for PHH's Disclosure of Plaintiff's and Class Members' Personal and Financial Information, in violation of the parties' understanding of confidence, their Personal and Financial Information would not have been disclosed to Third Parties, or used for Third Party (and fourth party) marketing and profit, without their consent.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

272. The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of PHH's nonconsensual disclosure of Plaintiff's and Class Members' Personal and Financial Information. PHH knew it was disclosing Plaintiff's and Class Members' Personal and Financial Information to Third Parties, for Third Party (and fourth party) use, without their consent.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

273. As a direct and proximate result of PHH's breaches of confidence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

274. Plaintiff seeks all monetary and non-monetary relief allowed by law.

*RESPONSE*: The Court has dismissed Count IX and therefore no response is required.

**COUNT X**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT,**
**CAL. PENAL CODE §§ 630, *et seq*.**
**(On Behalf of Plaintiff and the California subclass)**

275. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The Court has dismissed Count X with respect to Plaintiff's claim for violations of Cal. Penal Code § 631(a) and therefore PHH responds below only to the allegations as they pertain to Cal. Penal Code § 632(a), the sole surviving claim in Count X. The allegations in

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

Paragraph 275 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

276.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. declaring that:

> advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
>
> The Legislature by this chapter intends to protect the right of privacy of the people of this state.

Cal. Penal Code § 630.

***RESPONSE***: To the extent Paragraph 276 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. Paragraph 276 purports to quote portions of Cal. Penal Code § 630, which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 276 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 276.

277.    Cal. Penal Code § 631(a) prohibits persons from "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with" a third party to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" "by means of any machine, instrument, or contrivance, or in any other manner…" Cal. Penal Code § 631(a).

***RESPONSE***: The Court has dismissed Plaintiff's claim under Cal. Penal Code § 631(a) and therefore no response is required.

278.    Cal. Penal Code § 632(a) prohibits persons from intentionally recording confidential communications without consent of all parties to the communication.

*RESPONSE*: The allegations in Paragraph 278 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 278.

279.    All alleged communications between individual Plaintiff or Class Members and Defendant qualify as protected communications under CIPA because each communication is made using personal computing devices (e.g., computers, smartphones, tablets) that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

*RESPONSE*: To the extent Paragraph 279 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 279 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 279.

280.    As alleged in the preceding paragraphs, by use of tracking technology, Defendant used a recording device to record the confidential communications including Personal and Financial Information without the consent of Plaintiff or Class Members and then transmitted such information to Third Parties for Third Party (and fourth party) use.

*RESPONSE*: To the extent Paragraph 280 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 280 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 280.

281.    At all relevant times, Defendant's aiding of Third Parties to learn the contents of communications and Defendant's recording of confidential communications was without Plaintiff's and the Class Members' authorization and consent.

*RESPONSE*: To the extent Paragraph 281 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 281 contain legal

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 281.

282. Plaintiff and Class Members had a reasonable expectation of privacy regarding the confidentiality of their communications with Defendant. Defendant had duties under statutory and common law to safeguard its Customers' Personal and Financial Information, and not disclose it without authorization. Defendant never received any authorization and disclosed Plaintiff's and the Class's Personal and Financial Information regardless.

*RESPONSE*: To the extent Paragraph 282 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 282 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 282.

283. Defendant engaged in and continued to engage in interception by aiding others (including Facebook) to secretly record the contents of Plaintiff's and Class Members' wire communications.

*RESPONSE*: To the extent Paragraph 283 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 283 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 283.

284. The intercepting devices used in this case include, but are not limited to:

a.    Those to which Plaintiff's and Class Members' communications were disclosed;

b.    Plaintiff's and Class Members' personal computing devices;

c.    Plaintiff's and Class Members' web browsers;

d.    Plaintiff's and Class Members' browser-managed files;

e.    Trackers like the Google trackers;

f.    Internet cookies;

g.    Other pixels, trackers, and/or tracking technology installed on Defendant's Website

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

and/or server;

h.      Defendant's computer servers;

i.      Third Party source code utilized by Defendant; and

j.      Third Party computer servers (including Google).

**RESPONSE**: To the extent Paragraph 284 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 284 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 284.

285.    Defendant aided in the interception of contents in that the data from the communications between Plaintiff and/or Class Members and Defendant that were redirected to and recorded by the Third Parties include information which identifies the parties to each communication, their existence, and their contents.

**RESPONSE**: To the extent Paragraph 285 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 285 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 285.

286.    Plaintiff and Class Members reasonably expected that their Personal and Financial Information was not being intercepted, recorded, and disclosed to Third Parties or used by Third Parties (and fourth parties) for marketing and profit.

**RESPONSE**: To the extent Paragraph 286 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), PHH lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 286, and on that basis denies them.

287.    No legitimate purpose was served by Defendant's willful and intentional disclosure of Plaintiff's and Class Members' Personal and Financial Information to Third Parties.  Neither Plaintiff nor Class Members consented to the disclosure of their Personal and Financial Information

by Defendant to Third Parties or the use of the Personal and Financial Information by Third Parties (and fourth parties).

*RESPONSE*: To the extent Paragraph 287 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 287 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 287.

288.    The trackers that Defendant utilized are designed such that they transmitted each of a website user's actions to Third Parties alongside and contemporaneously with the user initiating the communication.  Thus, Plaintiff's and Class Members' communications were intercepted in transit to the intended recipient (Defendant) before they reached Defendant's servers.

*RESPONSE*: To the extent Paragraph 288 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), PHH lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 288, and on that basis denies them. The second sentence in Paragraph 288 contains legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 288.

289.    Defendant willingly facilitated the Third Parties' interception and collection of Plaintiff's and Class Members' Personal and Financial Information, and the Third Parties' (and fourth parties') use of their Personal and Financial Information, by embedding trackers on its Website.  Moreover, Defendant had full control over these trackers, including which webpages contained the pixels, what information was tracked and shared, and how events were categorized prior to transmission.

*RESPONSE*: To the extent Paragraph 289 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 289 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH

denies the allegations in Paragraph 289.

290. Defendant gave substantial assistance to Third Parties in violating the privacy rights of PHH's Customers, even though Defendant's conduct constituted a breach of the confidentiality duties that it owed, including the duty financial institutions owe to their customers and customers' property. Defendant knew that the installation of trackers on its website would result in the unauthorized disclosure of its Customers' communications to Third Parties, and Third Party (and fourth party) use of those communications, yet nevertheless did so anyway.

**RESPONSE**: To the extent Paragraph 290 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 290 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 290.

291. Plaintiff's and Class Members' electronic communications were intercepted during transmission, without their consent, for the unlawful and/or wrongful purpose of monetizing their Personal and Financial Information, including using their Personal and Financial Information to develop marketing and advertising strategies.

**RESPONSE**: To the extent Paragraph 291 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 291 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 291.

292. The Personal and Financial Information that Defendant assisted Third Parties with reading, learning, and exploiting, included Plaintiff's and Class Members' Personal and Financial Information customers input into and accessed on PHH's Website. PHH disclosed details about Customers, like Plaintiff and Class Personal and Financial Information and their interactions with PHH's website as users applied for or managed their mortgages, including the fact that a user was on a certain page, that users clicked buttons and what URLs or webpages they led to, and the Customer's selections.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

*RESPONSE*: To the extent Paragraph 292 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 292 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 292.

293.    Plaintiff and the Class Members seeks statutory damages under Cal. Penal Code § 637.2(a), which provides for the greater of: (1) $5,000 per violation; or (2) three times the amount of damages sustained by Plaintiff and the Classes in an amount to be proven at trial, as well as injunctive or other equitable relief.

*RESPONSE*: To the extent Paragraph 293 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), PHH admits that Plaintiff and Class Members purport to seek statutory damages as well as injunctive or other equitable relief but denies that Plaintiffs and Class Members are entitled to any relief. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 293.

294.    In addition to statutory damages, Defendant's violations caused Plaintiff and Class Members the following damages.

a.    Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private.

b.    Defendant eroded the essential confidential nature of the mortgagee-mortgagor relationship.

c.    Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

d.    Plaintiff and Class Members did not get the full value of the financial services for which they paid, which included Defendant's duty to maintain confidentiality; and

e.    Defendant's actions diminished the value of Plaintiff's and Class Members' Personal and Financial Information.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

*RESPONSE*: To the extent Paragraph 294 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), the allegations in Paragraph 294 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 294.

295. Plaintiff and Class Members also seek such other relief as the Court may deem equitable, legal, and proper.

*RESPONSE*: To the extent Paragraph 295 pertains to Plaintiff's claim under Cal. Penal Code § 631(a), that claim was dismissed by the Court and therefore no response is required. With respect to the claim under Cal. Penal Code § 632(a), PHH admits that Plaintiffs and Class Members purport to seek relief but denies that Plaintiffs and Class Members are entitled to any relief. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 295.

## COUNT XI
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")
### 18 U.S.C. §§ 2511(1), *et seq.*
### (On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)

296. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The allegations in Paragraph 296 do not allege any facts and thus require no response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

297. The ECPA protects both sending and receipt of communications. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

*RESPONSE*: The allegations in Paragraph 297 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 297.

298. The transmissions of Plaintiff's and Class Members' Personal and Financial Information to Defendant's Website qualifies as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

*RESPONSE*: The allegations in Paragraph 298 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 298.

299. **Electronic Communications**.    The transmission of Personal and Financial Information between Plaintiff and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

*RESPONSE*: The allegations in Paragraph 299 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 299.

300. **Content**.    The ECPA defines content, when used with respect to electronic communications, to "include [] any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(8).

*RESPONSE*: Paragraph 300 purports to quote portions of 18 U.S.C. § 2510(8), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

301. **Interception**. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents…include any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(4), (8).

*RESPONSE*: Paragraph 301 purports to quote portions of 18 U.S.C. §§ 2510(4) and (8), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

302. **Electronic, Mechanical or Other Device**.    The ECPA defines "electronic, mechanical, or other device" as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5).  The following constitute "devices" within the meaning

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

of 18 U.S.C. § 2510(5):

    a.     Plaintiff's and Class Members' browsers;

    b.     Plaintiff's and Class Members' computing devices;

    c.     Defendant's web-servers;

    d.     Defendant's Website; and

    e.     The tracking technology deployed by Defendant effectuated the sending and acquisition of customer communications.

*RESPONSE*: The allegations in Paragraph 302 contain legal conclusions to which no response is required. Paragraph 302 purports to quote portions of 18 U.S.C. § 2510(5), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

303. By utilizing and embedding the tracking technology on its Website, Defendant intentionally intercepted, endeavored to intercept and procured another person to intercept the electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

*RESPONSE*: The allegations in Paragraph 303 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 303.

304. Specifically, Defendant intercepted Plaintiff's and Class Members' electronic communications via the tracking technology which tracked, stored, and unlawfully disclosed Plaintiff's and Class Members' Personal and Financial Information to Third Parties.

*RESPONSE*: The allegations in Paragraph 304 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 304.

305. Defendant's intercepted communications include, but are not limited to, communications to/from Plaintiff and Class Members regarding Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 305 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in

Paragraph 305.

306. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to Third Parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

*RESPONSE*: The allegations in Paragraph 306 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 306.

307. By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiff and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

*RESPONSE*: The allegations in Paragraph 307 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 307.

308. **Unauthorized Purpose**. Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among others.

*RESPONSE*: The allegations in Paragraph 308 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 308.

309. Defendant intentionally used the wire or electronic communications to increase its profit margins and save on marketing costs.

*RESPONSE*: The allegations in Paragraph 309 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 309.

310. Defendant specifically used tracking technology to track and to utilize Plaintiff's

DEFENDANT PHH MORTGAGE'S
- 90 -   ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

and Class Members' Personal and Financial Information for financial gain.

*RESPONSE*: PHH denies the allegations in Paragraph 310.

311.   Defendant was not acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

*RESPONSE*: The allegations in Paragraph 311 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH admits that it was not acting "under color of law" as that term is understood.  PHH denies the remaining allegations in Paragraph 311.

312.   Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy via the tracking technology.

*RESPONSE*: The allegations in Paragraph 312 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 312.

313.   In sending and in acquiring the content of Plaintiff's and Class Members' communications relating to the browsing of its Website, Defendant's purpose was tortious, criminal and designed to violate federal and state legal provisions, including as described above the following:  (i) a knowing intrusion into a private, place, conversation or matter that would be highly offensive to a reasonable person; and (ii) violation of GLBA, the FTC Act, invading Plaintiff's and Class Members' privacy, and in breach of its fiduciary duty of confidentiality.

*RESPONSE*: The allegations in Paragraph 313 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 313.

**COUNT XII**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**18 U.S.C. § 2511(3)(a)**
**UNAUTHORIZED DIVULGENCE BY ELECTRONIC COMMUNICATIONS SERVICE**
**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

314.   Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

*RESPONSE*: The allegations in Paragraph 314 do not allege any facts and thus require no

response. To the extent a response is required, PHH incorporates by reference its answers to the above allegations as if fully stated here.

315. The ECPA statute provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

*RESPONSE*: Paragraph 315 purports to quote portions of 18 U.S.C. § 2511(3)(a), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

316. **Electronic Communication Service**. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant's Website is an electronic communication service which provides to users thereof, customers of Defendant, the ability to send or receive electronic communications; in the absence of Defendant's Website, internet users could not send or receive communications regarding Plaintiff's and Class Members' Personal and Financial Information.

*RESPONSE*: The allegations in Paragraph 316 contain legal conclusions to which no response is required. Paragraph 316 purports to quote portions of 18 U.S.C. § 2510(15), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

317. **Intentional Divulgence**. Defendant intentionally designed the tracking technology and was or should have been aware that, if so configured, it could divulge Plaintiff's and Class Members' Personal and Financial Information. Upon information and belief, Defendant's divulgence of the contents of Plaintiff's and Class Members' communications was contemporaneous with their exchange with Defendant's Website, to which they directed their communications.

*RESPONSE*: The allegations in Paragraph 317 contain legal conclusions to which no

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 317.

318. Defendant divulged the contents of Plaintiff's and Class Members' electronic communications without authorization and/or consent.

*RESPONSE*: The allegations in Paragraph 318 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 318.

319. **Exceptions do not apply**. In addition to the exception for communications directly to an electronic communications service ("ECS")[62] or an agent of an ECS, the ECPA states that

> [a] person or entity providing electronic communication service to the public may divulge the contents of any such communication"… "as otherwise authorized in section 2511(2)(a) or 2517 of this title; "with the lawful consent of the originator or any addressee or intended recipient of such communication;" c. "to a person employed or authorized, or whose facilities are used, to forward such communication to its destination;" or d. "which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.

U.S.C. § 2511(3)(b).

*RESPONSE*: Paragraph 319 purports to quote portions of U.S.C. § 2511(3)(b), which speak for themselves. To the extent such allegations do not accurately represent their full content and context, PHH denies the allegations.

320. Section 2511(2)(a)(i) provides:

> It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of their employment while engaged in any activity which is a necessary incident to the rendition of their service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

*RESPONSE:* Paragraph 320 purports to quote portions of 18 U.S.C. § 2511(2)(a)(i), which speak for themselves. To the extent such allegations do not accurately represent their full content

---

[62] An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

and context, PHH denies the allegations.

321. Defendant's divulgence of the contents of Plaintiff's and Class Members' communications to Facebook, Google, and Microsoft was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (i) a necessary incident to the rendition of Defendant's service nor (ii) necessary to the protection of the rights or property of Defendant.

*RESPONSE*: The allegations in Paragraph 321 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 321.

322. Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

*RESPONSE*: The allegations in Paragraph 322 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 322.

323. Defendant's divulgence of the contents of Plaintiff's and the Class Members' communications on its Website through the tracking technology was not done "with the lawful consent of the originator or any addresses or intended recipient of such communication[s]." As alleged above: (i) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their communications and (ii) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiff and Class Members were exchanging information.

*RESPONSE*: The allegations in Paragraph 323 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 323.

324. Moreover, Defendant divulged the contents of Plaintiff's and Class Members' communications through tracking technology to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

*RESPONSE*: The allegations in Paragraph 324 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 324.

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323

325.   The contents of Plaintiff's and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

*RESPONSE*: The allegations in Paragraph 325 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 325.

326.   As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages, preliminary and other equitable or declaratory relief as may be appropriate, punitive damages in an amount to be determined by a jury and a reasonable attorney's fee and other litigation costs reasonably incurred.

*RESPONSE*: The allegations in Paragraph 326 contain legal conclusions to which no response is required. To the extent a response is otherwise required, PHH denies the allegations in Paragraph 326.

## PRAYER FOR RELIEF

PHH denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief.

## AFFIRMATIVE DEFENSES[63]

### First Affirmative Defense

### (Statute of Limitations)

The Complaint is barred, in whole or in part, to the extent Plaintiff and/or the putative class members seek relief for conduct occurring outside the applicable statutes of limitations.

### Second Affirmative Defense

### (Consent)

The Complaint is barred, in whole or in part, to the extent that clear and affirmative, or implied, consent existed to collect or permit the collection of information from Plaintiff and/or the

---

[63] By asserting affirmative defenses, PHH does not waive any arguments or objections regarding the sufficiency of Plaintiff's claims. PHH expressly reserves all rights to challenge the legal and factual basis of Plaintiff's allegations and does not relieve Plaintiff of his burden to prove his case in accordance with applicable law. PHH's assertion of affirmative defenses should not be construed as an admission of liability or as a concession regarding the merits of Plaintiff's claims.

putative class members.

## Third Affirmative Defense

### (Unjust Enrichment)

The Complaint is barred, in whole or in part, because Plaintiff and/or the putative class members would be unjustly enriched if permitted to obtain any recovery in this action because such recovery would be disproportionate to the harm, if any, suffered by Plaintiff and/or the putative class members.

## Fourth Affirmative Defense

### (Existence of Agreements)

The Complaint is barred, in whole or in part, by the terms of any applicable agreements between PHH and Plaintiff and/or PHH and the putative class members.

## Fifth Affirmative Defense

### (Due Process)

The Complaint is barred, in whole or in part, because the damages sought against PHH would violate its due process rights under the United States Constitution.

## Sixth Affirmative Defense

### (Unclean Hands)

The Complaint is barred, in whole or in part, by the equitable doctrine of unclean hands.

## Seventh Affirmative Defense

### (Failure to Mitigate)

To the extent Plaintiff and/or the putative class members failed to take reasonable steps to mitigate their alleged damages, their recovery must be barred or diminished accordingly.

## Eighth Affirmative Defense

### (Laches)

The Complaint is barred, in whole or in part, by the doctrine of laches to the extent that Plaintiff and any putative class members did not timely assert their rights and waited an unfair period of time to bring this action.

## Ninth Affirmative Defense

**(Waiver)**

The Complaint is barred, in whole or in part, by the doctrine of waiver to the extent Plaintiff and putative class members had prior knowledge of, and chose to participate in, the conduct of which they now complain.

**Tenth Affirmative Defense**

**(Assumption of Risk)**

The Complaint is barred, in whole or in part, by Plaintiff's and putative class members' assumption of risk to the extent they had prior knowledge of, and chose to participate in, the conduct of which they now complain.

**Eleventh Affirmative Defense**

**(Equitable Estoppel)**

The Complaint is barred, in whole or in part, by the doctrine of equitable estoppel to the extent Plaintiff and putative class members had prior knowledge of, and chose to participate in, the conduct of which they now complain.

**Fifteenth Affirmative Defense**

**(Rule of Lenity)**

Cal. Penal Code § 630 *et seq.* is ambiguous. Because Cal. Penal Code § 630 *et seq.* are penal statutes, the rule of lenity requires that any ambiguity be resolved in favor of PHH.

**Sixteenth Affirmative Defense**

**(Good Faith)**

The Complaint is barred, in whole or in part, because PHH's alleged acts of omissions regarding its website were in good faith, in the exercise of reasonable business judgment, for good cause, and for legitimate business purposes and/or necessity.

**Nineteenth Affirmative Defense**

**(Affirmative Defenses Against Class Members)**

If the Court certifies a class in this action, then PHH asserts the affirmative defenses set forth herein against each and every member of the certified class.

**Twentieth Affirmative Defense**

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-cv-5323

**(Reservation of Rights)**

PHH expressly reserves the right to raise additional affirmative defenses at trial as facts supporting any such defenses may become known to it during the course of litigation.

**PRAYER**

WHEREFORE, PHH prays for relief as follows:

1.    That the Complaint be dismissed with prejudice;

2.    That Plaintiff's request for class certification be denied;

3.    That judgment be entered in favor of PHH as to all of the causes of action;

4.    For PHH's cost of suit herein, including reasonable attorneys' fees; and

5.    For such other and further relief as the Court deems proper.

Dated:  May 29, 2026                                    Respectfully submitted,

                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                        */s/ Rebecca Harlow*
                                                        Aravind Swaminathan (*pro hac vice*)
                                                        aswaminathan@orrick.com
                                                        401 Union Street, Suite 3300
                                                        Seattle, WA 98101
                                                        Telephone:  (206) 639-9157

                                                        Rebecca Harlow (SBN 281931)
                                                        rharlow@orrick.com
                                                        405 Howard Street
                                                        San Francisco, CA 94105
                                                        Telephone:  (415) 773-5700

                                                        *Attorneys for Defendant PHH Mortgage*

DEFENDANT PHH MORTGAGE'S
ANSWER TO CLASS ACTION COMPLAINT
3:25-CV-5323